UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § § | |
| v. § § § | No. 4:19-CR-147 |
| CYRUS ALLEN AHSANI, and § SAMAN AHSANI, § § | (The Honorable Vanessa D. Gilmore) |
| Defendants. § § | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AND UNSEAL JUDICIAL RECORDS**

**INTRODUCTION**

Proposed Intervenors The Financial Times Ltd. (hereinafter, "The Financial Times"), publisher of the *Financial Times*, Global Investigations Review, and The Guardian (collectively, the "Media Intervenors"), respectfully submit this Memorandum of Law in support of their Motion to Intervene and Unseal Judicial Records. In support of their Motion, Media Intervenors state as follows:

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

The above-captioned matter is a criminal case. Defendants Cyrus Allen Ahsani and Saman Ahsani (collectively, "Defendants"), both citizens of the United Kingdom, have each pleaded guilty to one count of conspiracy to violate the Foreign Corrupt Practices Act ("FCPA"). As reflected in the docket text accompanying the Court's sealed Order at ECF No. 65, Defendants' sentencing hearing is currently set for October 13, 2020.

The Financial Times is a London-based news organization with offices worldwide, including in the United States, and a global readership. It is part of Nikkei, Inc., which provides

1

a broad range of information news and services for the global business community. It has reported extensively on criminal proceedings arising from allegations of corruption and bribery against former Unaoil executives, including the above-captioned matter. *See, e.g.*, Ex. 1 (Kate Beioley, *SFO Accuses UK Nationals of Corrupt Payments in Unaoil Trial*, FIN. TIMES (Jan. 23, 2020), https://on.ft.com/2V130i2); Ex. 2 (Kate Beioley, *Former Unaoil Executives Plead Guilty to Bribery*, FIN. TIMES (Oct. 30, 2019), https://on.ft.com/2UAVOtY).

Global Investigations Review is a legal industry trade publication, also based in London, that covers developments affecting those that work in the area of corporate crime enforcement, defense, and investigations. It has provided extensive coverage of the Unaoil bribery scheme and related investigations. *See, e.g.*, Ex. 3 (Adam Dobrik, *Unaoil Brothers Plead Guilty in U.S.*, GLOB. INVESTIGATIONS REV. (Oct. 30, 2019), https://bit.ly/39D3qAv); Ex. 4 (Adam Dobrik, *DOJ Contacts Third Company Tied to Unaoil Corruption Allegations*, GLOB. INVESTIGATIONS REV. (May 16, 2016), https://bit.ly/2R8fC5X).

The Guardian is a London-based daily newspaper with a global readership. It has also reported extensively on legal proceedings against former Unaoil executives, including the above-captioned matter and related proceedings in the United Kingdom. *See, e.g.*, Ex. 5 (David Pegg & Rob Evans, *Unaoil Executives Admit Paying Multimillion-Dollar Bribes*, THE GUARDIAN (Oct. 31, 2019), https://perma.cc/SAA6-7GN4); Ex. 6 (David Pegg & Rob Evans, *SFO Drops Investigation into Trio Accused of Energy Industry Bribes*, THE GUARDIAN (June 25, 2019), https://perma.cc/4MPE-RDRD).

On October 30, 2019, the U.S. Department of Justice issued a press release announcing that the Defendants in this case had each pleaded guilty to one count of conspiracy to violate the FCPA. Dep't of Justice, *Oil Executives Plead Guilty for Roles in Bribery Scheme Involving*

*Foreign Officials*, DEP'T OF JUSTICE (Oct. 30, 2019), https://perma.cc/VN78-7FG8.  The press release further stated that Defendants' sentencing had been set for April 20, 2020.  *Id.*

The vast majority of judicial records in this criminal case, including transcripts of proceedings, are under seal.  This extensive sealing has hampered Media Intervenors' reporting on this matter.  Attempting to learn more about Defendants' arraignment and plea hearing after the Justice Department issued its press release in October 2019, *Financial Times* correspondent Kadhim Shubber contacted the clerk of the court on December 31, 2019, to request a copy of the transcripts of those proceedings. His request was declined.  Mr. Shubber thereafter contacted case manager Byron Thomas to request a copy of the sealing order in this case; Mr. Thomas informed Mr. Shubber that the sealing order is not public.  On January 7, 2020, Global Investigations Review deputy editor Adam Dobrik requested transcripts for Defendants' March 18, 2019 initial appearance and March 25, 2019 re-arraignment.  He was informed by the Court Reporter Coordinator that he would need to file a motion with the Court to obtain access to the transcripts.

The publicly available docket in this matter reflects only Mr. Shubber's transcript request (docketed as a Transcript Order Form at ECF No. 61), Mr. Dobrik's transcript requests (docketed as Transcript Order Forms at ECF No. 62 and 63), a minute entry for the re-arraignment at which Defendants' plea agreements were executed (March 25, 2019), the Information (ECF No. 16), a sealed motion to continue Defendants' sentencing until October 13, 2020 (ECF No. 64), and a sealed order granting the motion for a continuance (ECF No. 65).  All other records in this case are under seal and are not reflected on the public docket.

Media Intervenors seek an order from the Court unsealing the sealed records in this case, including the transcripts of Defendants' March 25, 2019 re-arraignment, at which Defendants

pleaded guilty, and other prior judicial proceedings in this matter. Further, Media Intervenors seek notice of and access to any future proceedings in this matter, including Defendants' forthcoming sentencing hearing.

## STATEMENT OF ISSUES INVOLVED AND STANDARD OF REVIEW

1. Should Media Intervenors be permitted to intervene for the limited purpose of challenging closure and sealing orders in this case?

Standard of review: Members of the news media have standing to challenge court orders when those orders impede their ability to gather news and receive protected speech. *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996).

2. Should sealed judicial documents, including transcripts of prior proceedings, be unsealed pursuant to the First Amendment and/or common law right of access?

Standard of review: Proceedings and documents to which the public's qualified First Amendment right of access applies may only be closed or sealed where such closure or sealing is necessary to serve a compelling government interest and is narrowly tailored to that interest. *Press-Enter. Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984) ("*Press-Enterprise I*"). Where only the common law presumption of access applies, district courts have discretion to determine whether court documents subject to that common law right should be sealed, but such discretion "is to be exercised charily." *Fed. Savings & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987) ("*Blain*").

3. Should future proceedings in this matter, including Defendants' sentencing hearing, be open to the public, including members of the news media?

Standard of review: Sentencing proceedings are presumptively open to the public under the First Amendment. Accordingly, sentencing proceedings should be open to the public unless

the party advocating for closure demonstrates that closure is necessary to serve a compelling government interest and is narrowly tailored to that interest. *In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 181 (5th Cir. 2011).

## ARGUMENT

**I.      The Media Intervenors' Motion to Intervene Should be Granted.**

Under Fifth Circuit precedent, members of the news media may intervene in criminal proceedings for the limited purpose of challenging restrictions on access to court records and proceedings. *See, e.g.*, *Hearst Newspapers*, 641 F.3d at 172–73 (noting that the U.S. District Court for the Southern District of Texas, below, had granted media intervenor's motion to intervene for the purpose of asking the court to unseal court records and challenging closure of court proceedings); *see also United States v. Aldawsari*, 683 F.3d 660, 664–65 (5th Cir. 2012) (reversing district court's denial of journalist's motion to intervene for purpose of challenging gag order on case participants). Another district court within the Fifth Circuit has observed that a member of the news media may object to a court order "by filing a separate miscellaneous action, a motion for intervention, a writ of mandamus, or an interlocutory appeal," as long as the news outlet "clearly has standing" to challenge such an order. *United States v. Davis*, 902 F. Supp. 98, 101 (E.D. La. 1995).

Here, the Media Intervenors clearly have standing to challenge sealing and closure in the above-captioned criminal prosecution. The Fifth Circuit has concluded that, where a court's closure or sealing orders "impede . . . news agencies' abilities to gather the news and receive protected speech," the requirements for standing are satisfied. *Davis*, 78 F.3d at 927. Because the sealing of records and closure of proceedings in this case impede the Media Intervenors' ability to gather news and report to the public on the Unaoil corruption scheme and the

government's prosecution of Defendants, the Media Intervenors have standing to challenge those orders. Media Intervenors' motion to intervene should, accordingly, be granted.

## II. Records and Proceedings in this Matter Should Be Open.

### a. The First Amendment Creates a Strong Presumptive Right of Access to Court Records and Proceedings in Criminal Matters.

#### i. The Right of Access to Courtroom Proceedings.

The First Amendment guarantees the public and the press a qualified right to attend and observe criminal trials, as well as other criminal proceedings. *Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 9 (1986) ("*Press-Enterprise II*") (preliminary hearings); *Press-Enterprise I*, 464 U.S. at 508–09 (jury selection); *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 603 (1982) (criminal trials) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 558–81 (1980) (plurality opinion)); *Hearst Newspapers*, 641 F.3d at 176–77 (sentencing proceedings); *United States v. Chagra*, 701 F.2d 354, 363–64 (5th Cir. 1983) (bail hearings).

As the Supreme Court has long recognized, this right of public access to court proceedings in criminal matters is fundamental to ensuring public confidence in those proceedings, in particular, and in the criminal justice system as a whole. Allowing the press and the public to observe criminal proceedings "enhances the quality and safeguards the integrity of the factfinding process" and, at the same time, "fosters an appearance of fairness, thereby heightening public respect for the judicial process." *Globe Newspaper Co.*, 457 U.S. at 606. As the Supreme Court has explained, secrecy breeds "distrust" of the judiciary and its ability to adjudicate matters fairly. *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966).

In determining whether the qualified First Amendment right of access applies to a particular criminal proceeding, courts look to "two complementary considerations." *Press-Enterprise II*, 478 U.S. at 8–9. The first consideration, "experience," concerns whether the

proceeding has "historically been open to the press and general public." *Id.* The second, "logic," concerns whether "public access plays a significant positive role in the functioning of the particular process in question." *Id.*

Applying this framework, the Fifth Circuit has expressly held that the First Amendment right of access applies to criminal sentencing proceedings, noting that "[i]t makes little sense to recognize a right of public access to criminal courts and then limit that right to the trial phase of a criminal proceeding, something that occurs in only a small fraction of criminal cases." *Hearst Newspapers*, 641 F.3d at 176–77 (citing *United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005)). As the Fifth Circuit explained, where, as here, there is no trial because Defendants pleaded guilty, "[t]he First Amendment right of access to a sentencing proceeding is especially salient." *Id.* at 177. Just as open trials bolster public confidence in the judicial system, "openness in the sentencing context allows the public to observe whether the defendant is being justly sentenced, especially where the court, rather than a jury, is determining the sentence." *Id.* at 179–80 (citing *United States v. Eppinger*, 49 F.3d 1244, 1253 (7th Cir. 1995)).

Though the Fifth Circuit has not had occasion to address whether the First Amendment guarantees the press and the public a qualified right of access to plea hearings, specifically, every federal court of appeals to consider the issue has so held. *See, e.g.*, *United States v. Haller*, 837 F.2d 84, 86–87 (2d Cir. 1988); *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986). As the Second Circuit explained in *Haller*, open plea hearings, like open trials, facilitate public oversight of courts and prosecutors, which is especially important because "the taking of a plea is the most common form of adjudication of criminal litigation." *Haller*, 837 F.3d at 87. Similarly, the Fourth Circuit has observed that, "Because the taking of a guilty plea serves as a substitute

7

for a trial, it may reasonably be treated in the same manner as a trial for First Amendment purposes." *Wash. Post Co.*, 807 F.2d at 389.

### ii. The Right of Access to Court Records.

Though the Fifth Circuit has not had occasion to expressly address the issue, all other federal circuit courts of appeals to consider it have held that the qualified First Amendment right of access applies to judicial records in criminal matters. *See, e.g.*, *United States v. DeJournett*, 817 F.3d 479, 481 (6th Cir. 2016); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005); *In re Providence Journal Co.*, 293 F.3d 1, 10 (1st Cir. 2002); *United States v. Graham*, 257 F.3d 143, 147 (2d Cir. 2001); *United States v. Smith*, 123 F.3d 140, 146 (3d Cir. 1997); *Wash. Post Co.*, 807 F.2d at 390; *CBS, Inc. v. U.S. Dist. Ct.*, 765 F.2d 823, 825 (9th Cir. 1985).

In particular, applying the *Press-Enterprise II* framework, courts have consistently held that plea agreements and documents filed in connection with sentencing proceedings are judicial records subject to the qualified First Amendment right of access. *DeJournett*, 817 F.3d at 485 (finding that "plea agreements are the quintessential judicial record, entitled to the protection of the First Amendment right to public access of judicial records"); *Wash. Post v. Robinson*, 935 F.2d 282, 288 (D.C. Cir. 1991) ("*Robinson*") (finding that First Amendment right of access applies to plea agreements); *Oregonian Publ'g Co. v. U.S. Dist. Ct.*, 920 F.2d 1462, 1466 (9th Cir. 1990) (finding that First Amendment right of access applies to plea agreements and related documents); *Haller*, 837 F.2d at 86 (finding that First Amendment right of access applies to documents related to plea hearings); *Wash. Post Co.*, 807 F.2d at 390 (finding that First

Amendment right of access applies to "documents filed in connection with plea hearings and sentencing hearings").[1]

Numerous federal courts of appeals have also found that docket sheets and docket entries are judicial records subject to the First Amendment right of access. *See, e.g.*, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) ("*Pellegrino*"); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993); *In re State-Record Co., Inc.*, 917 F.2d 124, 129 (4th Cir. 1990) (per curiam). Indeed, as the Second and Fourth Circuits have recognized, public dockets are essential prerequisites for the press and the public to exercise their First Amendment right of access in both criminal and civil matters. *Pellegrino*, 380 F.3d at 96; *see also Doe v. Public Citizen*, 749 F.3d 246, 268 (4th Cir. 2014) (noting in the context of civil cases that "[t]he ability of the public and press to inspect docket sheets is a critical component to providing meaningful access" to judicial proceedings). Without public access to docket sheets, "the ability of the public and press to attend civil and criminal cases would be merely theoretical" and the presumptive right of the press and the public to inspect judicial documents would likewise be frustrated. *Pellegrino*, 380 F.3d at 93–94.

Where the qualified First Amendment right applies, the presumption of access may be overcome only by a compelling government interest. *Press-Enterprise I*, 464 U.S. at 510; *Hearst*

---

[1] In addition to applying the *Press-Enterprise II* framework to determine whether the strong constitutional presumption of access applies to specific judicial records, certain federal courts of appeals also look to the connection between the judicial records at issue and the proceeding to which they relate. The Second Circuit, for example, has found a First Amendment right of access to court records to which access is a "necessary corollary" of the public's right to attend the proceeding at issue. *See, e.g.*, *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 165 (2d Cir. 2013) ("The transcript of a proceeding is so closely related to the ability to attend the proceeding itself that maintaining secrecy is appropriate only if closing the courtroom was appropriate"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (recognizing a constitutional right of access to judicial documents that "are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'"); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004); *see also United States v. Antar*, 38 F.3d 1348, 1359–60 (3d Cir. 1994) (finding that First Amendment right of access to voir dire proceedings "encompasses equally the live proceedings and the transcripts which document those proceedings" and explaining that "[i]t would be an odd result indeed were we to declare that our courtrooms must be open, but that transcripts of the proceedings occurring there may be closed, for what exists of the right of access if it extends only to those who can squeeze through the door?").

*Newspapers*, 641 F.3d at 181. Moreover, any closure or sealing must be no broader than necessary to serve that compelling interest. *Press-Enterprise I*, 464 U.S. at 510; *Hearst Newspapers*, 641 F.3d at 181. And, as the Second Circuit has recognized, the more extensive the closure of court proceedings or sealing of judicial documents, "the greater must be the gravity of the required interest and the likelihood of risk to that interest" needed to justify it. *Ayala v. Speckard*, 131 F.3d 62, 70 (2d Cir. 1997) (en banc).

To close a proceeding or seal a judicial record to which the First Amendment right applies, in whole or in part, a court must set forth written findings demonstrating that such closure or sealing is necessary, including an explanation as to why less-restrictive alternatives to such closure or sealing would not suffice. *Press-Enterprise I*, 464 U.S. at 510; *Hearst Newspapers*, 641 F.3d at 181; *United States v. Hitt*, 473 F.3d 146, 154 (5th Cir. 2006) (emphasizing that court must consider reasonable alternatives to closure).

### b. Media Intervenors Also Have a Qualified Common Law Right of Access to the Sealed Judicial Records in this Matter.

Common law also affords the public a presumptive right of access to judicial records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). As the Fifth Circuit has explained, the common law right of access "promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). Given the presumption of public access under the common law, a "district court's discretion to seal the record of judicial proceedings is to be exercised charily." *Blain*, 808 F.2d at 399. And, in determining whether records subject to the common law right of access should be sealed, courts must take into consideration the public's

interest in access to the documents. *BP Exploration & Prod. Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211–12 (5th Cir. 2019) ("*BP Exploration*"); *see also Belo Broad. Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. 1981) (noting that a court must consider the presumption of public access as "one of the interests to be weighed on the [public's] 'side of the scales'" (quoting *Nixon*, 435 U.S. at 602)).

The common law right of access applies broadly to all documents that qualify as "judicial records." *Van Waeyenberghe*, 990 F.2d at 848. The Fifth Circuit has applied the common law right of access to a wide range of judicially created documents and filings of parties. *See, e.g.*, *Bradley v. Ackal*, 954 F.3d 216, 225–27 (5th Cir. 2020) (finding that common law right of access applies to record memorializing terms of a settlement agreement, as well as minutes of a settlement conference and post-conference meeting); *Sealed Search Warrants*, 868 F.3d at 390 (pre-indictment search warrant materials); *United States v. Holy Land Found. for Relief & Development*, 624 F.3d 685, 690 (5th Cir. 2010) ("*Holy Land Found.*") (district court's order and opinion); *Van Waeyenberghe*, 990 F.2d at 849 (final order of permanent injunction; transcript of parties' oral report on settlement conference).

### c. The Sealed Records Should Be Unsealed.

Numerous orders, filings, and transcripts in this case should be unsealed pursuant to the First Amendment and the common law rights of access. The records currently under seal include, but are not limited to, Defendants' plea agreements, the transcript of the re-arraignment at which plea agreements were executed, the motion to continue Defendants' sentencing until October 13, 2020 (ECF No. 64), the Court's order granting the motion for a continuance (ECF No. 65), and the Court's orders sealing records and closing proceedings.[2]

---

[2] Without access to docket entries for other sealed filings, Media Intervenors are unable to determine whether there are additional records under seal.

These sealed documents are judicial records subject to the First Amendment right of access. Clearly, the transcript of the re-arraignment at which Defendants pleaded guilty—a proceeding which the press and public had a presumptive right to attend and observe—is subject to this right. *See Haller*, 837 F.2d at 86; *Wash. Post Co.*, 807 F.2d at 390. Defendants' plea agreements are also judicial records subject to the constitutional right of access. *See DeJournett*, 817 F.3d at 485; *Robinson*, 935 F.2d at 288; *Oregonian Publ'g Co.*, 920 F.2d at 1466; *Haller*, 837 F.2d at 86; *Wash. Post Co.*, 807 F.2d at 390. So too are motions and orders filed in conjunction with Defendants' sentencing, including the motion to continue Defendants' sentencing to October 13, 2020 (ECF No. 64) and the Court's order granting the motion for a continuance (ECF No. 65). *Wash. Post Co.*, 807 F.2d at 390.

Where, as here, the First Amendment right of access applies, sealing is proper *only* if and *only* to the extent that it is necessitated by a compelling government interest; where such a compelling interest is shown, sealing can be no broader than necessary to serve that interest. *Press-Enterprise I*, 464 U.S. at 510; *Hearst Newspapers*, 641 F.3d at 181. The sealing in this case is extensive, with even the Court's orders sealing records and closing proceedings hidden from the public eye. The party seeking closure bears a heavy burden in seeking to demonstrate that such extensive closure and sealing is justified.

The common law, too, provides a separate, independent basis for unsealing the sealed judicial records at issue here. *See Holy Land Found.*, 624 F.3d at 690; *Van Waeyenberghe*, 990 F.2d at 848. Though the Fifth Circuit has not assigned a particular weight to the presumption of access under the common law right, it has cautioned that district courts are to seal records "charily." *Blain*, 808 F.2d at 399. In determining whether particular judicial records may be sealed, in whole or in part, the Court must take into account the public's interest in the materials

at issue. *BP Exploration*, 920 F.3d at 211–12. The public interest in this case, which centers on an international bribery scheme involving one of the world's most profitable industries, several foreign governments, and numerous major corporations, is substantial. For all these reasons, the judicial records under seal in this matter should be unsealed.

### d. Defendants' Forthcoming Sentencing Should Be Conducted in Open Court.

As the Order continuing Defendants' sentencing until October 13, 2020, is under seal, there is no indication as to whether the proceedings will be conducted in open court. If, however, the Court intends to close the sentencing proceedings, Media Intervenors object to such closure. As the Fifth Circuit explained in *Hearst Newspapers*, the First Amendment right of access applies to sentencing proceedings, and that right is "especially salient" where, as here, defendants pleaded guilty and thus will not stand trial. 641 F.3d at 176–77. There is significant public interest in learning what sentence Defendants receive, what factors the Court considers when setting their sentence, whether Defendants express remorse or contrition for their role in the Unaoil bribery scheme, and more. For these reasons, Defendants' sentencing should be open to the press and the public.

### III. To the Extent Any Continued or Future Sealing of Records or Closure of Proceedings in this Matter Is Necessary, Such Sealing or Closure Must Be Narrowly Tailored and Supported by Specific, On-the-Record Findings.

If the Court finds that a compelling government interest necessitates the continued or future sealing of judicial records or closure of courtroom proceedings in this matter, any such restrictions on public access may be no greater than necessary to serve that compelling interest. *See Press-Enterprise I*, 464 U.S. at 510. Less restrictive alternatives should be employed when possible, including redaction of documents in lieu of wholesale sealing. *See id.*; *Hitt*, 473 F.3d at 154. Further, any such sealing or closure must be supported by specific, on-the-record factual

findings sufficient to allow a reviewing court to determine whether the sealing or closure was proper.  *See Press-Enterprise I*, 464 U.S. at 510; *Sealed Search Warrants*, 868 F.3d at 397 n.5.

## CONCLUSION

For the reasons set forth above, the Media Intervenors respectfully request that the Court grant their motion to intervene, enter an order requiring the Clerk of the Court to immediately unseal all judicial records in the above-captioned matter, including docket entries and transcripts of prior proceedings, and conduct Defendants' sentencing and any other future court proceedings in open court.

Dated: June 19, 2020

Respectfully submitted,

*/s/ Katie Townsend*

Katie Townsend
Madeline Lamo*
THE REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9300
Facsimile: 202.795.9310
ktownsend@rcfp.org
mlamo@rcfp.org

*Counsel for Proposed Intervenors
The Financial Times, Ltd.,
Global Investigations Review,
and The Guardian*
*Pro Hac Vice Application Forthcoming