AO 91 (Rev. 11/11) Criminal Complaint

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States Courts
Southern District of Texas
FILED

APR 13 2018

David J. Bradley, Clerk of Court

| United States of America | ) | |
| v. | ) | Case No. |
| SAMAN AHSANI | ) | |
| | ) | |
| | ) | H18-0625M |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___in/around 2005 - in/around 2016___ in the county of ___Harris___ in the

___Southern___ District of ___Texas___ , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 371 | Conspiracy to commit violations of the Foreign Corrupt Practices Act (FCPA) |
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering |
| 18 U.S.C. § 1519 | Destruction of evidence |

This criminal complaint is based on these facts:

See attached affidavit in supprort of criminal complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Robert Simpson, Special Agent IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___April 13, 2018___

_____
*Judge's signature*

City and state: ___Houston, Texas___

Hon. Frances H. Stacy, Magistrate Judge
*Printed name and title*

United States Courts
Southern District of Texas
FILED

APR 13 2018

David J. Bradley, Clerk of Court

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| UNITED STATES OF AMERICA | § | **H18-0625M** |
| | § | CASE NO. _____ |
| v. | § | |
| | § | |
| SAMAN AHSANI, | § | |
| DEFENDANT. | § | |

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

### MOTION TO SEAL COMPLAINT AND ARREST WARRANT

The United States of America respectfully moves that the Complaint, arrest warrant and

affidavit and corresponding docket entries in these criminal proceedings be impounded and sealed.

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████.

**WHEREFORE,** the Government respectfully requests that this Court enter an order

directing that the Complaint, warrant and affidavit, and corresponding docket entries in the above-

captioned matter be sealed and impounded and be retained in the custody of the Clerk of Court

until the Department of Justice notifies the Court that the defendant has been arrested and that the

records may be unsealed, except for the certified copies of the warrant to be provided to Assistant

U.S. Attorney Suzanne Elmilady, the Federal Bureau of Investigation, the Internal Revenue

Service, Department of Homeland Security, and foreign governments, including but not limited

to, the United Kingdom, Australia, Italy, and Monaco. The Government further requests that the

Clerk of Court be directed to make no public docket entry of the sealed documents and motion and

order to seal, and to provide copies of all sealed documents only to the signatory attorneys, until

the Department of Justice notifies the Court that the defendant has been arrested and that the records may be unsealed.

Respectfully submitted,

RYAN K. PATRICK
UNITED STATES ATTORNEY

By: _____

SUZANNE ELMILADY
Assistant United States Attorney
Southern District of Texas

2

SEALED

# U.S. District Court
## Eastern District of Virginia − (Alexandria)
## CRIMINAL DOCKET FOR CASE #: <u>1:18−mj−00391−IDD</u> All Defendants
## *SEALED*
### *Internal Use Only*

Case title: USA v. Ahsani                                      Date Filed: 08/10/2018

Assigned to: Magistrate Judge Ivan D. Davis

**Defendant (1)**

**Saman Ahsani**                          represented by  **Rachel Gagnebin Talay**
                                                          Redmon Peyton & Braswell LLP
                                                          510 King Street
                                                          Suite 301
                                                          Alexandria, VA 22314
                                                          703−684−2000
                                                          Fax: 703−684−5109
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

**Pending Counts**                                        **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                                     **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                            **Disposition**

None

**Plaintiff**

**USA**                                   represented by  **Dennis R. Kihm**

USCA4  1

US Attorney's Office (Alexandria−NA)
2100 Jamieson Avenue
Alexandria, VA 22314
**NA**
703−299−3700
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: US Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/10/2018 | | 3 | Arrest of Saman Ahsani in Eastern District of Virginia(Alexandria). (lgue, ) (Entered: 08/10/2018) |
| 08/10/2018 | 1 | 4 | Arrest Warrant Returned Executed on 8/09/2018 in case as to Saman Ahsani. (lgue, ) (Entered: 08/10/2018) |
| 08/10/2018 | 2 | 22 | Minute Entry for proceedings held before Magistrate Judge Ivan D. Davis:Initial Appearance in Rule 5(c)(3) Proceedings as to Saman Ahsani held on 8/10/2018. US appeared through: Dennis Kihm. Deft appeared with counsel: Racheal Talay. Deft informed of rights, charges, and penalties. Deft waives all hearings in this district. Gov't is not seeking detention. Deft placed on PR bond with conditions. Deft instructed to report to PTS by noon on 8/11/2018 and report to the Southern District of Texas on 8/21/2018. (Tape #FTR.)(lgue, ) (Entered: 08/10/2018) |
| 08/10/2018 | 3 | 23 | NOTICE OF ATTORNEY APPEARANCE: Rachel Gagnebin Talay appearing for Saman Ahsani (lgue, ) (Entered: 08/10/2018) |
| 08/10/2018 | 4 | 24 | ORDER Setting Conditions of Release as to Saman Ahsani (1) PR Bond. Signed by Magistrate Judge Ivan D. Davis on 08/10/2018. (lgue, ) (Entered: 08/10/2018) |
| 08/10/2018 | 5 | 27 | Appearance Bond Entered as to Saman Ahsani in amount of $ 1,000,000.00, (lgue, ) (Entered: 08/10/2018) |

```
MIME-Version:1.0
From:cmecf@vaed.uscourts.gov
To:Courtmail@localhost.localdomain
Bcc:
--Case Participants: Magistrate Judge Ivan D. Davis (idd_chambers@vaed.uscourts.gov,
ivan_d_davis@vaed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:8096448@vaed.uscourts.gov
Subject:Activity in Case 18-391VAED Sealed v. Sealed (Redacted Notice)
```
Content−Type: text/html

## U.S. District Court

## Eastern District of Virginia −

## Notice of Electronic Filing

The following transaction was entered on 8/10/2018 at 4:59 PM EDT and filed on 8/10/2018

| | |
|---|---|
| **Case Name:** | USA v. Ahsani |
| **Case Number:** | 1:18−mj−00391−IDD *SEALED* |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **Arrest of Saman Ahsani in Eastern District of Virginia(Alexandria). (lgue, )**


**1:18−mj−00391−IDD *SEALED*−1 No electronic public notice will be sent because the case/entry is sealed.**

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Texas

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. **H18-0625M** |
| | ) | |
| SAMAN AHSANI | ) | |
| | ) | |
| | ) | |
| _Defendant_ | | |

## ARREST WARRANT

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

To:     Any authorized law enforcement officer

        **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_     SAMAN AHSANI
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 371 - Conspiracy to commit violations of the Foreign Corrupt Practices Act (FCPA)
18 U.S.C. § 1956(h) - Conspiracy to commit money laundering
18 U.S.C. § 1519 - Destruction of evidence

TRUE COPY I CERTIFY
ATTEST:
DAVID J. BRADLEY, Clerk of Court
By _Kathleen Murphy_
Deputy Clerk

Date: _April 13, 2018_

Issuing officer's signature

City and state:     Houston, Texas

Magistrate Judge Frances H. Stacy
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _4/13/2018_ , and the person was arrested on _(date)_ _8/9/2018_ at _(city and state)_ _DULLES AIRPORT_ . |

Date: _8/10/2018_

_Arresting officer's signature_

Jennifer Whittaker     SA
_Printed name and title_

USCA4  4

AO 91 (Rev. 11/11)  Criminal Complaint

COPY

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

# UNITED STATES DISTRICT COURT
### for the
Southern District of Texas

United States Courts
Southern District of Texas
**FILED**

APR 1 3 2018

David J. Bradley, Clerk of Court

| United States of America | ) | |
| v. | ) | |
| SAMAN AHSANI | ) | Case No. |
| | ) | |
| | ) | **H18-0625M** |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    in/around 2005 - in/around 2016    in the county of    Harris    in the
Southern    District of    Texas    , the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. § 371 | Conspiracy to commit violations of the Foreign Corrupt Practices Act (FCPA) |
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering |
| 18 U.S.C. § 1519 | Destruction of evidence |

TRUE COPY I CERTIFY
ATTEST:
DAVID J. BRADLEY, Clerk of Court
By Kathleen Murphy
Deputy Clerk

This criminal complaint is based on these facts:

See attached affidavit in support of criminal complaint.

☑ Continued on the attached sheet.

*Complainant's signature*

Robert Simpson, Special Agent IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   April 13, 2018

*Judge's signature*

City and state:    Houston, Texas

Hon. Frances H. Stacy, Magistrate Judge
*Printed name and title*

USCA4  5

Sealed

Public and unofficial staff access
to this instrument are
prohibited by court order.

United States Courts
Southern District of Texas
FILED

APR 3 0 2018

David J. Bradley, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES      §
     §
     §    MAGISTRATE NO. H-18-0625M
V.      §
     §    (UNDER SEAL)
SAMAN AHSANI,      §
Defendant.

## GOVERNMENT'S MOTION TO DISCLOSE COMPLAINT, AFFIDAVIT, AND ARREST WARRANT

COMES NOW the United States of America, by and through its United States Attorney, Ryan K. Patrick, and Suzanne Elmilady, Assistant United States Attorney, for the Southern District of Texas, and files this motion to disclose the criminal complaint, arrest warrant, and affidavit in support thereof would show the following:

I.

On April 13, 2018, this Honorable Court, signed an order sealing the criminal complaint, affidavit, and arrest warrant in order to protect a continuing criminal investigation.

WHEREFORE, in the interest of justice, the United States respectfully requests this Court to authorize the United States to disclose and provide a copy of the criminal complaint, affidavit, and arrest warrant to the Italian authorities in order to facilitate the United States' request for extradition. It is further requested that all documents remain under seal and that this motion and the Court's order remain under seal.

Respectfully submitted,
RYAN K. PATRICK
United States Attorney

Suzanne Elmilady
Assistant United States Attorney
1000 Louisiana, Suite 2300
Houston, Texas 77002
(713) 567-9574

Sealed

Public and unofficial staff access
to this instrument are
prohibited by court order.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES** | § | |
| | § | |
| **V.** | § | **MAGISTRATE NO. H-18-0625M** |
| | § | |
| **SAMAN AHSANI,** | § | **(UNDER SEAL)** |
| **Defendant.** | | |

## ORDER TO DISCLOSE COMPLAINT, AFFIDAVIT, AND ARREST WARRANT

Upon consideration of the Motion of the United States to disclose the criminal complaint,

affidavit, and arrest warrant it is hereby ORDERED that the United States may disclose and provide a

copy of the criminal complaint, affidavit, and arrest warrant sealed in this cause to the Italian authorities

in order to assist the United States in their extradition request of the defendant. The criminal complaint,

affidavit, and arrest warrant remain under seal.

It is FURTHER ORDERED that the government's motion and this order remain under seal.

Signed on this the _____ day of April, 2018.

Honorable Frances H. Stacy
United States Magistrate Judge

TRUE COPY I CERTIFY
ATTEST: April 30, 2018
DAVID J. BRADLEY, Clerk of Court

By: _____
                                    Deputy Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NO. **H18-0625M** |
| | § | |
| SAMAN AHSANI, | § | |
| DEFENDANT. | § | |

**Sealed**

Public and unofficial staff access to this instrument are prohibited by court order.

### ORDER TO SEAL

The Court ORDERS that the complaint, the motion to seal, and this order be sealed by the U.S. District Clerk from any publication or access by the public until the appearance of the defendant is secured.

IT IS FURTHER ORDERED that a copy be provided to specifically, but not limited to the following, the Department of Justice, including but not limited to, Assistant U.S. Attorney Suzanne Elmilady, the Federal Bureau of Investigation, the Internal Revenue Service, Department of Homeland Security, and foreign governments, including but not limited to, the United Kingdom, Australia, Italy, and Monaco.

Signed on ___April 13___ 2018.

Honorable Frances H. Stacy
United States Magistrate Judge

USCA4 21

TYPE OF HEARING: R5 (R40)
CASE NUMBER: 1 18mj 391
MAGISTRATE JUDGE: Ivan D. Davis
DATE: 8/10/2018
TIME: 2:00 p.m.

EASTERN DISTRICT OF VIRGINIA

TAPE: FTR RECORDER
DEPUTY CLERK: Laura Guerra

UNITED STATES OF AMERICA

VS.

Saman Ahsani

Under Seal

GOVT. ATTY: Dennis Kinm

DEFT'S ATTY: Rachel Talay

DUTY FPD: _____

INTERPRETER/LANGUAGE _____

DEFT INFORMED OF RIGHTS, CHARGES AND PENALTIES (X)
DEFT INFORMED OF RIGHTS AND THE VIOLATIONS ( )
COURT TO APPOINT COUNSEL ( ) FPD ( ) CJA ( ) Conflict List ( )
Deft wawes hearings in this District.
_____
_____
_____

BOND:
Gout is not seeking detention. Deft placed
on PR bond w/ conditions. Deft
instructed to report to PTS by 12:00p.m on 8/11/18
and report to the Southern District
of Texas on 8/21/2018.

NEXT COURT APPEARANCE _____ TIME _____

USCA4 22

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

AUG 10 2018

CLERK U.S. DISTRICT COURT
ALEXANDRIA VIRGINIA

| USA | ) |
|---|---|
| *Plaintiff* | ) |
| Saman Ahsani | ) Case No. 1:18mj391 |
| *Defendant* | ) |

## APPEARANCE OF COUNSEL

To: The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Saman Ahsani

Date: August 10, 2018

_____
*Attorney's signature*

Rachel A. Talay
*Printed name and bar number*

Redmon, Payton Braswell LLP
*Address* 510 King St, Suite 301
Alexandria, VA 22314

rtalay@rpb-law.com
*E-mail address*

703.307.9870
*Telephone number*

_____
*FAX number*

AO 199A (Rev. 6/97) Order Setting Conditions of Release · · · · · · · · · · · · · · · · · · · · · · · Page 1 of 5 Pages

# UNITED STATES DISTRICT COURT

**Eastern**     District of     **Virginia**

| United States of America | **ORDER SETTING CONDITIONS** |
| | **OF RELEASE** |

v.

**Saman Ahsani**     Case Number: 1:18mj 391

Defendant

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1) The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2) The defendant shall immediately advise the court, defense counsel and the U.S. Attorney in writing before any change in address and telephone number.

(3) The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed. The defendant shall appear at (if blank, to be notified) _____ United States District Court

401 Courthouse Sq., Alexandria, VA    on    **8/21/18**

Southern District of Texas

Place

Date and Time

## Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( ✓ ) (4) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( ✓ ) (5) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of

**One million** _____ dollars ($ **1,000,000.00** )

in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL    SERVICES    U.S. ATTORNEY    U.S. MARSHAL

Case 4:19-cr-00147-... Document 735 *SEALED* ... Filed 07/10/20 Page 2 of 2 ... Page 35 of 2 ...

AO 199B (Rev 12/11) Additional Conditions of Release                                                     Page ___ of ___ Pages

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ☐ ) (6)  The defendant is placed in the custody of:

Person or organization _____

Address *(only if above is an organization)* _____

City and state _____  Tel. No. _____

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____  _____

Custodian                                      Date

( ☒ ) (7)  The defendant must:

( ☒ ) (a)  report on a regular basis to the following ▮▮▮▮▮▮

( ☒ ) (b)  ~~continue or actively seek employment.~~ ▮▮▮▮▮▮

( ☐ ) (c)  continue or start an education program.

( ☒ ) (d)  surrender any passport to: FBI - already in poss.)

( ☒ ) (e)  not obtain a passport or other international travel document.

( ☒ ) (f)  abide by the following restrictions on personal association, residence, or travel: **Do not depart the Washington D.C.** District of MD.

**metropolitan area without prior approval of Pretrial Services or the Court.**

( ☒ ) (g)  ~~avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including:~~ Eastern District of VA + Southern District of TX.

travel to the Southern District of Texas requires most direct route

( ☐ ) (h)  get medical or psychiatric treatment: _____

( ☐ ) (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____

( ☐ ) (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

( ☐ ) (k)  not possess a firearm, destructive device, or other weapon.

( ☐ ) (l)  not use alcohol ( ☐ ) at all ( ☐ ) excessively.

( ☐ ) (m)  not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

( ☐ ) (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

( ☐ ) (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

( ☐ ) (p)  participate in one of the following location restriction programs and comply with its requirements as directed.

( ☐ ) (i)  **Curfew.** You are restricted to your residence every day ( ☐ ) from _____ to _____ , or ( ☐ ) as directed by the pretrial services office or supervising officer; or

( ☐ ) (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or

( ☐ ) (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

( ☐ ) (q)  submit to location monitoring as directed by the pretrial services office or supervising officer and comply with all of the program requirements and instructions provided.

( ☐ )  You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.

( ☐ ) (r)  report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

( ☒ ) (s)  reside at current residence ▮▮▮▮▮▮

~~not move w/o prior approval~~ ▮▮▮▮▮▮ RT

AO 199C (Rev. 09/08) Advice of Penalties                                                                    Page_____ of _____ Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Defendant's Signature

WASHINGTON D.C.                                                          U.S. PHONE NOT YET
_____                              _____
City and State                                                                 Telephone Number    AVAILABLE.

### Directions to the United States Marshal

( ☐ ) The defendant is ORDERED released after processing.

( ☐ ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: 10 Aug 18                                                          _____ /s/
                                                                                 **Ivan D. Davis**
                                                                                 **United States Magistrate Judge**

DISTRIBUTION:    COURT    DEFENDANT    PRETRIAL SERVICE    U.S. ATTORNEY    U.S. MARSHAL

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
for the

Eastern District of Virginia

<table>
<tr><td>United States of America</td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Case No. 1:18-mj-391</td></tr>
<tr><td>Saman Ahsani</td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td>*Defendant*</td><td>)</td><td></td></tr>
</table>

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Saman Ahsani _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( X )     to appear for court proceedings;

( X )     if convicted, to surrender to serve a sentence that the court may impose; or

( X )     to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

(   ) (1) This is a personal recognizance bond.

( X ) (2) This is an unsecured bond of $  1,000,000.00 _____ .

(   ) (3) This is a secured bond of $ _____ , secured by:

     (   ) (a) $ _____ , in cash deposited with the court.

     (   ) (b) the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it – such as a lien, mortgage, or loan – and attach proof of ownership and value)*:

     If this bond is secured by real property, documents to protect the secured interest may be filed of record.

     (   ) (c) a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety)*:

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

USCA4 27

AO 98 (Rev. 12/11) Appearance Bond
_____

*Release of the Bond.* The court may order this appearance bond ended at any time. This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## Declarations

*Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:

    (1)    all owners of the property securing this appearance bond are included on the bond;

    (2)    the property is not subject to claims, except as described above; and

    (3)    I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.* I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me. I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true. (See 28 U.S.C. § 1746.)

Date:   08/10/2018                                 *Defendant's signature*

      SAMAN AHSANI                           08/10/2018
     *Surety/property owner – printed name*              *Surety/property owner – signature and date*

     *Surety/property owner – printed name*              *Surety/property owner – signature and date*

     *Surety/property owner – printed name*              *Surety/property owner – signature and date*

*CLERK OF COURT*

Date:   06/07/2017                                 *Signature of Clerk or Deputy Clerk*

Approved.

Date: _____                                 *Judge's signature*

USCA4 28

United States Courts
Southern District of Texas
FILED

MAR 08 2019

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | |
| | § | |
| CYRUS ALLEN AHSANI, and | § | CRIMINAL NO. H-19-147 |
| SAMAN AHSANI, | § | |
| | § | UNDER SEAL |
| Defendants. | § | |

## JOINT MOTION FOR HEARING TO INQUIRE INTO POTENTIAL ATTORNEY CONFLICT OF INTEREST

The United States of America ("Government"), by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Suzanne Elmilady, Assistant United States Attorney, and Robert Zink, Acting Chief of the United States Department of Justice, Criminal Division, Fraud Section, and Dennis R. Kihm, Gerald M. Moody, Jr., Jonathan Robell, and Gwendolyn Stamper, Trial Attorneys hereby request that this Court conduct a hearing to confirm that no conflict of interest exists between codefendants Cyrus Allen Ahsani and Saman Ahsani, or that to the extent a conflict exists that it is knowingly waived. In support thereof, the Government respectfully provides the Court the following.

1

### A. Background: the offense and investigation

On or about September 2, 2015, the United States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") opened an investigation into ▮▮▮▮▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, for possible violations of the Foreign Corrupt Practices Act ("FCPA") and related crimes after the DOJ and FBI received information that ▮▮▮ had facilitated bribery payments including in Algeria, Angola, Azerbaijan, Iraq, Kazakhstan, Libya, the United Arab Emirates, and elsewhere on behalf of multiple multinational companies and individuals. The investigation has also focused on ▮▮▮▮▮ principals and employees, and its multinational client companies—most of which are oil and gas services companies—and its client companies' principals and employees.

▮▮▮▮▮ was a family-run business; beginning by in or about 1994, ▮▮▮ ▮▮▮▮▮ was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendant Cyrus Ahsani, was ▮▮▮▮ Chief Executive Officer ("CEO"). By in or about 2005, Defendant Saman Ahsani joined as Commercial Director and Libya Territory Manager, and then in 2011 became Chief Operating Officer ("COO"). Over the course of ▮▮▮▮ operations, from beginning by at least in or about 1999 and continuing until at least in or about 2016, Defendants Cyrus Ahsani and Saman

2

Ahsani, together with others, ████████████ entered into a conspiracy to violate the FCPA, to commit money laundering, and to destroy evidence.

In or about March of 2016, an Australian journalist published a series of articles exposing some aspects of the above-identified conspiracy. Following these articles, Defendants Cyrus and Saman Ahsani, ████████████ retained criminal defense counsel to handle investigations stemming out of the United States, the U.K., Australia, and elsewhere. ████ ████████████ Defendant Saman Ahsani ████████████████████████████████ ████████████ in or around January 2018 retained the undersigned, Rachel Talay, as U.S. counsel ████████████. In addition, Defendant Saman Ahsani retained 5 Stones Intelligence ("5 Stones") as an independent consulting firm ████████████████████. Attorney Rachel Talay's husband is the COO of 5 Stones.

Soon after ████████████████ ████████████ ████████████ Defendant Cyrus Ahsani ████████████████ retained Ms. Talay and 5 Stones.

3

The defendants have released their prior U.S. counsel and █████████ ████████████████ have hired Rachel Talay to represent them in this matter. Ms. Talay has provided written assurances that both defendants have waived any conflict in order to retain her ████████████████████████████. █████

### C. Government's duty to alert the Court of potential conflicts of interest

Undersigned counsel has a duty to represent the Government competently and diligently; part of this duty includes addressing opposing counsel's potential

conflicts of interest. This is particularly true in criminal proceedings, where there is a risk that a criminal defendant may later raise an ineffective assistance of counsel claim based on defense counsel's conflict of interest. *See Wheat v. United States*, 486 U.S. 153, 160 (1988) (noting that "federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them"); *see also United States v. Tatum*, 943 F.2d 370, 379–80 (4th Cir. 1991) (holding that when a conflict situation becomes apparent to the Government, the Government has a duty to bring the issue to the court's attention and, if necessary, move for disqualification of counsel). In order to protect the defendant's right to assistance of counsel and to protect the integrity of current and future proceedings, the Government respectfully requests the Court conduct a hearing to determine if any conflicts exist.

**D.     Conflicts of interest**

The Sixth Amendment guarantees a defendant's right to effective assistance of counsel. There is also a "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1982). Although conflicts of interest can arise in a variety of circumstances, there are four situations in which conflicts for defense counsel typically arise: (1) current or former

5

representation of another client; (2) former or current employment; (3) conduct or advice of counsel as a defense; and (4) counsel being investigated or prosecuted by the Government.

While the right to be represented by his attorney of choice is recognized by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate rather than ensure that a defendant will inexorably be represented by the lawyer whom he prefers. *Wheat v. United States,* 486 U.S. at 159; *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989). A defendant's right to choice of counsel is limited not only by a demonstration of actual conflict, but by a showing of a serious potential conflict even where a defendant expresses a desire to waive the potential conflict. *United States v. Sotelo*, 97 F.3d 782, 791 (5th Cir. 1996).

### E. A hearing is appropriate, to determine whether a potential or actual conflict exists.

When defense counsel has an apparent conflict of interest, the trial court should hold a hearing in accordance with the Fifth Circuit's seminal decision in *United States v. Garcia*, 517 F.2d 272 (5th Cir.1975). "A resolution of the problem requires a cautious and sensitive consideration and balancing of individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness." *Id.* at 273.

6

If the hearing evidences the existence of a conflict of interest, the trial court must ensure that the defendant is fully apprised of the ramifications of the conflict. Should a defendant desire to waive the conflict, the trial court must establish on the record that the defendant knowingly, intelligently and voluntarily waives the inherent disqualification. *Garcia*, 517 F.2d at 274. Notwithstanding such a waiver, however, the district court must also evaluate and determine whether the conflict is so severe as to render a trial inherently unfair, whether proceeding with the conflict undermines the integrity of the judicial system, or whether proceeding with the conflict will deprive the defendant of his right to effective assistance of counsel. *United States v. Rico*, 51 F.3d 495, 511 (5th Cir. 1995); *United States v. Vaquero*, 997 F.3d 78, 90 (5th Cir. 1993).

### F.    Analysis

The issues here are (1) whether Rachel Talay's representation ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ renders her subject to an irresolvable conflict of interest; and (2) whether Rachel Talay's relationship with 5 Stones renders her subject to an irresolvable conflict of interest. Texas Disciplinary Rule of Professional Conduct 1.06(b)(2)[1] provides that a lawyer shall not represent a person if the representation

---

[1] As the criminal matter would occur before this Court, the Texas Disciplinary Rules of Professional Conduct would apply to attorney Rachel Talay's conduct, regardless of where else she may be licensed. *See* Local Rules for the United States District Court, Southern District of Texas, Appendix A, Rule 1(A).

7

of that person "reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests." The lawyer may nonetheless represent a client in such a situation, but only if the lawyer reasonably believes that the representation of each client will not be materially affected, and if each affected or potentially affected client consents after full disclosure regarding the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any. Tex. Discip. R. Prof. Conduct 1.06(c)(1), (2).

The Texas disciplinary rule does not conclusively determine whether disqualification is appropriate, however. In this Circuit, disqualification questions are guided by state and national ethical standards adopted by the Fifth Circuit. *See In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). Should the question of possible disqualification arise, the Court would consider the canons of ethics adopted by the American Bar Association, *see In re Dresser Industries, Inc.*, 972 F.2d 540, 543 (5th Cir. 1992), the Texas Disciplinary Rules of Professional Conduct, *see F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995), and any applicable local rules.

## G.  Conclusion

The parties wish to execute their agreements, ███████████████

██████████████████████████████████████████████

███████████████████████████. For the foregoing reasons, all parties

respectfully request that this Court set this matter for a hearing to determine

whether a potential or actual conflict exists, and whether the individuals can

effectively waive any such conflict, and whether attorney Rachel Talay may

continue to serve as counsel for ██████████████.

RYAN K. PATRICK
United States Attorney
Southern District of Texas

BY: *Suzanne Elmilady*
SUZANNE ELMILADY
Assistant United States Attorney

ROBERT ZINK
Acting Chief, Fraud Section
Criminal Division
Department of Justice

BY: _____
DENNIS R. KIHM
GERALD M. MOODY, JR.
JONATHAN ROBELL
GWENDOLYN STAMPER
Trial Attorneys

_____
RACHEL G. TALAY
Counsel for Defendants Cyrus Ahsani and Saman Ahsani

_____
Defendant Cyrus Ahsani

_____
Defendant Saman Ahsani

9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.  H-19-147** |
| | § | |
| **CYRUS ALLEN AHSANI, and** | § | **UNDER SEAL** |
| **SAMAN AHSANI** | § | |

## PROPOSED ORDER

Based on the representations in the United States unopposed motion to seal the courtroom, seal documents, and delay entry on the public docket, this Court makes the following findings of fact:



Specifically, at this time, public docketing of defendant's arraignment, change of plea hearing, and any related proceedings, as well as any related pleadings, documents, and Orders, including the instant motion and proposed Order, will create a substantial likelihood of imminent

1

danger to the defendant and his family.  Such public docketing will also jeopardize the government's ongoing criminal investigation, as well as the ongoing criminal investigations of foreign governments.

Based on the representations in the government's motion, this Court finds that there is a compelling governmental interest in sealing the courtroom for the defendant's arraignment and change of plea hearing, and sealing the Information, plea agreement, and related pleadings, documents, and Orders, including the instant motion and this Order.  The Court also finds there is an extraordinary situation that justifies a delay in the public docketing of the defendant's arraignment, change of plea hearing, and related proceedings, as well as any related pleadings, documents, and Orders, including the instant motion and this Order.

Based on the above findings of fact, it is hereby

ORDERED that the courtroom be sealed for the defendant's arraignment, change of plea hearing, and any related proceedings.

It is further ORDERED that the Information, plea agreement, and related pleadings, documents, and Orders, including the instant motion and this Order be filed under seal in the Clerk's office until further order of this Court.

It is further ORDERED that entry on the public docket be delayed for the defendant's arraignment, change of plea hearing, and any related proceedings, as well as for any related pleadings, documents, and Orders, including the instant

motion and this Order until further order of this Court.

It is further ORDERED that notwithstanding the other provisions of this Order: 1) the government, at its request, may receive a transcript of the plea proceedings in this case; 2) the court reporter may be permitted to prepare such a transcript and provide it to the government; 3) there may be a limited lifting of this sealing Order to allow the government to comply with noticing and publishing requirements to effectuate any consent order of forfeiture that may be filed as part of this case, or to comply with its discovery, *Giglio* and *Brady* obligations in any pending criminal case in which the defendant herein may be called as a witness; 4) the government may disclose copies of defendant's Information, plea agreement, any transcript of the change of plea proceedings, and this Order with foreign governments including, but not limited to, the United Kingdom, Australia, and Italy.

It is further ORDERED, that notwithstanding other provisions of this Order, without good cause shown after notice to the parties herein and an opportunity for a hearing, this matter shall be sealed until further order of the court.

Signed in Houston, Texas on _____, 2019.

_____
THE HONORABLE VANESSA GILMORE
UNITED STATES DISTRICT JUDGE

United States District Court
Southern District of Texas

**ENTERED**
March 11, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. H-19-147** |
| | § | |
| **CYRUS ALLEN AHSANI, and** | § | **UNDER SEAL** |
| **SAMAN AHSANI** | § | |

## PROPOSED ORDER

Based on the representations in the United States unopposed motion to seal

the courtroom, seal documents, and delay entry on the public docket, this Court

makes the following findings of fact:

Specifically, at this time,

public docketing of defendant's arraignment, change of plea hearing, and any related

proceedings, as well as any related pleadings, documents, and Orders, including the

instant motion and proposed Order, will create a substantial likelihood of imminent

danger to the defendant and his family. Such public docketing will also jeopardize the government's ongoing criminal investigation, as well as the ongoing criminal investigations of foreign governments.

Based on the representations in the government's motion, this Court finds that there is a compelling governmental interest in sealing the courtroom for the defendant's arraignment and change of plea hearing, and sealing the Information, plea agreement, and related pleadings, documents, and Orders, including the instant motion and this Order. The Court also finds there is an extraordinary situation that justifies a delay in the public docketing of the defendant's arraignment, change of plea hearing, and related proceedings, as well as any related pleadings, documents, and Orders, including the instant motion and this Order.

Based on the above findings of fact, it is hereby

ORDERED that the courtroom be sealed for the defendant's arraignment, change of plea hearing, and any related proceedings.

It is further ORDERED that the Information, plea agreement, and related pleadings, documents, and Orders, including the instant motion and this Order be filed under seal in the Clerk's office until further order of this Court.

It is further ORDERED that entry on the public docket be delayed for the defendant's arraignment, change of plea hearing, and any related proceedings, as well as for any related pleadings, documents, and Orders, including the instant

motion and this Order until further order of this Court.

It is further ORDERED that notwithstanding the other provisions of this Order: 1) the government, at its request, may receive a transcript of the plea proceedings in this case; 2) the court reporter may be permitted to prepare such a transcript and provide it to the government; 3) there may be a limited lifting of this sealing Order to allow the government to comply with noticing and publishing requirements to effectuate any consent order of forfeiture that may be filed as part of this case, or to comply with its discovery, *Giglio* and *Brady* obligations in any pending criminal case in which the defendant herein may be called as a witness; 4) the government may disclose copies of defendant's Information, plea agreement, any transcript of the change of plea proceedings, and this Order with foreign governments including, but not limited to, the United Kingdom, Australia, and Italy.

It is further ORDERED, that notwithstanding other provisions of this Order, without good cause shown after notice to the parties herein and an opportunity for a hearing, this matter shall be sealed until further order of the court.

Signed in Houston, Texas on ___March 8_____, 2019.

THE HONORABLE VANESSA GILMORE
UNITED STATES DISTRICT JUDGE

## SENTENCE DATA SHEET

**DEFENDANT:**          **US vs. SAMAN AHSANI**

**CRIMINAL NO:**        18-CR-147

**GUILTY PLEA:**        Count One of Information
Conspiracy to violate the Foreign Corrupt Practices Act
[Title 15, United States Code, Sections 78dd-1, 78dd-2,
and 78dd-3], in violation of Title 18, United States Code,
Section 371.

**CITIZENSHIP:**        United Kingdom and Iranian

**SUBTANCE OF**
**PLEA AGREEMENT:** (a) Defendant is pleading to Count One of the Information
pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B).
(b) United States agrees not to oppose Defendant's
anticipated request to the Court and the United States
Probation Office that he receive a two level downward
adjustment pursuant to section 3E1.1 and not to oppose
Defendant's request for an additional one-level departure
based on the timeliness of the plea.

**COUNT ONE:**     **Conspiracy to violate the Foreign Corrupt Practices Act
[Title 15, United States Code, Sections 78dd-1, 78dd-2, and
78dd-3 ("FCPA")], in violation of Title 18, United States
Code, Section 371.**

1

**ELEMENTS:**

## Conspiracy - Title 18, United States Code, Section 371.

> *First*: That the defendant and at least one other person made an agreement to violate the FCPA as charged in the information;

> *Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

> *Third*: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the information, in order to accomplish some object or purpose of the conspiracy.

## Foreign Corrupt Practices Act, Violation with Respect to Issuers – Title 15, United States Code, Section 78dd-1

> *First:* the defendant is an "issuer," or an officer, director, employee, or agent of an "issuer," or a stockholder thereof acting on behalf of such an "issuer," or aided and abetted an "issuer"1;

> *Second:* the defendant acted corruptly and willfully;

> *Third:* the defendant made use of the mails or any means or instrumentality of "interstate commerce" in furtherance of an unlawful act under this statute—namely, an offer, payment, promise to pay, or authorization of the payment of money or anything of value—or aided and abetted another to do the same;

---

1 An "issuer" is defined to include any entity that has a "class of securities registered pursuant to section 78l . . . or . . . which is required to file reports under section 78o(d)" of Title 15 of the United States Code.   In general, these sections define securities that are regulated by the U.S. Securities and Exchange Commission, and includes companies who issue securities on U.S. stock exchanges and which issue certain kinds of American Depository Receipts (commonly referred to as "ADRs").

*Fourth:* the defendant offered, paid, promised to pay, or authorized the payment of money or gift or anything of value;

*Fifth:* the offer, promise to pay, or authorization of the payment of money or anything of value was either (a) to a foreign official, or (b) to any person while the defendant knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

*Sixth:* the payment was intended for one of three purposes relevant to this action: (a) to influence any act or decision of a foreign public official in his official capacity; (b) to induce a foreign official to do or omit to do any act in violation of the lawful duty of the foreign official; or (c) to secure any improper advantage; and

*Seventh:* the payment was to assist the domestic concern in obtaining or retaining business for, or with, or directing business to, any person.

## Foreign Corrupt Practices Act, Violation with Respect to Domestic Concerns – Title 15, United States Code, Section 78dd-2

*First:* the defendant is a "domestic concern," or an officer, director, employee, or agent of a "domestic concern," or a stockholder thereof acting on behalf of such a domestic concern, or aided and abetted a domestic concern[2];

*Second:* the defendant acted corruptly and willfully;

*Third*: the defendant made use of the mails or any means or instrumentality of "interstate commerce" in furtherance of an unlawful act under this statute—namely, an offer, payment, promise to pay, or

---

[2] A "domestic concern" is defined to include any individual who is a citizen, national, or resident of the United States; and any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States or a territory, possession, or commonwealth of the United States.

3

authorization of the payment of money or anything of value—or aided and abetted another to do the same;

*Fourth*: the defendant offered, paid, promised to pay, or authorized the payment of money or gift or anything of value;

*Fifth*: the offer, promise to pay, or authorization of the payment of money or anything of value was either (a) to a foreign official, or (b) to any person while the defendant knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

*Sixth*: the payment was intended for one of three purposes: (a) to influence any act or decision of a foreign public official in his official capacity; (b) to induce a foreign official to do or omit to do any act in violation of the lawful duty of that foreign official; or (c) to secure any improper advantage; and

*Seventh:* the payment was to assist the domestic concern in obtaining or retaining business for, or with, or directing business to, any person.

## Foreign Corrupt Practices Act with Respect to Persons – Title 15, United States Code, Section 78dd-3

*First*: the defendant was a person, as defined in the FCPA, or an officer, director, employee, or agent of a foreign entity, who engaged in an act in furtherance of a corrupt payment (or offer, promise, or authorization to pay) while in the territory of the United States;

*Second*: the defendant acted corruptly and willfully;

*Third*: the defendant offered, paid, promised to pay, or authorized the payment of money or gift or anything of value;

*Fourth*: the offer, promise to pay, or authorization of the payment of money or anything of value was either (a) to a foreign official, or (b) to any person while the defendant knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

4

Case 4:19-cr-00147 Document 377 *SEALED* Filed on 03/19/19 in TXSD Page 5 of 15

*Fifth*: the payment was intended for one of three purposes: (a) to influence any act or decision of a foreign public official in his or her official capacity; (b) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; or (c) to secure any improper advantage; and

*Sixth*: the payment was to assist the defendant in obtaining or retaining business for, or with, or directing business to, any person.

**PENALTY:**     Up to 5 years imprisonment;
Fine of not more than $250,000 or twice the gross gain or loss;
Up to 3 years supervised release; and
$100 special assessment.

## Factual Basis for Guilty Plea
### (pages 12-21 in plea agreement)

Defendant Saman Ahsani ("Defendant") was a citizen of the United Kingdom and Iran. Defendant knew that paying a bribe to a foreign official, in order to secure an improper advantage in obtaining or retaining business, was a crime, including under the United States' Foreign Corrupt Practices Act ("FCPA").

"Intermediary Company" was a Monaco-based group of affiliated companies whose identities are known to Defendant, which maintained business operations through its various subsidiaries and affiliates in multiple countries, including in Algeria, Angola, Azerbaijan, Iraq, Kazakhstan, Libya, the United Arab Emirates, and elsewhere. Intermediary Company provided services, including intermediary services, for various multinational companies ("Client Companies") operating in the energy sector, including companies that were headquartered or doing business in the Southern District of Texas, that were "issuers," "domestic concerns," or "persons," as those terms are defined by the FCPA, 15 U.S.C. §§ 78dd-1(a); 78dd-2(a), (h)(1); and 78dd-3(a), (f)(1).  In providing services to the Client Companies, Intermediary Company, its subsidiaries and affiliates, and its executives and employees, including Defendant, acted as "agents" of the Client Companies.

Companies 1-25, whose identities are known to Defendant, were among the

6

Client Companies. "Company 1," "Company 2," "Company 3," "Company 4," the

parent company of "Company 5," "Company 6," "Company 21," and "Company

24" were "issuers" as that term is used in the FCPA. "Company 22" and "Company

23" were "domestic concerns" as that term is used in the FCPA. "Company  4,"

"Company  7," "Company  8," "Company  9," "Company 10,"

 "Company 11," "Company 12," "Company 13," "Company 14," "Company 15,"

"Company 16," "Company 17," "Company 18," "Company 19," "Company 20,"

and "Company 25" were "persons" as that term is used in the FCPA. Company 1,

Company 3, Company 4, Company 6, Company 22 were all headquartered in the

Southern District of Texas.

"Due Diligence Organization," was an anti-bribery organization

headquartered in the United States whose identity is known to Defendant.

Beginning in or around 2003, Defendant became an employee of

Intermediary Company. In or around 2005 Defendant became Intermediary

Company's Commercial Director and Libya Territory Manager, a position he held

until at least 2011. In or around 2011, Defendant became Intermediary

Company's Chief Operations Officer ("COO"), a position he held until at least

2016. Beginning by at least in or around 1994 and continuing until at least in or

around 2016, Defendant's brother and co-defendant, Cyrus

Ahsani ("Co-Defendant"), was Intermediary Company's Chief Executive Officer ("CEO").

In or before 2005, Defendant became aware of a conspiracy between and among Intermediary Company and certain of its executives and employees, including Co-Defendant, certain Client Companies, certain executives and employees of Client Companies, and others, the purpose of which was to enrich themselves, Intermediary Company, certain Client Companies, and others, by, among other things, making corrupt bribe and kickback payments to foreign officials, so that Intermediary Company and certain Client Companies would obtain and retain lucrative business contracts; to launder the proceeds of the corrupt bribery and kickback schemes in order to promote and conceal the ongoing schemes; and to falsify and destroy records to avoid detection and prosecution by law enforcement in the United States and elsewhere.

In or around 2005, Defendant knowingly and willfully joined the conspiracy, aware of its objects and with the intent to advance the conspiracy. Thereafter, Defendant, Co-Defendant, and others undertook certain acts, in the Southern District of Texas and elsewhere, in furtherance of the conspiracy, which generally included:

(a) communicating in person, by email, telephone, and fax machine, the need agreement, and manner of bribing foreign officials;

8

(b) obtaining, using, disseminating, and discussing the contents of confidential bidding and other inside information from within foreign governments, agencies, and instrumentalities, in order to obtain improper advantages and lucrative contract awards for Intermediary Company and its Client Companies;

(c) soliciting energy, engineering, and construction companies operating in the energy sector to retain Intermediary Company's services by describing their "proximity" to foreign officials, and their ability to obtain inside confidential bidding information;

(d) using code words, maintaining multiple versions of books and records within Intermediary Company, and structuring bribe and kickback payments through multiple affiliates and subsidiary companies of Intermediary Company in order to promote and conceal the ongoing bribery and kickback scheme from detection by law enforcement and others;

(e) engaging in "bid-rigging" between certain of the Client Companies and others and paying "kickbacks" to employees of certain of the Client Companies and others;

(f) maintaining original and copies of certain incriminating documents offsite in other locations than Intermediary Company's office location in Monaco or their residences, in order to conceal their discovery by law enforcement and others;

Case 4:19-cr-00147   Document 979 *SEALED*   Filed on 03/24/20 in TXSD   Page 10 of 15

(g) destroying certain original and copies of incriminating documents, including destroying flash drives and paper records, in order to conceal their discovery by law enforcement and others; and

(h) making false and misleading statements and omissions, including in wire communications, to Due Diligence Organization in order to obtain certain compliance certifications that were used to circumvent certain Client Companies' compliance functions and to facilitate business transactions with them.

Defendant, as Commercial Director and Libya Territory Manager, and later COO, personally managed and oversaw certain portions of the conspiracy, including, but not limited to:

(a) between in or around and between 2005 and 2011, overseeing Intermediary Company's business in Libya, including facilitating the payment of bribes to government officials in Libya, on behalf of Company 10, Company 11, Company 12, Company 23, Company 24, and others;

(b) between in or around and between 2005 and 2016, structuring the payment of bribes to foreign officials in order to launder the proceeds of the corrupt bribery and kickback schemes in order to promote and conceal the ongoing schemes, including moving corrupt payments through multiple bank

accounts owned and controlled by Intermediary Company's various subsidiary and affiliated companies, moving money through accounts located in multiple foreign countries, and timing the payments to disguise their true nature;

(c) between in or around and between 2005 and 2016, falsifying and destroying records of the bribery and money laundering schemes, including maintaining a second set of books for Company 7; and

(d) between in or around and between 2006 and 2016, overseeing communication with Due Diligence Organization, which included providing Due Diligence Organization with false information indicating Intermediary Company was not involved in the payment of bribes, and providing Due Diligence Organization with business references who Defendant believed knew or should have known about Intermediary Company's bribe payments, or who Defendant believed received commercial kickbacks from Intermediary Company.

In addition, Defendant undertook the following overt acts, among others, in the Southern District of Texas and elsewhere:

On or about August 17, 2005, Defendant and others including Co-Defendant, caused Intermediary Company to transfer approximately $136,500 from an Intermediary Company bank account in Switzerland to a bank

11

account in the United States, believing at least a portion of the funds would be used to pay a bribe to a foreign official to help Company 7 obtain and retain business in Kazakhstan.

On or about May 24, 2006, Defendant and others, including Co-Defendant, caused Intermediary Company to enter into an "Agency Agreement" with Company 10, which authorized Intermediary Company to assist in negotiating with the Libyan government and securing the award of a design and construction project in Libya.

On or about February 16, 2007, Defendant and others, including Co-Defendant, caused Intermediary Company to transfer approximately $191,400 from an Intermediary Company bank account in Switzerland, through a correspondent bank account in the United States, on to a bank account in the United Kingdom, with the intention that a portion of the funds would be used to pay a bribe to a foreign official on behalf of and for the benefit of Company 6.

In or around June 2009, Defendants and others, including Co-Defendant, caused a corrupt payment of approximately $250,000 to be made to a relative of "Libya Official 1," a Libyan government official whose identity is known to Defendant, for Company 10.

On or about January 18, 2011, Defendant signed a "Sales Consultant Agreement" on behalf of Intermediary Company agreeing to pay CC-7, a business

partner whose identity is known to Defendant, approximately $16 million in order to obtain a project in Iraq for Company 8, intending that portions of such payments would be used to bribe government officials in Iraq.

On or about July 11, 2011, Defendants and others, including Co-Defendant, generated a spreadsheet designed to identify certain areas of possible criminal exposure. This spreadsheet identified bribes and other corrupt payments made on behalf of Company 3, Company 6, Company 7, Company 8, Company 10, Company 11, Company 13, Company 14, Company 15, Company 17, Company 18, Company 19, Company 20, and Company 22, among others.

On or about August 18, 2011, while in the United States, Defendant and CC-3, a business partner of Intermediary Company whose identity is known to Defendant, spoke by telephone with Co-Defendant concerning making a payment to CC-7 related to a project with Company 8.

On or about October 25, 2012, Defendant and others, including Co-Defendant, caused Intermediary Company to transfer approximately $70,000 from an Intermediary Company bank account in the United Arab Emirates, through a correspondent bank account in the United States, on to a bank account of a shell company that a Company 2 executive had told Co-Defendant to pay in connection with a project in Algeria. Defendant made such payment to promote the ongoing

bribery scheme and the payment was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the bribery scheme.

On or about December 6, 2013, Defendant and others conspired to send an email to a U.S.-based employee of Due Diligence Organization, through interstate and international wires, with the following materially false statement: "I certify that to the best of my knowledge, neither [Intermediary Company] nor any of its employees or third parties acting on its behalf have offered or given anything of value to a government official in order to obtain or retain business or receive an improper business advantage."

On or about September 4, 2014, Defendant signed a "Memorandum of Understanding" with Company 25, a privately owned maintenance company headquartered in Monaco, whose identity is known to Defendant, on behalf of Intermediary Company, in which the parties agreed to establish a joint venture and jointly bid for a maintenance management services project in Iraq. Defendant signed this "Memorandum of Understanding" intending that Intermediary Company would pay bribes to Iraqi government officials in order to obtain the contemplated maintenance management services project.

In or around April 2016, while knowing about the existence of ongoing criminal investigations into the bribes that were paid by Intermediary Company,

14

Defendant and others, including Co-Defendant destroyed electronic and paper records containing evidence of the bribery and money laundering schemes in order to conceal and evade detection by United States law enforcement and others. Company would pay bribes to Iraqi government officials in order to obtain the contemplated maintenance management services project.

In or around April 2016, while knowing about the existence of ongoing criminal investigations into the bribes that were paid by Intermediary Company, Defendant and others, including Co-Defendant destroyed electronic and paper records containing evidence of the bribery and money laundering schemes in order to conceal and evade detection by United States law enforcement and others.

/s/Suzanne Elmilady
Suzanne Elmilady
Assistant U.S. Attorney
1000 Louisiana Suite 2300
Houston, Texas 77002

15

## SENTENCE DATA SHEET

**DEFENDANT:**  **US vs. CYRUS ALLEN AHSANI**

**CRIMINAL NO:**  18-CR-147

**GUILTY PLEA:**  Count One of Information
Conspiracy to violate the Foreign Corrupt Practices Act
[Title 15, United States Code, Sections 78dd-1, 78dd-2,
and 78dd-3], in violation of Title 18, United States Code,
Section 371.

**CITIZENSHIP:**  United Kingdom and Iranian

**SUBTANCE OF
PLEA AGREEMENT:** (a) Defendant is pleading to Count One of the Information
pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B).
(b) United States agrees not to oppose Defendant's
anticipated request to the Court and the United States
Probation Office that he receive a two level downward
adjustment pursuant to section 3E1.1 and not to oppose
Defendant's request for an additional one-level departure
based on the timeliness of the plea.

**COUNT ONE:**  **Conspiracy to violate the Foreign Corrupt Practices Act
[Title 15, United States Code, Sections 78dd-1, 78dd-2, and
78dd-3 ("FCPA")], in violation of Title 18, United States
Code, Section 371**.

1

**ELEMENTS:**

**Conspiracy - Title 18, United States Code, Section 371**.

> *First*: That the defendant and at least one other person made an agreement to violate the FCPA as charged in the information;

> *Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

> *Third*: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the information, in order to accomplish some object or purpose of the conspiracy.

**Foreign Corrupt Practices Act, Violation with Respect to Issuers – Title 15, United States Code, Section 78dd-1**

> *First:* the defendant is an "issuer," or an officer, director, employee, or agent of an "issuer," or a stockholder thereof acting on behalf of such an "issuer," or aided and abetted an "issuer"[1];

> *Second:* the defendant acted corruptly and willfully;

> *Third:* the defendant made use of the mails or any means or instrumentality of "interstate commerce" in furtherance of an unlawful act under this statute—namely, an offer, payment, promise to pay, or authorization of the payment of money or anything of value—or aided and abetted another to do the same;

---

[1] An "issuer" is defined to include any entity that has a "class of securities registered pursuant to section 78l . . . or . . . which is required to file reports under section 78o(d)" of Title 15 of the United States Code.  In general, these sections define securities that are regulated by the U.S. Securities and Exchange Commission, and includes companies who issue securities on U.S. stock exchanges and which issue certain kinds of American Depository Receipts (commonly referred to as "ADRs").

*Fourth:* the defendant offered, paid, promised to pay, or authorized the payment of money or gift or anything of value;

*Fifth:* the offer, promise to pay, or authorization of the payment of money or anything of value was either (a) to a foreign official, or (b) to any person while the defendant knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

*Sixth:* the payment was intended for one of three purposes relevant to this action: (a) to influence any act or decision of a foreign public official in his official capacity; (b) to induce a foreign official to do or omit to do any act in violation of the lawful duty of the foreign official; or (c) to secure any improper advantage; and

*Seventh:* the payment was to assist the domestic concern in obtaining or retaining business for, or with, or directing business to, any person.

## Foreign Corrupt Practices Act, Violation with Respect to Domestic Concerns – Title 15, United States Code, Section 78dd-2

*First:* the defendant is a "domestic concern," or an officer, director, employee, or agent of a "domestic concern," or a stockholder thereof acting on behalf of such a domestic concern, or aided and abetted a domestic concern[2];

*Second:* the defendant acted corruptly and willfully;

*Third*: the defendant made use of the mails or any means or instrumentality of "interstate commerce" in furtherance of an unlawful act under this statute—namely, an offer, payment, promise to pay, or authorization of the payment of money or anything of value—or aided

---

[2] A "domestic concern" is defined to include any individual who is a citizen, national, or resident of the United States; and any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws of a State of the United States or a territory, possession, or commonwealth of the United States.

and abetted another to do the same;

*Fourth*: the defendant offered, paid, promised to pay, or authorized the payment of money or gift or anything of value;

*Fifth*: the offer, promise to pay, or authorization of the payment of money or anything of value was either (a) to a foreign official, or (b) to any person while the defendant knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

*Sixth*: the payment was intended for one of three purposes: (a) to influence any act or decision of a foreign public official in his official capacity; (b) to induce a foreign official to do or omit to do any act in violation of the lawful duty of that foreign official; or (c) to secure any improper advantage; and

*Seventh:* the payment was to assist the domestic concern in obtaining or retaining business for, or with, or directing business to, any person.

## Foreign Corrupt Practices Act with Respect to Persons – Title 15, United States Code, Section 78dd-3

*First*: the defendant was a person, as defined in the FCPA, or an officer, director, employee, or agent of a foreign entity, who engaged in an act in furtherance of a corrupt payment (or offer, promise, or authorization to pay) while in the territory of the United States;

*Second*: the defendant acted corruptly and willfully;

*Third*: the defendant offered, paid, promised to pay, or authorized the payment of money or gift or anything of value;

*Fourth*: the offer, promise to pay, or authorization of the payment of money or anything of value was either (a) to a foreign official, or (b) to any person while the defendant knew that all or a portion of the payment would be offered, given, or promised, directly or indirectly, to a foreign official;

4

*Fifth*: the payment was intended for one of three purposes: (a) to influence any act or decision of a foreign public official in his or her official capacity; (b) to induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; or (c) to secure any improper advantage; and

*Sixth*: the payment was to assist the defendant in obtaining or retaining business for, or with, or directing business to, any person.

**PENALTY:**     Up to 5 years imprisonment;
Fine of not more than $250,000 or twice the gross gain or loss;
Up to 3 years supervised release; and
$100 special assessment.

## Factual Basis for Guilty Plea
(pages 12-21 in plea agreement)

Defendant Cyrus Allen Ahsani ("Defendant") was a citizen of the United Kingdom and Iran, and, until on or about July 1, 2011, a citizen of the United States. Defendant knew that paying a bribe to a foreign official, in order to secure an improper advantage in obtaining or retaining business, was a crime, including under the United States' Foreign Corrupt Practices Act ("FCPA").

"Intermediary Company" was a Monaco-based group of affiliated companies whose identities are known to Defendant, which maintained business operations through its various subsidiaries and affiliates in multiple countries, including in Algeria, Angola, Azerbaijan, Iraq, Kazakhstan, Libya, the United Arab Emirates, and elsewhere. Intermediary Company provided services, including intermediary services, for various multinational companies ("Client Companies") operating in the energy sector, including companies that were headquartered or doing business in the Southern District of Texas, that were "issuers," "domestic concerns," or "persons," as those terms are defined by the FCPA, 15 U.S.C. §§ 78dd-1(a); 78dd-2(a), (h)(1); and 78dd-3(a), (f)(1). In providing services to the Client Companies, Intermediary Company, its subsidiaries and affiliates, and its executives and employees, including Defendant, acted as "agents" of the Client Companies.

Companies 1-25, whose identities are known to Defendant, were among

6

the Client Companies.   "Company 1," "Company 2," "Company 3," "Company 4,"

the parent company of "Company 5," "Company 6," "Company 21," and "Company 24" were "issuers" as that term is used in the FCPA. "Company 22" and "Company 23" were "domestic concerns" as that term is used in the FCPA. "Company 4," "Company 7," "Company 8," "Company 9," "Company 10," "Company 11," "Company 12," "Company 13," "Company 14," "Company 15," "Company 16," "Company 17," "Company 18," "Company 19," "Company 20," and "Company 25" were "persons" as that term is used in the FCPA.  Company 1, Company 3, Company 4, Company 6, Company 22 were all headquartered in the Southern District of Texas.

"Due Diligence Organization," was an anti-bribery organization headquartered in the United States whose identity is known to Defendant.

In or around 1991, Defendant became an executive at Intermediary Company. In or around 1994, Defendant became the Chief Executive Officer ("CEO") of Intermediary Company, a position he held until at least 2016.

Beginning in or around 2003, Defendant's brother and co-defendant, Saman Ahsani ("Co-Defendant"), became an employee of Intermediary Company. In or around 2005, Co-Defendant became Intermediary Company's Commercial Director and Libya Territory Manager, a position he held until at least 2011.  In or

around 2011, Co-Defendant became Intermediary Company's Chief    Operations

Officer ("COO"), a position he held until at least 2016.

      Beginning in or around 1999, and continuing until at least in or about 2016,

in the Southern District of Texas and elsewhere, Defendant knowingly and willfully

conspired with others, including Intermediary Company and certain of its

executives and employees, certain Client Companies, certain executives and

employees of Client Companies, and others, the purpose of which was to enrich

themselves, Intermediary Company, certain Client Companies, and others, by,

among other things, making corrupt bribe and kickback payments to foreign

officials, so that Intermediary Company and certain Client Companies would obtain

and retain lucrative business contracts; to launder the proceeds of the corrupt

bribery and kickback schemes in order to promote and conceal the ongoing

schemes; and to falsify and destroy records to avoid detection and prosecution by

law enforcement in the United States and elsewhere.

      Thereafter, Defendant and others (including by in or around 2005, Co-

Defendant) undertook certain acts, in the Southern District of Texas and

elsewhere, in furtherance of the conspiracy, which generally included:

(a) communicating in person, by email, telephone, and fax machine, the need,

    agreement, and manner of bribing foreign officials;

(b) obtaining, using, disseminating, and discussing the    contents of confidential

idding and other inside information from within foreign governments, agencies, and instrumentalities, in order to obtain improper advantages and lucrative contract awards for Intermediary Company and its Client Companies;

(c) soliciting energy, engineering, and construction companies operating in the energy sector to retain Intermediary Company's services by describing their "proximity" to foreign officials, and their ability to obtain inside confidential bidding information;

(d) using code words, maintaining multiple versions of books and records within Intermediary Company, and structuring bribe and kickback payments through multiple affiliates and subsidiary companies of Intermediary Company in order to promote and conceal the ongoing bribery and kickback scheme from detection by law enforcement and others;

(e) engaging in "bid-rigging" between certain of the Client Companies and others and paying "kickbacks" to employees of certain of the Client Companies and others;

(f) maintaining original and copies of certain incriminating documents offsite in other locations than Intermediary Company's office location in Monaco or their residences, in order to conceal their discovery by law enforcement and others;

(g) destroying certain original and copies of incriminating documents,  including destroying flash drives and paper records, in order to conceal their discovery by

law enforcement and others; and

(h) making false and misleading statements and omissions, including in wire communications, to Due Diligence Organization in order to obtain certain compliance certifications that were used to circumvent certain Client Companies' compliance functions and to facilitate business transactions with them.

Defendant, as CEO, personally managed and oversaw certain portions of the conspiracy, including, but not limited to:

(a) Between in or around and between 1999 and 2016, personally negotiating bribe payments executives and employees of the Client Companies and others, and with foreign officials and their agents;

(b) Between in or around and between 1999 and 2016, overseeing Intermediary Company employees and executives, who themselves negotiated bribe payments with foreign officials and their agents;

(c) Between in or around and between 1999 and 2016, directing others, including Co-Defendant, to launder the proceeds of the bribe payments; and

(d) Between in or around and between 2011 and 2016, falsifying and destroying records of the bribery and money laundering scheme to avoid detection   by law enforcement and others.

In addition, Defendant undertook the following overt acts, among others, in the Southern District of Texas and elsewhere:

On or about March 30, 2005, Defendant, while in Houston, Texas, in the Southern District of Texas, sent an email, through interstate and international wire, to "CC-2," an employee of Intermediary Company and whose identity is known to Defendant, in which Defendant discussed a meeting in Houston, Texas, in the Southern District of Texas, with executives at Company 3 and Company 4. In the email Defendant used a codename to refer to a foreign official who Defendant knew to be a bribe recipient.

On or about February 16, 2007, Defendant and others, including Co-Defendant, caused Intermediary Company to transfer approximately $191,400 from an Intermediary Company bank account in Switzerland, through a correspondent bank account in the United States, on to a bank account in the United Kingdom, with the intention that a portion of the funds would be used to pay a bribe to a foreign official on behalf of and for the benefit of Company 6.

On or about August 25, 2010, Defendant, Co-Defendant, and others, caused Intermediary Company to enter into a consultancy agreement with a company controlled by CC-7, a business partner whose identity is known to Defendant, which included paying CC-7 approximately $4.5 million for, among other things,

assisting Company 8 in obtaining Iraq Project 1A, an oil and gas development project in Iraq that is known to Defendant. Defendant caused this contract to be executed believing that CC-7 would use portions of the $4.5 million to pay bribes to government officials in Iraq in order to obtain or retain Iraq Project 1A for Company 8.

On or about August 18, 2011, Defendant spoke by phone with Co-Defendant and CC-3, a business partner of Intermediary Company whose identity is known to Defendant, while Co-Defendant and CC-3 were in the United States, concerning making a payment to CC-7 related to a project with Company 8.

On or about January 3, 2012, Defendant signed a "Commercial Advisor Agreement" on behalf of Intermediary Company with two subsidiaries of Rolls-Royce plc, including their wholly owned United States-based subsidiary, Rolls-Royce Energy Systems, Inc. ("RRESI"), a "domestic concern" as defined in the FCPA. The terms of the Commercial Advisor Agreement appointed Intermediary Company to be RRESI's commercial agent in Iraq, for the purposes of marketing RRESI products. Defendant signed this contract intending that Intermediary Company would pay bribes to Iraqi government officials in its attempts to obtain business on behalf of RRESI in Iraq.

On or about October 25, 2012, Defendant and others, including Co-Defendant, caused Intermediary Company to transfer approximately $70,000 from

an Intermediary Company bank account in the United Arab Emirates, through a correspondent bank account in the United States, on to a bank account of a shell company that a Company 2 executive had told Defendant to pay in connection with a project in Algeria. Defendant made such payment to promote the ongoing bribery scheme and the payment was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the bribery scheme.

On or about January 14, 2015, Defendant and others, including Co-Defendant, caused the execution of a "Master Agreement" with Company 25 for a maintenance management services project in Iraq, intending that Intermediary Company would pay bribes to Iraqi government officials in order to obtain the contemplated maintenance management services project.

In or around April 2016, while knowing about the existence of ongoing criminal investigations into the bribes that were paid by Intermediary Company, Defendant and others, including Co-Defendant destroyed electronic and paper records containing evidence of the bribery and money laundering schemes in order to conceal and evade detection by United States law enforcement and others.

/s/Suzanne Elmilady
Suzanne Elmilady
Assistant U.S. Attorney
1000 Louisiana Suite 2300
Houston, Texas 77002

13

Case 4:19-cr-00147 Document 79-11 *SEALED* Filed on 07/24/20 in TXSD Page 1 of 1
Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order
Page 1 of 1

# United States District Court

## SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA

V.

**APPEARANCE BOND**

CYRUS ALLEN AHSANI
Defendant

CASE NUMBER CR-H- **19 -147**

Non-surety:    I, the undersigned defendant acknowledge that I and upon my Personal Recognizance
Surety: XX    We, the undersigned, jointly severally acknowledge that we and our . . .
personal representatives, jointly and severally, are bound to pay to the United States of America the sum of
$ **1,000,000.00**, and there has been deposited in the Registry of the Court the sum of
$ **250,000.00** in cash_____ (describe other security.)

The conditions of this bond are that the defendant **CYRUS ALLEN AHSANI**
<span style="margin-left:3em">(name)</span>
is to appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of defendant's release as may be ordered or notified by this court or any other United States district court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such a matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue until such time as the undersigned are exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States district court having cognizance of the above entitled matter at the time of such breach and if the bond if forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States district court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

This bond is signed on   **5.20.19**   at Houston, Texas_____
<span style="margin-left:8em">Date</span>

Defendant. _____    Address_____

Surety. _____    Address._____

Surety. _____    Address. _____

Signed and acknowledged before me on _____ **5.20.19**
<span style="margin-left:16em">Date</span>

_____
Judicial Officer/Clerk

Approved: _____
Judicial Officer

# United States District Court

## SOUTHERN DISTRICT OF TEXAS

UNITED STATES OF AMERICA

V.

**APPEARANCE BOND**

SAMAN AHSANI

Defendant

CASE NUMBER CR-H- **19 -147**

Non-surety:   I, the undersigned defendant acknowledge that I and upon my Personal Recognizance
Surety: XX   We, the undersigned, jointly severally acknowledge that we and our . . .
personal representatives, jointly and severally, are bound to pay to the United States of America the sum of
$ **1,000,000.00** , and there has been deposited in the Registry of the Court the sum of
$ **250,000.00** in cash_____ (describe other security.)

The conditions of this bond are that the defendant **SAMAN AHSANI**
(name)
is to appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of defendant's release as may be ordered or notified by this court or any other United States district court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such a matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue until such time as the undersigned are exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States district court having cognizance of the above entitled matter at the time of such breach and if the bond if forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States district court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

This bond is signed on _____**3.20.19**_____ at <u>Houston, Texas</u>
                          Date                                     Place

Defendant. _____ Address. _____

Surety. _____ Address. _____

Surety. _____ Address. _____

Signed and acknowledged before me on _____**3.20.19**_____
                                                    Date

Beverly White
Judicial Officer/Clerk

Approved: _____
                Judicial Officer

*Sealed*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEAS

**ENTERED**

March 22, 2019

David J. Bradley, Clerk

UNITED STATES OF AMERICA

### V.

ORDER SETTING CONDITIONS
OF RELEASE

Defendant
**CYRUS ALLEN AHSANI**

CASE NUMBER: CR-H **-19 -147**

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1)   The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)   The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing of any change in address and telephone number.

(3)   The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed.  The defendant shall appear at (if blank, to be notified)

_____ on _____

Place                                                                    Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( )    (4)    The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( )    (5)    The defendant executes an unsecured bond binding the defendant to pay the United States the sum of _____ dollars in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

(   )   (6)   The defendant is placed in the custody of:

(Name of person or organization) _____

(Address) _____

(City and state) _____     (Tel.No.) _____

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled

Signed: _____

Custodian or Proxy ████ _____     Date

( X )   (7)   The defendant shall:

    ( X )   (a)   report to the _____

              telephone number _____

    (   )   (b)   execute a bond or an agreement to forfeit upon failing to appear as required, the following sum of money or designated property:

    (   )   (c)   post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described _____

    (   )   (d)   execute a bail bond with solvent sureties in the amount of $ _____

    ( X )   (e)   maintain or actively seek employment.

    (   )   (f)   maintain or commence an education program ████

    ( X )   (g)   surrender any passport to: ████

    ( X )   (h)   obtain no passport.

    ( X )   (i)   abide by the following restrictions on personal association, place of abode, or travel: ████

    ████   (j)   avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to:

                    No Contact with any Potential Witnesses

    (   )   (k)   undergo medical or psychiatric treatment and/or remain in an institution as follows:

    (   )   (l)   return to custody each (week)day as of _____ o'clock after being released each (week)day as of _____ o'clock for employment, schooling, or the following limited purpose(s):

    (   )   (m)   maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.

    ( X )   (n)   refrain from possessing a firearm, destructive device, or other dangerous weapons.

    ( X )   (o)   refrain from ( _____ ) any ( X ) excessive   use of alcohol.

    ( X )   (p)   refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner.

    (   )   (q)   submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.

    (   )   (r)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services offices or supervising officer.

    (   )   (s)   refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibit substance testing or electronic monitoring which is (are) required as a condition(s) of release.

    (   )   (t)   participate in one of the following home confinement program components and abide by all the requirements of the program

              which   ( ____ ) will or   ( ____ ) will not include electronic monitoring or other location verification system. You shall pay all of part of the cost of the program based upon your ability to pay as determined by the pretrial office or supervising officer.

              (   )   (i)   Curfew. You are restricted to your residence everyday     (   ) from _____ to _____ , or ( ____ ) as directed by the pretrial services office or supervising officer; or

              (   )   (ii)   Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or

              (   )   (iii)   Home Incarceration. You are restricted to your residence at all times except for medical needs or treatment, religious services, court appearances pre-approved by the pretrial services office or supervising officer.

    ( X )   (u)   report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited ████

    ( X )   (v)   ████

    (   )   (w)   _____

    (   )   (x)   _____

WHITE COPY-COURT       YELLOW-DEFENDANT       BLUE-U.S. ATTORNEY       PINK-U.S. MARSHAL       GREEN-PRETRIAL SERVICES

AO199C Rev. 4/91) Advice of Penalties                                 Page_____ of _____ Pages

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of any crime while on pretrial release may result in an additional sentence to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to five years of imprisonment, and a $250,000 fine or both to intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the court, or to obstruct a criminal investigation. It is also a crime punishable by up to ten years of imprisonment, a $250,000 fine or both, to tamper with a witness, victim or informant, or to retaliate against a witness, victim or informant, or to threaten or attempt to do so.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear may result in the forfeiture of any bond posted.

### Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

_____
Address

_____          _____
City and State                                              Telephone

### Directions to United States Marshal

( ✓ )    The defendant is ORDERED released after processing.

( )    The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: 3-21-19          _____
Signature of Judicial Officer

**U. S. MAGISTRATE JUDGE**
Name and Title of Judicial Officer

AO 199A (Rev. 11/95) Order Setting Conditions of Release

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEAS

UNITED STATES OF AMERICA

V.

ORDER SETTING CONDITIONS
OF RELEASE

Defendant
**CYRUS ALLEN AHSANI**

CASE NUMBER: CR-H -19 -147

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1)     The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)     The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing of any change in address and telephone number.

(3)     The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed.  The defendant shall appear at (if blank, to be notified)

_____ on _____

Place                                                                                     Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

()      (4)     The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( )     (5)     The defendant executes an unsecured bond binding the defendant to pay the United States the sum of_____ dollars in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

AO 199B (Rev. 5/99) Additional Conditions of Release

Page ____ of ____ Pages

**Additional Conditions of Release**

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

( ) (6) The defendant is placed in the custody of:

(Name of person or organization) _____

(Address) _____

(City and state) _____ (Tel.No.) _____

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled

Signed: _____ _____

Custodian or P_____ Date

( X ) (7) The defendant shall:

( X ) (a) report to the _____

telephone number _____

( ) (b) execute a bond or an agreement to forfeit upon failing to appear as required, the following sum of money or designated property: _____

( ) (c) post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described _____

( ) (d) execute a bail bond with solvent sureties in the amount of $ _____

( X ) (e) maintain or actively seek employment.

( ) (f) maintain or commence an education program _____

( X ) (g) surrender any passport to: _____

( X ) (h) obtain no passport.

( X ) (i) abide by the following re_____

■ (j) avoid all contact, directly or _____

prosecution, including but not limited to:

No Contact with any Potential Witnesses _____

( ) (k) undergo medical or psychiatric treatment and/or remain in an institution as follows: _____

( ) (l) return to custody each (week)day as of _____ o'clock after being released each (week)day as of _____ o'clock

for employment, schooling, or the following limited purpose(s): _____

( ) (m) maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.

( X ) (n) refrain from possessing a firearm, destructive device, or other dangerous weapons.

( X ) (o) refrain from ( _____ ) any ( X ) excessive use of alcohol.

( X ) (p) refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner.

( ) (q) submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.

( ) (r) participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services offices or supervising officer.

( ) (s) refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibit substance testing or electronic monitoring which is (are) required as a condition(s) of release.

( ) (t) participate in one of the following home confinement program components and abide by all the requirements of the program

which ( _____ ) will or ( _____ ) will not include electronic monitoring or other location verification system. You shall pay all

of part of the cost of the program based upon your ability to pay as determined by the pretrial office or supervising officer.

( ) (I) Curfew. You are restricted to your residence everyday ( ) from _____ to _____ , or

( _____ ) as directed by the pretrial services office or supervising officer; or

( ) (ii) Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or

( ) (iii) Home Incarceration. You are restricted to your residence at all times except for medical needs or treatment, religious services, court appearances pre-approved by the pretrial services office or supervising officer.

( X ) (u) report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited

( ✖ ) (v) _____

( ) (w) _____

( ) (x) _____

WHITE COPY-COURT     YELLOW-DEFENDANT     BLUE-U.S. ATTORNEY     PINK-U.S. MARSHAL     GREEN-PRETRIAL SERVICES

AO199C Rev. 4/91) Advice of Penalties     Page_____ of _____Pages

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of any crime while on pretrial release may result in an additional sentence to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to five years of imprisonment, and a $250,000 fine or both to intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the court, or to obstruct a criminal investigation. It is also a crime punishable by up to ten years of imprisonment, a $250,000 fine or both, to tamper with a witness, victim or informant, or to retaliate against a witness, victim or informant, or to threaten or attempt to do so.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear may result in the forfeiture of any bond posted.

### Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

_____
Address

_____
City and State                    Telephone

### Directions to United States Marshal

( ✓ )    The defendant is ORDERED released after processing.

(   )    The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: _3 - 21 - 19_

_____
Signature of Judicial Officer

**U. S. MAGISTRATE JUDGE**
Name and Title of Judicial Officer

*Sealed*

# UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

UNITED STATES OF AMERICA

vs.

Cyrus Allen Ahsani

PTYLB51334-1

§
§
§
§
§
§
§

Criminal No. H-_____ 19-147-2

Pending in ___Southern___ District

of ___Texas___

___Houston___ Division

Bond Set: $ ___1,000,000.00___
Deposit : $ ___250,000.00___

### AFFIDAVIT OF OWNERSHIP
### OF SECURITY FOR APPEARANCE

PTYLB51336-1

I, _Rachel Talay, Partner, RPB_, on oath declare that I am the (owner)
(agent for owner) of the $ _250,000_ _____ (Cashier's Check/Money
Order No. _____ drawn on _____ {Bank})
deposited as security on the appearance bond set for the defendant named
above, and that said deposit is to be returned to the owner at the address
listed below upon conclusion of this cause of action:

_Rachel Talay, Partner, RPB_
Name of Owner

_510 King Street, Suite 301_
Street or P. O. Box No.

_Alexandria, rA 22314_
City, State, Zip Code

I, as owner/agent for owner, subject said funds to the provisions of Local
Rule 16 and consent and agree that should the defendant fail to abide by the
conditions of release imposed by the Court, the Court may, upon notice to me
of not less than 10 days, proceed to have said funds forfeited.

_____
Signature

_____
Address if Different from above

SWORN TO AND SUBSCRIBED BEFORE ME on _____

_David Bradley_ CLERK

By _____
Deputy Clerk

Case 4:19-cr-00147 Document 43-6 SEALED Filed on 03/20/19 in TXSD Page 1 of 3

AO 199A (Rev. 11/95) Order Setting Conditions of Release                                           Page 1 of    Pages
United States District Court
Southern District of Texas

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEAS

**ENTERED**

March 22, 2019

David J. Bradley, Clerk

UNITED STATES OF AMERICA

V.

ORDER SETTING CONDITIONS
OF RELEASE

SAMAN AHSANI
Defendant

CASE NUMBER: CR-H -19-147

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1)  The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)  The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing of any change in address and telephone number.

(3)  The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed.  The defendant shall appear at (if blank, to be notified)

_____ on _____

Place                                                            Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

( )    (4)    The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( )    (5)    The defendant executes an unsecured bond binding the defendant to pay the United States the sum of _____ dollars in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

AO 199B (Rev. 5/99)  Additional Conditions of Release                                     Page ____ of ____ Pages

**Additional Conditions of Release**

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

(　　) (6) The defendant is placed in the custody of:

(Name of person or organization) _____

(Address) _____

(City and state) _____   (Tel.No.) _____

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled

Signed: _____   _____
Custodian or Proxy                                    Date

( X ) (7) The defendant shall:

( X ) (a) report to the _____
telephone number ▬▬▬▬▬▬▬

( ) (b) execute a bond or an agreement to forfeit upon failing to appear as required, the following sum of money or designated property:

( ) (c) post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described _____

( ) (d) execute a bail bond with solvent sureties in the amount of $ _____

( X ) (e) maintain or actively seek employment.

( ) (f) maintain or commence an education program.

( X ) (g) surrender any passport to: ▬▬▬▬▬▬▬

( X ) (h) obtain no passport.

( X ) (i) abide by the following restrictions ▬▬▬▬▬▬▬▬▬▬▬▬▬

�it (j) avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to:

No Contact with any Potential Witnesses

( ) (k) undergo medical or psychiatric treatment and/or remain in an institution as follows:

( ) (l) return to custody each (week)day as of _____ o'clock after being released each (week)day as of _____ o'clock for employment, schooling, or the following limited purpose(s):

( ) (m) maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.

( X ) (n) refrain from possessing a firearm, destructive device, or other dangerous weapons.

( X ) (o) refrain from ( _____ ) any ( X ) excessive use of alcohol.

( X ) (p) refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner.

( ) (q) submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.

( ) (r) participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services offices or supervising officer.

( ) (s) refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibit substance testing or electronic monitoring which is (are) required as a condition(s) of release.

( ) (t) participate in one of the following home confinement program components and abide by all the requirements of the program which ( _____ ) will or ( _____ ) will not include electronic monitoring or other location verification system. You shall pay all of part of the cost of the program based upon your ability to pay as determined by the pretrial office or supervising officer.

(　) (I) Curfew. You are restricted to your residence everyday ( ) from _____ to _____, or
( _____ ) as directed by the pretrial services office or supervising officer; or

(　) (ii) Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or

(　) (iii) Home Incarceration. You are restricted to your residence at all times except for medical needs or treatment, religious services, court appearances pre-approved by the pretrial services office or supervising officer.

( X ) (u) report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited to ▬▬▬▬▬▬

( ✦ ) (v) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

( ) (w) _____

( ) (x) _____

WHITE COPY-COURT    YELLOW-DEFENDANT    BLUE-U.S. ATTORNEY    PINK-U.S. MARSHAL    GREEN-PRETRIAL SERVICES

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of any crime while on pretrial release may result in an additional sentence to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to five years of imprisonment, and a $250,000 fine or both to intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the court, or to obstruct a criminal investigation. It is also a crime punishable by up to ten years of imprisonment, a $250,000 fine or both, to tamper with a witness, victim or informant, or to retaliate against a witness, victim or informant, or to threaten or attempt to do so.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear may result in the forfeiture of any bond posted.

### Acknowledgment of Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

Signature of Defendant

### Directions to United States Marshal

( ✓ )  The defendant is ORDERED released after processing.

( )  The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: 3-21-19

Signature of Judicial Officer

### U. S. MAGISTRATE JUDGE
Name and Title of Judicial Officer

Case 4:19-cr-00147 Document 45-17 *SEALED* (Court only) Filed on 07/24/20 in TXSD Page 1 of 3
Case 4:19-cr-00147 Document 25-1 *SEALED* (Court only) Filed on 03/20/19 Page 1 of 3
Page 1 of 3

AO 199A (Rev. 17/95) Order Setting Conditions of Release

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEAS

UNITED STATES OF AMERICA

V.

ORDER SETTING CONDITIONS
OF RELEASE

SAMAN AHSANI
Defendant

CASE NUMBER: CR-H -19-147

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1)  The defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)  The defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing of any change in address and telephone number.

(3)  The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed.  The defendant shall appear at (if blank, to be notified)

_____ on _____
Place                                                                                    Date and Time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

()    (4)    The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( )   (5)    The defendant executes an unsecured bond binding the defendant to pay the United States the sum of _____ dollars in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

AO 199B (Rev. 5/99)  Additional Conditions of Release

Page ___ of ___ Pages

**Additional Conditions of Release**

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

( ) (6) The defendant is placed in the custody of:

(Name of person or organization) _____

(Address) _____

(City and state) _____ (Tel.No.) _____

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled

Signed: _____ _____

                Custodian or Proxy         Date

( X ) (7) The defendant shall:

( X ) (a) report to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        telephone number _____

( ) (b) execute a bond or an agreement to forfeit upon failing to appear as required, the following sum of money or designated property:

( ) (c) post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described

( ) (d) execute a bail bond with solvent sureties in the amount of $ _____

( X ) (e) maintain or actively seek employment.

( ) (f) maintain or commence an education program.

( X ) (g) surrender any passport to: _____

( X ) (h) obtain no passport.

( X ) (i) abide by the following restrictio▮▮▮▮▮▮▮▮

▮▮ (j) avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to:

                No Contact with any Potential Witnesses

( ) (k) undergo medical or psychiatric treatment and/or remain in an institution as follows:

( ) (l) return to custody each (week)day as of _____ o'clock after being released each (week)day as of _____ o'clock for employment, schooling, or the following limited purpose(s):

( ) (m) maintain residence at a halfway house or community corrections center, as deemed necessary by the pretrial services office or supervising officer.

( X ) (n) refrain from possessing a firearm, destructive device, or other dangerous weapons.

( X ) (o) refrain from ( _____ ) any ( X ) excessive use of alcohol.

( X ) (p) refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. §802, unless prescribed by a licensed medical practitioner.

( ) (q) submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.

( ) (r) participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed advisable by the pretrial services offices or supervising officer.

( ) (s) refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibit substance testing or electronic monitoring which is (are) required as a condition(s) of release.

( ) (t) participate in one of the following home confinement program components and abide by all the requirements of the program which ( _____ ) will or ( _____ ) will not include electronic monitoring or other location verification system. You shall pay all of part of the cost of the program based upon your ability to pay as determined by the pretrial office or supervising officer.

    ( ) (i) Curfew. You are restricted to your residence everyday ( ) from _____ to _____, or
        ( _____ ) as directed by the pretrial services office or supervising officer; or

    ( ) (ii) Home Detention. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer; or

    ( ) (iii) Home Incarceration. You are restricted to your residence at all times except for medical needs or treatment, religious services, court appearances pre-approved by the pretrial services office or supervising officer.

( X ) (u) report as soon as possible, to the pretrial services office or supervising officer any contact with any law enforcement personnel, including, but not limited ▮▮▮▮ing, or traffic sto▮▮▮

( ✦ ) (v) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

( ) (w) _____

( ) (x) _____

WHITE COPY-COURT     YELLOW-DEFENDANT     BLUE-U.S. ATTORNEY     PINK-U.S. MARSHAL     GREEN-PRETRIAL SERVICES

AO199C Rev. 4/91) Advice of Penalties         Page_____ of _____Pages

Case 4:19-cr-00147 Document 46-1 Sealed (Court only) 07/24/20 in TXSD Page 3 of 3
Case 4:19-cr-00147 Document 46-1 Sealed (Court only) 07/24/20 in TXSD Page 3 of 3
Page 3 of 3

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine, or both.

The commission of any crime while on pretrial release may result in an additional sentence to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to five years of imprisonment, and a $250,000 fine or both to intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the court, or to obstruct a criminal investigation. It is also a crime punishable by up to ten years of imprisonment, a $250,000 fine or both, to tamper with a witness, victim or informant, or to retaliate against a witness, victim or informant, or to threaten or attempt to do so.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, you shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, you shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear may result in the forfeiture of any bond posted.

**Acknowledgment of Defendant**

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

Signature of Defendant

Address

City and State                    Telephone

**Directions to United States Marshal**

( ✓ )    The defendant is ORDERED released after processing.

(   )    The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: 3-21-19

Signature of Judicial Officer

**U. S. MAGISTRATE JUDGE**
Name and Title of Judicial Officer

HOU087309

Case 4:19-cr-00147 Document 45-18 *SEALED* (Court only) Filed on 07/24/20 in TXSD Page 1 of 1
Case 4:19-cr-00147 Document 79-18 *SEALED* (Court only) Filed on 03/30/19 in TXSD Page 1 of 1
Page 1 of 1

Sealed

# UNITED STATES DISTRICT COURT    SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | Criminal No. H- 19-147-1 |
| | § | |
| | § | Pending in _Southern_ District |
| vs. | § | |
| | § | of _Texas_ |
| _Daman Ahsani_ | § | _Houston_ Division |
| PTYLB51334-1 | | |

Bond Set: $ _1,000,000.00_
Deposit : $ _250,000.00_

### AFFIDAVIT OF OWNERSHIP
### OF SECURITY FOR APPEARANCE

I, _Rachel Talay, Partner, RPB_, on oath declare that I am the (owner) (agent for owner) of the $ _250,000_ ████ (Cashier's Check/Money Order No. ████ drawn on ████ [Bank]) deposited as security on the appearance bond set for the defendant named above, and that said deposit is to be returned to the owner at the address listed below upon conclusion of this cause of action:

PTY LB51336-1

_Rachel Talay, Partner, RPB_
Name of Owner

_510 King Street, Suite 301_
Street or P. O. Box No.

_Alexandria, VA 22314_
City, State, Zip Code

I, as owner/agent for owner, subject said funds to the provisions of Local Rule 16 and consent and agree that should the defendant fail to abide by the conditions of release imposed by the Court, the Court may, upon notice to me of not less than 10 days, proceed to have said funds forfeited.

_____
Signature

_____
Address if Different from above

SWORN TO AND SUBSCRIBED BEFORE ME on _____

_David Bradley_ CLERK

By _____
Deputy Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO. H-19-147** |
| | § | |
| **SAMAN AHSANI,** | § | **UNDER SEAL** |
| | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States

Attorney for the Southern District of Texas and Suzanne Elmilady, Assistant United

States Attorney, and Robert Zink, Acting Chief of the Fraud Section of the Criminal

Division of the United States Department of Justice ("Fraud Section" and when used

collectively with the United States Attorney's Office, the "Offices") and Dennis R.

Kihm, Gerald M. Moody, Jr., Jonathan Robell, and Gwendolyn A. Stamper, Trial

Attorneys, and the defendant, Saman Ahsani ("Defendant"), and Defendant's

counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of

Criminal Procedure, state that they have entered into this plea agreement

("Agreement"), the terms and conditions of which are as follows:

### Defendant's Agreement

1.     Defendant agrees to plead guilty to Count One of the Information.

Count One charges Defendant with conspiracy to violate of the Foreign Corrupt

Practices Act ("FCPA"), Title 15, United States Code, Sections 78dd-1, 78dd-2, 78dd-3, launder monetary instruments, as defined in Title 18 United States Code Section 1956(c)(7) in violation of Title 18, United States Code Sections 1956(a)(2)(A), 1956(a)(2)(B)(i), and obstruct justice, in violation of Title 18, United States Code, Section 1519, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Information, or proved to a jury beyond a reasonable doubt.

### Punishment Range

2.     The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 371, is imprisonment of not more than five years and a fine of not more than $250,000 or twice the gross gain or loss. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. *See* Title 18, United States Code, Sections 3571(b)(3), 3571(d), and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Section 3583(e)(3). Defendant

2

understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00). The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

3

Case 4:19-cr-00147 Document 79-19 *SEALED* Filed on 03/23/19 in TXSD Page 4 of 30



Case 4:19-cr-00147 Document 47 *SEALED* Filed on 09/23/19 in TXSD Page 5 of 30





## Waiver of Appeal and Collateral Review

7.      Defendant is aware that Title 28, United States Code, Section 1291,
and Title 18, United States Code, Section 3742, afford a defendant the right to
appeal the conviction and sentence imposed.   Defendant is also aware that Title
28, United States Code, Section 2255, affords the right to contest or "collaterally
attack" a conviction or sentence after the judgment of conviction and sentence has
become final.   Defendant knowingly and voluntarily waives the right to appeal or
"collaterally attack" the conviction and sentence, except that Defendant does not
waive the right to raise a claim of ineffective assistance of counsel on direct
appeal, if otherwise permitted, or on collateral review in a motion under Title 28,
United States Code, Section 2255.   Defendant's knowing and voluntary waiver of
the right to appeal or collaterally attack the conviction and sentence includes
waiving the right to raise on appeal or on collateral review any argument that (1)
the statute(s) to which the defendant is pleading guilty is unconstitutional and (2)

6

the admitted conduct does not fall within the scope of the statute(s). In the event

Defendant files a notice of appeal following the imposition of the sentence or later

collaterally attacks his conviction or sentence, the United States will assert its

rights under this Agreement and seek specific performance of these waivers.

8.      Defendant waives all defenses based on venue or speedy trial under

the Constitution and Speedy Trial Act, and jurisdiction or the statute of limitations,

in the event that (a) Defendant's conviction is later vacated for any reason, (b)

Defendant violates any provision of this Agreement, or (c) Defendant's plea is later

withdrawn.

9.      In agreeing to these waivers, Defendant is aware that a sentence has

not yet been determined by the Court.   Defendant is also aware that any estimate

of the possible sentencing range under the sentencing guidelines that he may have

received from his counsel, the United States or the Probation Office, is a prediction

and not a promise, did not induce his guilty plea, and is not binding on the United

States, the Probation Office or the Court.   The United States does not make any

promise or representation concerning what sentence the defendant will receive.

Defendant further understands and agrees that the United States Sentencing

Guidelines are "effectively advisory" to the Court.   *See United States v. Booker*,

543 U.S. 220 (2005).   Accordingly, Defendant understands that, although the

Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10.     Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Agreement.

## The United States' Agreements

11.     The United States agrees to each of the following:

a.     At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines; and

b.     If Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States agrees not to oppose Defendant's request for an additional one-level departure based on the timeliness of the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense (if Defendant's offense level is 16 or greater).

8

**Agreement Binding - Southern District of Texas and Fraud Section Only**

12.    The Offices agree that they will not further criminally prosecute Defendant for offenses arising from conduct charged in the Information.   This Agreement binds only the Offices and Defendant.   It does not bind any other United States Attorney's Office or any other component of the Department of Justice.   The Offices will bring this Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓ to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

13.    The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

a.    to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

b.    to set forth or dispute sentencing factors or facts material to sentencing;

c.    to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

9

d.      to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

e.      to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14.     Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a).  Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.  Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.   If the Court should impose any sentence up to the maximum established by statute, Defendant cannot, for that reason alone,

10

withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Agreement.

## Waiver of Rights

15.     Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Agreement.   Defendant understands that the rights of a defendant include the following:

a.     Defendant has a right to have the United States Attorney present the charges in the Information to a Grand Jury consisting of not fewer than sixteen (16) nor more than twenty-three (23) impartial citizens, who would hear the facts of the case as presented by the United States Attorney and witnesses, and then return an indictment against the defendant only if twelve (12) or more members of the Grand Jury found that there was probable cause to believe the defendant committed the crime charged in the Criminal Information.

b.     If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.   The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

c.    At a trial, the United States would be required to present witnesses and other evidence against Defendant.    Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them.    In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.    If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

d.    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.    However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

16.    Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Information.    If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.    Defendant hereby admits and stipulates to the following facts, which constitutes a stipulation of facts for purposes of Section 1B1.2 of the U.S. Sentencing Guidelines, and Defendant agrees that such facts establish guilt of the charged offense beyond a reasonable doubt:

The following took place at all relevant times, unless otherwise specified.

Defendant Saman Ahsani ("Defendant") was a citizen of the United Kingdom and Iran. Defendant knew that paying a bribe to a foreign official, in order to secure an improper advantage in obtaining or retaining business, was a crime, including under the United States' Foreign Corrupt Practices Act ("FCPA").

"Intermediary Company" was a Monaco-based group of affiliated companies whose identities are known to Defendant, which maintained business operations through its various subsidiaries and affiliates in multiple countries, including in Algeria, Angola, Azerbaijan, Iraq, Kazakhstan, Libya, the United Arab Emirates, and elsewhere. Intermediary Company provided services, including intermediary services, for various multinational companies ("Client Companies") operating in the energy sector, including companies that were headquartered or doing business in the Southern District of Texas, that were "issuers," "domestic concerns," or "persons," as those terms are defined by the FCPA, 15 U.S.C. §§ 78dd-1(a); 78dd-2(a), (h)(1); and 78dd-3(a), (f)(1). In providing services to the Client Companies, Intermediary Company, its subsidiaries and affiliates, and its executives and employees, including Defendant, acted as "agents" of the Client Companies.

Companies 1-25, whose identities are known to Defendant, were among the

Client Companies. "Company 1," "Company 2," "Company 3," "Company 4," the parent company of "Company 5," "Company 6," "Company 21," and "Company 24" were "issuers" as that term is used in the FCPA. "Company 22" and "Company 23" were "domestic concerns" as that term is used in the FCPA. "Company 4," "Company 7," "Company 8," "Company 9," "Company 10," "Company 11," "Company 12," "Company 13," "Company 14," "Company 15," "Company 16," "Company 17," "Company 18," "Company 19," "Company 20," and "Company 25" were "persons" as that term is used in the FCPA. Company 1, Company 3, Company 4, Company 6, Company 22 were all headquartered in the Southern District of Texas.

"Due Diligence Organization," was an anti-bribery organization headquartered in the United States whose identity is known to Defendant.

Beginning in or around 2003, Defendant became an employee of Intermediary Company. In or around 2005 Defendant became Intermediary Company's Commercial Director and Libya Territory Manager, a position he held until at least 2011. In or around 2011, Defendant became Intermediary Company's Chief Operations Officer ("COO"), a position he held until at least 2016. Beginning by at least in or around 1994 and continuing until at least in or around 2016, Defendant's brother and co-defendant, Cyrus Ahsani

14

("Co-Defendant"), was Intermediary Company's Chief Executive Officer ("CEO").

In or before 2005, Defendant became aware of a conspiracy between and among Intermediary Company and certain of its executives and employees, including Co-Defendant, certain Client Companies, certain executives and employees of Client Companies, and others, the purpose of which was to enrich themselves, Intermediary Company, certain Client Companies, and others, by, among other things, making corrupt bribe and kickback payments to foreign officials, so that Intermediary Company and certain Client Companies would obtain and retain lucrative business contracts; to launder the proceeds of the corrupt bribery and kickback schemes in order to promote and conceal the ongoing schemes; and to falsify and destroy records to avoid detection and prosecution by law enforcement in the United States and elsewhere.

In or around 2005, Defendant knowingly and willfully joined the conspiracy, aware of its objects and with the intent to advance the conspiracy. Thereafter, Defendant, Co-Defendant, and others undertook certain acts, in the Southern District of Texas and elsewhere, in furtherance of the conspiracy, which generally included:

(a) communicating in person, by email, telephone, and fax machine, the need,

agreement, and manner of bribing foreign officials;

(b) obtaining, using, disseminating, and discussing the contents of confidential bidding and other inside information from within foreign governments, agencies, and instrumentalities, in order to obtain improper advantages and lucrative contract awards for Intermediary Company and its Client Companies;

(c) soliciting energy, engineering, and construction companies operating in the energy sector to retain Intermediary Company's services by describing their "proximity" to foreign officials, and their ability to obtain inside confidential bidding information;

(d) using code words, maintaining multiple versions of books and records within Intermediary Company, and structuring bribe and kickback payments through multiple affiliates and subsidiary companies of Intermediary Company in order to promote and conceal the ongoing bribery and kickback scheme from detection by law enforcement and others;

(e) engaging in "bid-rigging" between certain of the Client Companies and others and paying "kickbacks" to employees of certain of the Client Companies and others;

(f) maintaining original and copies of certain incriminating documents offsite in other locations than Intermediary Company's office location in Monaco or their

residences, in order to conceal their discovery by law enforcement and others;

(g) destroying certain original and copies of incriminating documents, including destroying flash drives and paper records, in order to conceal their discovery by law enforcement and others; and

(h) making false and misleading statements and omissions, including in wire communications, to Due Diligence Organization in order to obtain certain compliance certifications that were used to circumvent certain Client Companies' compliance functions and to facilitate business transactions with them.

Defendant, as Commercial Director and Libya Territory Manager, and later COO, personally managed and oversaw certain portions of the conspiracy, including, but not limited to:

(a) between in or around and between 2005 and 2011, overseeing Intermediary Company's business in Libya, including facilitating the payment of bribes to government officials in Libya, on behalf of Company 10, Company 11, Company 12, Company 23, Company 24, and others;

(b) between in or around and between 2005 and 2016, structuring the payment of bribes to foreign officials in order to launder the proceeds of the corrupt bribery and kickback schemes in order to promote and conceal the ongoing

schemes, including moving corrupt payments through multiple bank accounts owned and controlled by Intermediary Company's various subsidiary and affiliated companies, moving money through accounts located in multiple foreign countries, and timing the payments to disguise their true nature;

(c) between in or around and between 2005 and 2016, falsifying and destroying records of the bribery and money laundering schemes, including maintaining a second set of books for Company 7; and

(d) between in or around and between 2006 and 2016, overseeing communication with Due Diligence Organization, which included providing Due Diligence Organization with false information indicating Intermediary Company was not involved in the payment of bribes, and providing Due Diligence Organization with business references who Defendant believed knew or should have known about Intermediary Company's bribe payments, or who Defendant believed received commercial kickbacks from Intermediary Company.

In addition, Defendant undertook the following overt acts, among others, in the Southern District of Texas and elsewhere:

On or about August 17, 2005, Defendant and others, including

18

Co-Defendant, caused Intermediary Company to transfer approximately $136,500 from an Intermediary Company bank account in Switzerland to a bank account in the United States, believing at least a portion of the funds would be used to pay a bribe to a foreign official to help Company 7 obtain and retain business in Kazakhstan.

On or about May 24, 2006, Defendant and others, including Co-Defendant, caused Intermediary Company to enter into an "Agency Agreement" with Company 10, which authorized Intermediary Company to assist in negotiating with the Libyan government and securing the award of a design and construction project in Libya.

On or about February 16, 2007, Defendant and others, including Co-Defendant, caused Intermediary Company to transfer approximately $191,400 from an Intermediary Company bank account in Switzerland, through a correspondent bank account in the United States, on to a bank account in the United Kingdom, with the intention that a portion of the funds would be used to pay a bribe to a foreign official on behalf of and for the benefit of Company 6.

In or around June 2009, Defendants and others, including Co-Defendant, caused a corrupt payment of approximately $250,000 to be made to a relative of "Libya Official 1," a Libyan government official whose identity is known to

Defendant, for Company 10.

On or about January 18, 2011, Defendant signed a "Sales Consultant Agreement" on behalf of Intermediary Company agreeing to pay CC-7, a business partner whose identity is known to Defendant, approximately $16 million in order to obtain a project in Iraq for Company 8, intending that portions of such payments would be used to bribe government officials in Iraq.

On or about July 11, 2011, Defendants and others, including Co-Defendant, generated a spreadsheet designed to identify certain areas of possible criminal exposure. This spreadsheet identified bribes and other corrupt payments made on behalf of Company 3, Company 6, Company 7, Company 8, Company 10, Company 11, Company 13, Company 14, Company 15, Company 17, Company 18, Company 19, Company 20, and Company 22, among others.

On or about August 18, 2011, while in the United States, Defendant and CC-3, a business partner of Intermediary Company whose identity is known to Defendant, spoke by telephone with Co-Defendant concerning making a payment to CC-7 related to a project with Company 8.

On or about October 25, 2012, Defendant and others, including Co-Defendant, caused Intermediary Company to transfer approximately $70,000 from an Intermediary Company bank account in the United Arab Emirates, through

a correspondent bank account in the United States, on to a bank account of a shell company that a Company 2 executive had told Co-Defendant to pay in connection with a project in Algeria. Defendant made such payment to promote the ongoing bribery scheme and the payment was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the bribery scheme.

On or about December 6, 2013, Defendant and others conspired to send an email to a U.S.-based employee of Due Diligence Organization, through interstate and international wires, with the following materially false statement: "I certify that to the best of my knowledge, neither [Intermediary Company] nor any of its employees or third parties acting on its behalf have offered or given anything of value to a government official in order to obtain or retain business or receive an improper business advantage."

On or about September 4, 2014, Defendant signed a "Memorandum of Understanding" with Company 25, a privately owned maintenance company headquartered in Monaco, whose identity is known to Defendant, on behalf of Intermediary Company, in which the parties agreed to establish a joint venture and jointly bid for a maintenance management services project in Iraq. Defendant signed this "Memorandum of Understanding" intending that Intermediary

Company would pay bribes to Iraqi government officials in order to obtain the contemplated maintenance management services project.

In or around April 2016, while knowing about the existence of ongoing criminal investigations into the bribes that were paid by Intermediary Company, Defendant and others, including Co-Defendant destroyed electronic and paper records containing evidence of the bribery and money laundering schemes in order to conceal and evade detection by United States law enforcement and others.

## Breach of Plea Agreement

17.    If Defendant should fail in any way to fulfill completely all of the obligations under this Agreement, the United States will be released from its obligations under this Agreement, and Defendant's plea and sentence will stand.  If at any time Defendant retains, conceals, or disposes of assets in violation of this Agreement, or if Defendant knowingly withholds evidence, is not completely truthful with the United States,

, then the United States, in its sole discretion may find Defendant in breach of this Agreement and may move the Court to set aside the guilty plea and reinstate prosecution, including for offenses other than charged in the Information.  Any information and documents that have been disclosed by Defendant to the United States or any other prosecuting office, whether

22

prior to or subsequent to this Agreement and regardless of whether provided pursuant to a proffer agreement, and all leads derived therefrom, may be used against Defendant in any such prosecution. Defendant further agrees that in the event of a breach this Agreement, Defendant will not contest extradition to the United States. Defendant agrees he will execute a waiver of extradition prior to entering a plea of guilty.

### Restitution, Forfeiture, and Fines – Generally

18.     This Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

19.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this Agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information,

bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

20.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

21.     Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Forfeiture

22.     Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of proceeds from Intermediary Company's contracts associated with bribe payments by Defendant or his co-conspirators, and that the factual basis for his guilty plea supports the forfeiture of property involved in money laundering.

23. Defendant understands that the United States will seek imposition of a money judgment against him. Because, among other reasons, not all of the relevant records are currently available, it is not practical at this time to determine the proper amount of the forfeiture money judgment. Prior to sentencing, Defendant and the United States will attempt to agree upon the amount of the money judgment. If they cannot agree, then the Court will be asked to determine a forfeiture amount based on a reasonable approximation of the amount of criminal proceeds that Defendant obtained and controlled (whether personally or through his family members) as a result of the conspiracy to violate the FCPA and commit money laundering. If a personal money judgment against Defendant is imposed by the Court, Defendant and the United States agree that the net proceeds of forfeited property will be credited against such a personal money judgment to the extent of Defendant's interest in the specific property that was forfeited.

24. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of his property until the money judgment is fully satisfied.

25. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal, or state.

26.     Defendant consents to any agreed order of forfeiture, including any personal money judgment, becoming final as to Defendant immediately following its entry, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A), even if it is signed before sentencing.

27.     Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

28.     Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.   Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

### Complete Agreement

29.     This written Agreement, consisting of 30 pages, including the attached addendum of Defendant and his attorney, constitutes the complete Agreement between the United States, Defendant, and Defendant's counsel.   No promises or

representations have been made by the United States except as set forth in writing in this Agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

30. Any modification of this Agreement must be in writing and signed by all parties.

Filed at _____Houston_____, Texas, on ___25th March___, 2019.

_____
Defendant

Subscribed and sworn to before me on ___March 25___, 2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____

Deputy United States District Clerk

27

APPROVED:

Ryan K. Patrick
United States Attorney
Southern District of Texas

Robert Zink
Acting Chief
Criminal Division, Fraud
Section United States
Department of Justice

By: _____

Suzanne Elmilady
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9574

_____

Dennis R. Kihm
Gerald M. Moody, Jr.
Jonathan Robell
Gwendolyn A. Stamper
Trial Attorneys
Criminal Division, Fraud Section
Telephone: (202) 616-2999

_____

Saman Absani
Defendant

_____

Rachel Talay
Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. _____** |
| | § | |
| **SAMAN AHSANI,** | § | **UNDER SEAL** |
| **Defendant.** | § | |

**PLEA AGREEMENT -- ADDENDUM**

I have fully explained to Defendant his rights with respect to the pending Information. These rights and the Information and this Agreement have been explained to Defendant. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____
Rachel Talay
Attorney for Defendant

3.25.19
Date

29

Case 4:19-cr-00147 Document 47-9 *SEALED* Filed on 03/25/19 in TXSD Page 30 of 30

I have consulted with my attorney and fully understand all my rights with respect to the Information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms.

_____          25th March, 2019.
Saman Ahsani                              Date
Defendant

United States District Court
Southern District of Texas

**ENTERED**

March 25, 2019

David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ' | |
| | ' | |
| | ' | **CRIMINAL NO. H-19-147** |
| **v.** | ' | |
| | ' | |
| **SAMAN AHSANI,** | ' | |
| **Defendant.** | | |

### AFFIDAVIT AND WAIVER OF EXTRADITION

Saman Ahsani, being duly sworn, deposes and says:

1.      I am the named defendant in the above-captioned case.  I am a citizen of the United Kingdom and Iran.

2.      On March 25, 2019, I will plead guilty in the above-captioned case pursuant to a plea agreement with the Department of Justice.  I understand that my attorney will petition the Court to allow me to travel internationally while on bail until I am sentenced in connection with the above-captioned case.

3.      I have reviewed with my counsel, Rachel Talay of Redmon, Peyton & Braswell, LLP, the charges contained in the information in the above-captioned case (the "Information").  In addition, I have been informed by Ms. Talay, with whom I am satisfied, that the United States has entered into Extradition Treaties with various foreign nations; that the United States has entered into other

multilateral agreements affecting extradition, including, but not limited to the United Nations Convention against Corruption; and that foreign nations may also grant extradition as a matter of comity.

4.      I understand that, in the event I traveled to a foreign nation and refused to return to the United States for sentencing or any other court proceeding, the United States could seek my extradition from a foreign nation on the Information and/or other charges related to my failure to appear in court. I further understand that Extradition Treaties, multilateral agreements, and interstate comity could afford me certain rights to challenge this extradition to the United States.

5.      If I am released on bail in connection with the Information upon conditions that allow international travel, I hereby voluntarily waive any rights to contest any extradition request by the United States under the applicable Extradition Treaty, multilateral agreements, or interstate comity with respect to the offenses charged in the Information and any charges related to my failure to appear. I further agree to consent to extradition to the United States under the applicable Extradition Treaty, multilateral agreements, or interstate comity with respect to the offenses charged in the Information and any charges related to my failure to appear.

6.      I make this waiver freely and voluntarily, after having consulted with counsel.

2

Dated this 25th day of March, 2019.

_____

Saman Ahsani

I hereby certify that on this 25th day of March, 2019, Saman Ahsani personally

appeared before me and made his oath in due form of law that the statements

herein are true.

_____

The Honorable Vanessa D. Gilmore
United States District Judge
South District of Texas

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | **CRIMINAL NO. H-19-147** |
| | § | |
| **CYRUS ALLEN AHSANI,** | § | **UNDER SEAL** |
| | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States

Attorney for the Southern District of Texas and Suzanne Elmilady, Assistant United

States Attorney, and Robert Zink, Acting Chief of the Fraud Section of the Criminal

Division of the United States Department of Justice ("Fraud Section," and when used

collectively with the United States Attorney's Office, the "Offices") and Dennis R.

Kihm, Gerald M. Moody, Jr., Jonathan Robell, and Gwendolyn A. Stamper, Trial

Attorneys, and the defendant, Cyrus Allen Ahsani ("Defendant"), and Defendant's

counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of

Criminal Procedure, state that they have entered into this Plea Agreement

("Agreement"), the terms and conditions of which are as follows:

### Defendant's Agreement

1.     Defendant agrees to plead guilty to Count One of the Information.

Count One charges Defendant with conspiracy to violate of the Foreign Corrupt

Practices Act ("FCPA"), Title 15, United States Code, Sections 78dd-1, 78dd-2, 78dd-3, launder monetary instruments, as defined in Title 18 United States Code Section 1956(c)(7) in violation of Title 18, United States Code Sections 1956(a)(2)(A), 1956(a)(2)(B)(i), and obstruct justice, in violation of Title 18, United States Code, Section 1519, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Information, or proved to a jury beyond a reasonable doubt.

### Punishment Range

2.    The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 371, is imprisonment of not more than five years and a fine of not more than $250,000 or twice the gross gain or loss. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. *See* Title 18, United States Code, Sections 3571(b)(3), 3571(d), and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Section 3583(e)(3). Defendant

2

understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.      Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00). The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.      Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.







**Waiver of Appeal and Collateral Review**

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. Defendant's knowing and voluntary waiver of the right

6

to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s). In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this Agreement and seek specific performance of these waivers.

8.      Defendant waives all defenses based on venue or speedy trial under the Constitution and Speedy Trial Act, and jurisdiction or the statute of limitations, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

9.      In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.   Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court.   The United States does not make any promise or representation concerning what sentence the defendant will receive.   Defendant

further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10.     Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Agreement.

### The United States' Agreements

11.     The United States agrees to each of the following:

a.     At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines; and

b.     If Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, the United States agrees not to oppose Defendant's request for an additional one-level departure based on the timeliness of

the plea or the expeditious manner in which Defendant provided complete information regarding his role in the offense (if Defendant's offense level is 16 or greater).

## Agreement Binding - Southern District of Texas and Fraud Section Only

12.     The Offices agree that they will not further criminally prosecute Defendant for offenses arising from conduct charged in the Information. This Agreement binds only the Offices and Defendant. It does not bind any other United States Attorney's Office or any other component of the Department of Justice. The Offices will bring this Agreement                                        to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13.     The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

a.     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

b.     to set forth or dispute sentencing factors or facts material to sentencing;

9

c.  to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

d.  to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

e.  to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

14.  Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a).  Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.  Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.  If the Court should impose any sentence up to the maximum

10

established by statute, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Agreement.

## Waiver of Rights

15.    Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Agreement.   Defendant understands that the rights of a defendant include the following:

a.    Defendant has a right to have the United States Attorney present the charges in the Information to a Grand Jury consisting of not fewer than sixteen (16) nor more than twenty-three (23) impartial citizens, who would hear the facts of the case as presented by the United States Attorney and witnesses, and then return an indictment against the defendant only if twelve (12) or more members of the Grand Jury found that there was probable cause to believe the defendant committed the crime charged in the Criminal Information.

b.    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

c.    At a trial, the United States would be required to present witnesses and other evidence against Defendant.   Defendant would have the

11

opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

d. At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

16. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the Information. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. Defendant hereby admits and stipulates to the following facts, which constitutes a stipulation of facts for purposes of Section 1B1.2 of the U.S. Sentencing Guidelines, and Defendant agrees that such facts establish guilt of the charged offense beyond a reasonable doubt:

The following took place at all relevant times, unless otherwise specified.

Defendant Cyrus Allen Ahsani ("Defendant") was a citizen of the United

Kingdom and Iran, and, until on or about July 1, 2011, a citizen of the United States. Defendant knew that paying a bribe to a foreign official, in order to secure an improper advantage in obtaining or retaining business, was a crime, including under the United States' Foreign Corrupt Practices Act ("FCPA").

"Intermediary Company" was a Monaco-based group of affiliated companies whose identities are known to Defendant, which maintained business operations through its various subsidiaries and affiliates in multiple countries, including in Algeria, Angola, Azerbaijan, Iraq, Kazakhstan, Libya, the United Arab Emirates, and elsewhere. Intermediary Company provided services, including intermediary services, for various multinational companies ("Client Companies") operating in the energy sector, including companies that were headquartered or doing business in the Southern District of Texas, that were "issuers," "domestic concerns," or "persons," as those terms are defined by the FCPA, 15 U.S.C. §§ 78dd-1(a); 78dd-2(a), (h)(1); and 78dd-3(a), (f)(1). In providing services to the Client Companies, Intermediary Company, its subsidiaries and affiliates, and its executives and employees, including Defendant, acted as "agents" of the Client Companies.

Companies 1-25, whose identities are known to Defendant, were among the Client Companies. "Company 1," "Company 2," "Company 3," "Company 4,"

the parent company of "Company 5," "Company 6," "Company 21," and "Company 24" were "issuers" as that term is used in the FCPA. "Company 22" and "Company 23" were "domestic concerns" as that term is used in the FCPA. "Company 4," "Company 7," "Company 8," "Company 9," "Company 10," "Company 11," "Company 12," "Company 13," "Company 14," "Company 15," "Company 16," "Company 17," "Company 18," "Company 19," "Company 20," and "Company 25" were "persons" as that term is used in the FCPA. Company 1, Company 3, Company 4, Company 6, Company 22 were all headquartered in the Southern District of Texas.

"Due Diligence Organization," was an anti-bribery organization headquartered in the United States whose identity is known to Defendant.

In or around 1991, Defendant became an executive at Intermediary Company. In or around 1994, Defendant became the Chief Executive Officer ("CEO") of Intermediary Company, a position he held until at least 2016.

Beginning in or around 2003, Defendant's brother and co-defendant, Saman Ahsani ("Co-Defendant"), became an employee of Intermediary Company. In or around 2005, Co-Defendant became Intermediary Company's Commercial Director and Libya Territory Manager, a position he held until at least 2011. In or around 2011, Co-Defendant became Intermediary Company's Chief Operations

Officer ("COO"), a position he held until at least 2016.

Beginning in or around 1999, and continuing until at least in or about 2016, in the Southern District of Texas and elsewhere, Defendant knowingly and willfully conspired with others, including Intermediary Company and certain of its executives and employees, certain Client Companies, certain executives and employees of Client Companies, and others, the purpose of which was to enrich themselves, Intermediary Company, certain Client Companies, and others, by, among other things, making corrupt bribe and kickback payments to foreign officials, so that Intermediary Company and certain Client Companies would obtain and retain lucrative business contracts; to launder the proceeds of the corrupt bribery and kickback schemes in order to promote and conceal the ongoing schemes; and to falsify and destroy records to avoid detection and prosecution by law enforcement in the United States and elsewhere.

Thereafter, Defendant and others (including by in or around 2005, Co-Defendant) undertook certain acts, in the Southern District of Texas and elsewhere, in furtherance of the conspiracy, which generally included:

(a) communicating in person, by email, telephone, and fax machine, the need, agreement, and manner of bribing foreign officials;

(b) obtaining, using, disseminating, and discussing the contents of confidential

15

bidding and other inside information from within foreign governments, agencies, and instrumentalities, in order to obtain improper advantages and lucrative contract awards for Intermediary Company and its Client Companies;

(c) soliciting energy, engineering, and construction companies operating in the energy sector to retain Intermediary Company's services by describing their "proximity" to foreign officials, and their ability to obtain inside confidential bidding information;

(d) using code words, maintaining multiple versions of books and records within Intermediary Company, and structuring bribe and kickback payments through multiple affiliates and subsidiary companies of Intermediary Company in order to promote and conceal the ongoing bribery and kickback scheme from detection by law enforcement and others;

(e) engaging in "bid-rigging" between certain of the Client Companies and others and paying "kickbacks" to employees of certain of the Client Companies and others;

(f) maintaining original and copies of certain incriminating documents offsite in other locations than Intermediary Company's office location in Monaco or their residences, in order to conceal their discovery by law enforcement and others;

(g) destroying certain original and copies of incriminating documents, including

destroying flash drives and paper records, in order to conceal their discovery by law enforcement and others; and

(h) making false and misleading statements and omissions, including in wire communications, to Due Diligence Organization in order to obtain certain compliance certifications that were used to circumvent certain Client Companies' compliance functions and to facilitate business transactions with them.

Defendant, as CEO, personally managed and oversaw certain portions of the conspiracy, including, but not limited to:

(a) Between in or around and between 1999 and 2016, personally negotiating bribe payments executives and employees of the Client Companies and others, and with foreign officials and their agents;

(b) Between in or around and between 1999 and 2016, overseeing Intermediary Company employees and executives, who themselves negotiated bribe payments with foreign officials and their agents;

(c) Between in or around and between 1999 and 2016, directing others, including Co-Defendant, to launder the proceeds of the bribe payments; and

(d) Between in or around and between 2011 and 2016, falsifying and destroying records of the bribery and money laundering scheme to avoid detection by

law enforcement and others.

In addition, Defendant undertook the following overt acts, among others, in the Southern District of Texas and elsewhere:

On or about March 30, 2005, Defendant, while in Houston, Texas, in the Southern District of Texas, sent an email, through interstate and international wire, to "CC-2," an employee of Intermediary Company and whose identity is known to Defendant, in which Defendant discussed a meeting in Houston, Texas, in the Southern District of Texas, with executives at Company 3 and Company 4. In the email Defendant used a codename to refer to a foreign official who Defendant knew to be a bribe recipient.

On or about February 16, 2007, Defendant and others, including Co-Defendant, caused Intermediary Company to transfer approximately $191,400 from an Intermediary Company bank account in Switzerland, through a correspondent bank account in the United States, on to a bank account in the United Kingdom, with the intention that a portion of the funds would be used to pay a bribe to a foreign official on behalf of and for the benefit of Company 6.

On or about August 25, 2010, Defendant, Co-Defendant, and others, caused Intermediary Company to enter into a consultancy agreement with a company controlled by CC-7, a business partner whose identity is known to Defendant,

which included paying CC-7 approximately $4.5 million for, among other things, assisting Company 8 in obtaining Iraq Project 1A, an oil and gas development project in Iraq that is known to Defendant. Defendant caused this contract to be executed believing that CC-7 would use portions of the $4.5 million to pay bribes to government officials in Iraq in order to obtain or retain Iraq Project 1A for Company 8.

On or about August 18, 2011, Defendant spoke by phone with Co-Defendant and CC-3, a business partner of Intermediary Company whose identity is known to Defendant, while Co-Defendant and CC-3 were in the United States, concerning making a payment to CC-7 related to a project with Company 8.

On or about January 3, 2012, Defendant signed a "Commercial Advisor Agreement" on behalf of Intermediary Company with two subsidiaries of Rolls-Royce plc, including their wholly owned United States-based subsidiary, Rolls-Royce Energy Systems, Inc. ("RRESI"), a "domestic concern" as defined in the FCPA. The terms of the Commercial Advisor Agreement appointed Intermediary Company to be RRESI's commercial agent in Iraq, for the purposes of marketing RRESI products. Defendant signed this contract intending that Intermediary Company would pay bribes to Iraqi government officials in its attempts to obtain business on behalf of RRESI in Iraq.

On or about October 25, 2012, Defendant and others, including Co-Defendant, caused Intermediary Company to transfer approximately $70,000 from an Intermediary Company bank account in the United Arab Emirates, through a correspondent bank account in the United States, on to a bank account of a shell company that a Company 2 executive had told Defendant to pay in connection with a project in Algeria. Defendant made such payment to promote the ongoing bribery scheme and the payment was designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the bribery scheme.

On or about January 14, 2015, Defendant and others, including Co-Defendant, caused the execution of a "Master Agreement" with Company 25 for a maintenance management services project in Iraq, intending that Intermediary Company would pay bribes to Iraqi government officials in order to obtain the contemplated maintenance management services project.

In or around April 2016, while knowing about the existence of ongoing criminal investigations into the bribes that were paid by Intermediary Company, Defendant and others, including Co-Defendant destroyed electronic and paper records containing evidence of the bribery and money laundering schemes in order to conceal and evade detection by United States law enforcement and others.

## Breach of Plea Agreement

17.    If Defendant should fail in any way to fulfill completely all of the obligations under this Agreement, the United States will be released from its obligations under this Agreement, and Defendant's plea and sentence will stand.    If at any time Defendant retains, conceals, or disposes of assets in violation of this Agreement, or if Defendant knowingly withholds evidence, is not completely truthful with the United States, ███████████████████████████████████████

████████████████████████████████    then the United States, in its sole discretion may find Defendant in breach of this Agreement and may move the Court to set aside the guilty plea and reinstate prosecution, including for offenses other than charged in the Information.    Any information and documents that have been disclosed by Defendant to the United States or any other prosecuting office, whether prior to or subsequent to this Agreement and regardless of whether provided pursuant to a proffer agreement, and all leads derived therefrom, may be used against Defendant in any such prosecution.    Defendant further agrees that in the event of a breach this Agreement, Defendant will not contest extradition to the United States. Defendant agrees he will execute a waiver of extradition prior to entering a plea of guilty.

### Restitution, Forfeiture, and Fines – Generally

18.     This Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial interest.  Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

19.     Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this Agreement.  Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information.  Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

20.     Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed,

signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

21.     Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Forfeiture

22.     Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of proceeds from Intermediary Company's contracts associated with bribe payments by Defendant or his co-conspirators, and that the factual basis for his guilty plea supports the forfeiture of property involved in money laundering.

23.     Defendant understands that the United States will seek imposition of a money judgment against him. Because, among other reasons, not all of the relevant records are currently available, it is not practical at this time to determine the proper amount of the forfeiture money judgment. Prior to sentencing, Defendant and the United States will attempt to agree upon the amount of the money judgment. If they cannot agree, then the Court will be asked to determine a forfeiture amount based on a reasonable approximation of the amount of criminal proceeds that Defendant

obtained and controlled (whether personally or through his family members) as a result of the conspiracy to violate the FCPA and commit money laundering. If a personal money judgment against Defendant is imposed by the Court, Defendant and the United States agree that the net proceeds of forfeited property will be credited against such a personal money judgment to the extent of Defendant's interest in the specific property that was forfeited.

24.     Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of his property until the money judgment is fully satisfied.

25.     Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal, or state.

26.     Defendant consents to any agreed order of forfeiture, including any personal money judgment, becoming final as to Defendant immediately following its entry, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A), even if it is signed before sentencing.

27.     Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

28.     Defendant understands that under the Sentencing Guidelines the Court
is permitted to order Defendant to pay a fine that is sufficient to reimburse the
government for the costs of any imprisonment or term of supervised release, if any.
Defendant agrees that any fine imposed by the Court will be due and payable
immediately, and Defendant will not attempt to avoid or delay payment.   Subject to
the provisions of paragraph 7 above, Defendant waives the right to challenge the fine
in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

29.     This written Agreement, consisting of 29 pages, including the attached
addendum of Defendant and his attorney, constitutes the complete Agreement
between the United States, Defendant, and Defendant's counsel.   No promises or
representations have been made by the United States except as set forth in writing in
this Agreement.   Defendant acknowledges that no threats have been made against
him and that he is pleading guilty freely and voluntarily because he is guilty.

29.   Any modification of this Agreement must be in writing and signed by
all parties.

Filed at ___Houston___, Texas, on ___March 25___, 2019.

_____
Defendant

25

Case 4:19-cr-00147 Document 51 *SEALED* Filed on 03/25/19 in TXSD Page 26 of 23

Subscribed and sworn to before me on _____ March 25 _____, 2019.

                         DAVID J. BRADLEY, Clerk
                         UNITED STATES DISTRICT CLERK

By:    _____
                         Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney
Southern District of Texas

Robert Zink
Acting Chief
Criminal Division, Fraud
Section United States
Department of Justice

By:

Suzanne Elmilady
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9574

Dennis R. Kihm
Gerald M. Moody, Jr.
Jonathan Robell
Gwendolyn A. Stamper
Trial Attorneys
Criminal Division, Fraud Section
Telephone: (202) 616-2999

Cyrus Allen Ahsani
Defendant

Rachel Talay
Attorney for Defendant

27

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. _____** |
| | § | |
| **CYRUS ALLEN AHSANI,** | § | **UNDER SEAL** |
| **Defendant.** | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Information. These rights and the Information and this Agreement have been explained to Defendant. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Agreement with Defendant. To my knowledge, Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____  
Rachel Talay  
Attorney for Defendant

3-25-19  
Date

28

I have consulted with my attorney and fully understand all my rights with respect to the Information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Agreement with my attorney. I understand this Agreement and I voluntarily agree to its terms.

_____
Cyrus Allen Ahsani
Defendant

_____
03/25/19
Date

29

United States District Court
Southern District of Texas
**ENTERED**
March 25, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

UNITED STATES OF          '
AMERICA                   '

                       '    **CRIMINAL NO. H-19-147**

        v.                '

                       '

**CYRUS ALLEN AHSANI,**      '
    **Defendant.**

## AFFIDAVIT AND WAIVER OF EXTRADITION

Cyrus Allen Ahsani, being duly sworn, deposes and says:

     1.      I am the named defendant in the above-captioned case. I am a citizen

of the United Kingdom and Iran. ███████████████████

███████

     2.      On March 25, 2019, I will plead guilty in the above-captioned case

pursuant to a plea agreement with the Department of Justice. I understand that my

attorney will petition the Court to allow me to travel internationally while on bail

until I am sentenced in connection with the above-captioned case.

     3.      I have reviewed with my counsel, Rachel Talay of Redmon, Peyton &

Braswell, LLP, the charges contained in the information in the above-captioned

case (the "Information"). In addition, I have been informed by Ms. Talay, with

whom I am satisfied, that the United States has entered into Extradition Treaties

with various foreign nations; that the United States has entered into other multilateral agreements affecting extradition, including, but not limited to the United Nations Convention against Corruption; and that foreign nations may also grant extradition as a matter of comity.

4.      I understand that, in the event I traveled to a foreign nation and refused to return to the United States for sentencing or any other court proceeding, the United States could seek my extradition from a foreign nation on the Information and/or other charges related to my failure to appear in court. I further understand that Extradition Treaties, multilateral agreements, and interstate comity could afford me certain rights to challenge this extradition to the United States.

5.      If I am released on bail in connection with the Information upon conditions that allow international travel, I hereby voluntarily waive any rights to contest any extradition request by the United States under the applicable Extradition Treaty, multilateral agreements, or interstate comity with respect to the offenses charged in the Information and any charges related to my failure to appear. I further agree to consent to extradition to the United States under the applicable Extradition Treaty, multilateral agreements, or interstate comity with respect to the offenses charged in the Information and any charges related to my failure to appear.

6.    I make this waiver freely and voluntarily, after having consulted with counsel.

Dated this 25th day of March, 2019.

_____
Cyrus Allen Ahsani

I hereby certify that on this 25th day of March, 2019, Cyrus Allen Ahsani personally appeared before me and made his oath in due form of law that the statements herein are true.

_____
The Honorable Vanessa D. Gilmore
United States District Judge
South District of Texas

3

United States Courts
Southern District of Texas
FILED

APR 19 2019

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | **CASE NO. H-19-147** |
| v. § | |
| § | **UNDER SEAL** |
| CYRUS ALLEN AHSANI, and § | |
| SAMAN AHSANI, § | |
| § | |
| DEFENDANTS. § | |

## MOTION FOR ORDER PERMITTING LIMITED DISCLOSURE OF INFORMATION, PLEA AGREEMENTS, AND SEALING ORDERS

## TO THE HONORABLE VANESSA GILMORE:

The United States of America respectfully moves that the United States be permitted to disclose copies of the Information, Plea Agreements, and Sealing Orders to counsel for certain targets and subjects of the investigation. The United States of America requests that this Court require any person who receives copies of the Information and Plea Agreements to agree to abide by this Court's March 8, 2019 Order, which sealed these documents to protect the safety of the Defendants' family and to preserve the integrity of the ongoing investigations of the United States and foreign government.[1]

---

[1] In order to mitigate any such risk, the United States will (1) require the person(s) to agree to abide by the Court's March 8, 2019 Sealing Order before providing them with any information, including maintaining the anonymity of the defendants unless and until they agree to abide by the Order; (2) not provide copies of any documents to any

In order to advance its investigation, the United States seeks to confront certain targets and subjects of the investigation with the fact that the Defendants have plead guilty, and admitted to certain aspects of the various schemes as the basis for their pleas. The United States therefore requests that this Court issue an order permitting the United States to disclose Defendants' Information, Plea Agreements, and the Court's Sealing Orders to certain targets and subjects of the investigation as it deems necessary in furtherance of its investigation. In order to preserve the secrecy of the Defendants' pleas                    , the United States requests that the Court's order require that these persons agree not to disclose the Information and Plea Agreements, or the information contained therein, to any other person absent further order of the Court. In addition,

                                                    , the United States requests that this Motion and its corresponding Order be kept under seal.

**WHEREFORE,** the United States respectfully requests that this Court enter a limited order permitting the United States to disclose the Defendants' Information, Plea Agreements, and Sealing Orders to certain targets and subjects of the United States' investigation who agree not to disclose these documents or the information contained therein. The Government further requests that the Clerk of Court be

---

person, but only allow the inspection of such documents; (3) only provide such information to a small group of persons; and (4) not provide such information to multiple parties at once, but separately in time, so that such persons are aware that any leak of this information would be traceable to them.

2

directed to make no public docket entry of this Motion and its corresponding Order.

Respectfully submitted,

Ryan K. Patrick
United States Attorney
Southern District of Texas

By: _____

Suzanne Elmilady
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9342

Robert Zink
Acting Chief
Criminal Division, Fraud
Section United States
Department of Justice

_____

Dennis R. Kihm
Gerald M. Moody, Jr.
Jonathan Robell
Gwendolyn A. Stamper
Trial Attorneys
Criminal Division, Fraud Section
Telephone: (202) 616-2999

3

United States Courts
Southern District of Texas
FILED

APR 23 2019

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | **CASE NO. H-19-147** |
| v. | § | |
| | § | **UNDER SEAL** |
| CYRUS ALLEN AHSANI, and | § | |
| SAMAN AHSANI, | § | |
| | § | |
| DEFENDANTS. | § | |

## AMENDED MOTION FOR ORDER PERMITTING LIMITED DISCLOSURE OF INFORMATION, PLEA AGREEMENTS, AND SEALING ORDERS

### TO THE HONORABLE VANESSA GILMORE:

The United States of America respectfully moves that the United States be permitted to disclose copies of the Information, Plea Agreements, and Sealing Orders to counsel for certain targets and subjects of the investigation. The United States of America requests that this Court require any person who receives copies of the Information and Plea Agreements to agree to abide by this Court's March 8, 2019 Order, which sealed these documents to protect the safety of the Defendants' family and to preserve the integrity of the ongoing investigations of the United States and foreign government.[1]

---

[1] In order to mitigate any such risk, the United States will (1) require the person(s) to agree to abide by the Court's

In order to advance its investigation, the United States seeks to confront certain targets and subjects of the investigation with the fact that the Defendants have plead guilty, and admitted to certain aspects of the various schemes as the basis for their pleas. The United States therefore requests that this Court issue an order permitting the United States to disclose Defendants' Information, Plea Agreements, and the Court's Sealing Orders to certain targets and subjects of the investigation as it deems necessary in furtherance of its investigation. In order to preserve the secrecy of the Defendants' pleas ▮▮▮▮▮▮, the United States requests that the Court's order require that these persons agree not to disclose the Information and Plea Agreements, or the information contained therein, to any other person absent further order of the Court. In addition, ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮, the United States requests that this Motion and its corresponding Order be kept under seal.

**WHEREFORE,** the United States respectfully requests that this Court enter a limited order permitting the United States to disclose the Defendants' Information, Plea Agreements, and Sealing Orders to certain targets and subjects of the United States' investigation who agree not to disclose these documents or the information

---

March 8, 2019 Sealing Order before providing them with any information, including maintaining the anonymity of the defendants unless and until they agree to abide by the Order; (2) not provide copies of any documents to any person, but only allow the inspection of such documents; (3) only provide such information to a small group of persons; and (4) not provide such information to multiple parties at once, but separately in time, so that such persons are aware that any leak of this information would be traceable to them.

contained therein. The Government further requests that the Clerk of Court be directed to make no public docket entry of this Motion and its corresponding Order.

Respectfully submitted,

Ryan K. Patrick
United States Attorney
Southern District of Texas

Robert Zink
Acting Chief
Criminal Division, Fraud
Section United States
Department of Justice

By: _____
Suzanne Elmilady
Assistant United States Attorney
Southern District of Texas
Telephone: (713) 567-9342

Dennis R. Kihm
Gerald M. Moody, Jr.
Jonathan Robell
Gwendolyn A. Stamper
Trial Attorneys
Criminal Division, Fraud Section
Telephone: (202) 616-2999

## CERTIFICATE OF CONFERENCE

I certify that on April 23, 2019 I conferred with defense counsel, Rachel

Talay, and she is unopposed to this motion.

/s/
Suzanne Elmilady

## CERTIFICATE OF SERVICE

I certify that on April 23, 2019 a copy of the foregoing Motion was served to

counsel of record by email and filed with the Clerk of the Court.

/s/
Suzanne Elmilady

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CASE NO. H-19-147** |
| | § | |
| **CYRUS ALLEN AHSANI, and** | § | **UNDER SEAL** |
| **SAMAN AHSANI, and** | § | |
| Defendants. | § | |

## UNOPPOSED MOTION FOR CONTINUANCE OF PRESENTENCE DISCLOSURE & SENTENCING DATES

## TO THE HONORABLE JUDGE VANESSA D. GILMORE:

COMES NOW **CYRUS ALLEN AHSANI** and **SAMAN AHSANI**, the Defendants, by and through their attorney of record, RACHEL G. TALAY, and respectfully move this Honorable Court to enter an order to continue the presentence disclosure and sentencing dates for a period of One Hundred Eighty (180) days.

On March 25, 2019, Defendants **CYRUS ALLEN AHSANI** and **SAMAN AHSANI** plead guilty before this Honorable Court. At such time, this Honorable Court ordered the presentence investigation and disclosure and sentencing dates. Sentencing is currently set for October 21, 2019.

1



████████████████████████████████████████████████

████████████████████████████

Counsel has conferred with Assistant United States Attorney Suzanne Elmilady and Dennis R. Kihm of the Criminal Division's Fraud Section. Both Assistant United States Attorney Suzanne Elmilady and Dennis R. Kihm of the Criminal Division's Fraud Section are unopposed to this motion for continuance. Counsel has also conferred with United States Probation Officers assigned to the Defendants and they are unopposed to this motion for continuance.

For the foregoing reasons, Defendants respectfully request that this Honorable Court grant this motion for continuance of the presentence disclosure and sentencing dates for a period of One Hundred Eighty (180) days.

Respectfully submitted,

By: _____
RACHEL G. TALAY
H Street Law PLLC
1616 H Street, NW, 10th Floor
Washington, DC 20006
Phone: (202) 802-1864
rtalay@hstreetlaw.com

Counsel for Defendants, CYRUS
ALLEN AHSANI and SAMAN
AHSANI

3

## Certificate of Conference

Counsel has conferred with Assistant United States Attorney Suzanne Elmilady and Dennis R. Kihm of the Criminal Division's Fraud Section, as well as with United States Probation Officers assigned to the Defendants, and they are all unopposed to this motion.

RACHEL G TALAY

## Certificate of Service

I, RACHEL G TALAY, hereby certify that a true and correct copy of the foregoing instrument was forwarded to Assistant United States Attorney Suzanne Elmilady, in this matter at the Federal Building, Houston, Texas on this the 5th day of September 2019.

RACHEL G TALAY

4

United States District Court
Southern District of Texas

**ENTERED**
September 09, 2019
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CASE NO. H-19-147** |
| | § | |
| **CYRUS ALLEN AHSANI, and** | § | **UNDER SEAL** |
| **SAMAN AHSANI,** and | § | |
| Defendants. | § | |

## **PROPOSED ORDER**

This Court has considered the Unopposed Motion for Continuance of Presentence

Disclosure & Sentencing Dates, wherein counsel for Defendants **CYRUS ALLEN**

**AHSANI** and **SAMAN AHSANI** has represented that more time is needed ███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ Based on

the representations made in the Unopposed Motion for Continuance of Presentence

Disclosure & Sentencing Dates, the Court finds a continuance is necessary.

The Unopposed Motion for Continuance of Presentence Disclosure & Sentencing

Dates is therefore GRANTED, and the amended presentence disclosure & sentencing

dates shall be as follows:

1. By ___March 2, 2020___ the initial presentence report must be disclosed to counsel.

Case 4:19-cr-00147 Document 53 *SEALED* Filed on 09/03/19 in TXSD Page 2 of 2

2. By ___March 16, 2020___ counsel must object in writing to the facts used and application of the guidelines or state that there is no objection (14 days after disclosure).

3. By ___April 14, 2020___ the probation officer must submit to the judge the final presentence report with an addendum addressing contested issues (14 days after disclosure).

4. Sentencing is set for ___April 20, 2020___ at 9:30 am.

SIGNED on ___Sept. a___, 2019.

Honorable Vanessa D. Gilmore
United States District Judge

2

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

OCT 25 2019

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CASE NO. CR 19-147** |
| **v.** | § | |
| | § | **UNDER SEAL** |
| **CYRUS ALLEN AHSANI, and** | § | |
| **SAMAN AHSANI,** | § | |
| **Defendants.** | § | |

## MOTION TO UNSEAL CRIMINAL INFORMATION AND DOCKET PLEA HEARING

TO THE HONORABLE VANESSA GILMORE:

The United States of America respectfully moves that the Information

charging Defendants Cyrus Allen Ahsani and Saman Ahsani be unsealed, and that

their changes of plea hearings be docketed. The United States requests that all other

documents, including their Plea Agreements, remain sealed,

.

Counsel for the United States has conferred with counsel for the Defendants,

Rachel Talay, who has said that the Defendants are unopposed to this Motion.

Further, ███████████████████████████████████████████

████████████████████████, we request that this Motion and its

corresponding Order be kept under seal.

**WHEREFORE,** the Government respectfully requests that this Court enter

an order directing that the Criminal Information charging Defendant Cyrus Allen

Ahsani and Saman Ahsansi be unsealed and their changes of plea be docketed. The

Government further requests that the Clerk of Court be directed to make no public

docket entry of this Motion and its corresponding Order.

Respectfully submitted,

ROBERT ZINK
CHIEF, FRAUD SECTION
Criminal Division
United States Department of Justice

RYAN K. PATRICK
UNITED STATES ATTORNEY
Southern District of Texas

DENNIS R. KIHM
GERALD M. MOODY, JR.
GWENDOLYN A. STAMPER
TRIAL ATTORNEYS
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 616-2999

/s/
SUZANNE ELMILADY
ASSISTANT U.S. ATTORNEY
1000 Louisiana, Ste. 2300
Houston, TX 77002
Tel. (713) 567-9574

Executed on October 25, 2019

2

## CERTIFICATE OF CONFERENCE

I certify that on October 25, 2019, 2019 I conferred with defense counsel,

Rachel Talay, and she is unopposed to this motion.

/s/
Suzanne Elmilady

## CERTIFICATE OF SERVICE

I certify that on October 25, 2019 copy of the foregoing Motion was served

to counsel of record by email and filed under seal with the Clerk of the Court.

/s/
Suzanne Elmilady

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 19-147** |
| | § | |
| **CYRUS ALLEN AHSANI, and** | § | **UNDER SEAL** |
| **SAMAN AHSANI,** | § | |
| Defendants. | | |

## UNOPPOSED MOTION TO CONTINUE SENTENCING

TO THE HONORABLE VANESSA GILMORE:

The United States, by and through Ryan K. Patrick, United States Attorney, and Robert Zink, Chief of the Fraud Section of the Criminal Division of the United States Department of Justice, and Suzanne Elmilady, Assistant United States Attorney, and Dennis R. Kihm, Trial Attorney, hereby submits its Unopposed Motion to Continue Sentencing.

1.    Defendants, Cyrus Ahsani and Saman Ahsani, pleaded guilty to conspiracy to commit violations of the Foreign Corrupt Practices Act (FCPA) on March 25, 2019, pursuant to a plea agreement with the United States. ████

████████████████████████████████████████████████

████████████████████████

2.    ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ .

3. Defendants are both released on bond.

4. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████

5. ███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████

6. ███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████



7. [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

8. [redacted]

[redacted]

9.      Therefore, the United States seeks a continuance of defendants'

sentencing until after August of 2020, at a time most convenient for the Court.

10.      The United States has conferred with U.S. Probation and counsel for

the defendants, and they have indicated they are unopposed to a continuance.

3

THEREFORE, the United States respectfully requests that this Unopposed

Motion to Continue Sentencing be granted.

RYAN K. PATRICK               ROBERT ZINK
United States Attorney          Chief, Fraud Section
Southern District of Texas      Criminal Division
                                Department of Justice

BY:  /s/ Suzanne Elmilady       BY:  /s/ Dennis Kihm
     SUZANNE ELMILADY          DENNIS R. KIHM
     Assistant United States Attorney    GERALD M. MOODY, JR.
     1000 Louisiana, Suite 2300        Trial Attorneys
     Houston, Texas 77002            1400 New York Ave, NW
     713-567-9574 (ph)              Washington, DC 20005
                                  202-616-2999

4

CERTIFICATE OF CONFERENCE

On March 5, 2020, the United States conferred with defense counsel, Rachel Talay, regarding this motion and she is unopposed to this motion for continuance and its filing.

/s/Suzanne Elmilady
/s/Suzanne Elmilady
Suzanne Elmilady
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

On March 5, 2020, the United States filed this Unopposed Motion for Continuance under seal and provided a copy to U.S. Probation and defense counsel, Rachel Talay.

/s/Suzanne Elmilady
/s/Suzanne Elmilady
Suzanne Elmilady
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NOs: 4:18-MJ-00974 |
| | ) | 4:18-MJ-00625 |
| Plaintiff, | ) | |
| | ) | CRIMINAL |
| vs. | ) | |
| | ) | Houston, Texas |
| SAMAN AHSANI, | ) | Wednesday, August 22, 2018 |
| | ) | (10:06 a.m. to 10:14 a.m.) |
| Defendant. | ) | ( 1:58 p.m. to  2:04 p.m.) |

S E A L E D

INITIAL APPEARANCE


BEFORE THE HONORABLE FRANCES H. STACY,
UNITED STATES MAGISTRATE JUDGE


<u>APPEARANCES</u>:

For Plaintiff:              SUZANNE ELMILADY, ESQ.
                           U.S. Attorney's Office
                           1000 Louisiana, Suite 2300
                           Houston, TX 77002


For Defendant:             RACHEL G. TALAY, ESQ.
                           H Street Law, PLLC
                           1616 H. Street, N.W., 10th Floor
                           Washington, DC 20006


Case Manager:              Beverly White

Court Recorder [ECRO]:     Suzanne Guevara

Transcribed By:            Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, Texas 78468
                           361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1     **Houston, Texas; Wednesday, August 22, 2018; 10:06 a.m.**

2                 **(Call to Order)**

3     **(Proceeding Ordered Sealed)**

4         **THE COURT:**  Okay.  This next case is sealed.  It's

5 Case Number 18-974-M; U.S. versus Saman Ahsani.

6         The Government requests the courtroom be closed for

7 this hearing.  That motion is granted.

8         So anybody present is an officer of the Court, an

9 employee of the Court, or people that Ms. Elmilady brought with

10 her who are involved with this case.

11         **MS. ELMILADY:**  Yes, your Honor.

12         **THE COURT:**  Okay.  So what would you like me to do?

13         **MS. ELMILADY:**  Well, we're just going to -- he's

14 already been arraigned.  He did his initial appearance in the

15 Eastern District of Virginia.

16         **THE COURT:**  That's Mr. Ahsani?

17         **MS. ELMILADY:**  Yes, your Honor.  He's here this

18 morning.

19         **THE CLERK:**  He was arraigned; not a complaint?

20         **MS. ELMILADY:**  Uh-huh -- or, no.  Initial.

21         **THE COURT:**  Okay.  Is he present?

22         **MS. ELMILADY:**  He is, your Honor.

23         **THE COURT:**  Mr. Ahsani, can you approach the bench,

24 please?

25         And who is his lawyer?  Does he have a lawyer?

3

1          **MS. ELMILADY:**  Yes.  She's here as well, your Honor.

2          **THE COURT:**  Please approach the bench.

3          **MS. ELMILADY:**  And I'm here this morning with Tina

4    Ansari for the Government.

5          **THE WITNESS:**  Good morning, Judge.

6          **THE COURT:**  That's fine.  All right.  So this is not

7    an initial appearance then?

8          He already had an initial appearance?

9          **MS. ELMILADY:**  Yes.  It's a Rule 5 appearance, I

10   believe.  Is that --

11         **THE COURT:**  Okay.  So you already appeared in Court

12   in another district?

13         Where was that?

14         **THE DEFENDANT:**  Alexandria, Virginia.

15         **THE COURT:**  Where?

16         **MS. TALAY:**  Eastern District of Virginia.

17         **THE COURT:**  Okay.  What's the name of the town?

18         **THE DEFENDANT:**  Alexandria.

19         **THE COURT:**  Alexandria, okay.

20         **MS. ELMILADY:**  I believe the lawyer has a motion

21   before the Court in order to appear this morning; a *pro hac*

22   *vice* order.

23         **THE COURT:**  Okay.  And what is your name?

24         **MS. TALAY:**  Rachel Talay.

25         **THE COURT:**  Okay.  You are retained?  You've been

4

1    retained?

2              **MS. TALAY:**  By Mr. Ahsani, yes.

3              **THE COURT:**  Okay.  Very good.

4              **MS. TALAY:**  Yes, your Honor.  And I have my motion to

5    be admitted.

6              **THE COURT:**  Let me see that, please.

7              Okay.  Is there any objection?

8              **MS. ELMILADY:**  No, your Honor.

9              **THE COURT:**  That's granted.

10             Okay.  So was there already a bail hearing for

11   Mr. Ahsani?

12             **MS. ELMILADY:**  There was, your Honor.  There was a

13   bail hearing.  He filled out all the paperwork.  ███████████

     ██  ████████████████████████████████████████████████████████

     ██  █████████████

     ██              █████████████████████████  ███  ██████████████

     ██  ████████████████████████████  █████████████

18             And then he needs to make his appearance here.  And

19   he's here for the Rule 5.  And that's why we're here before

20   your Honor.

21             **THE COURT:**  Okay.  So the case was filed on -- what's

22   the date -- June the 15th, 2018.  It's Case Number H-18-0974-M;

23   United States versus Saman Ahsani.

24             The complaint alleges that, between 2005 and 2016, in

25   Harris County and elsewhere, in the Southern District of Texas,

5

1    that you committed violations of <u>18 United States Code, Section</u>

2    <u>371, 1956(h), 1956(a)(2)(A), 1956(a)(2)(B)(i), 1952, 1519</u> and

3    <u>15 United States Code, Sections 78dd-1</u>.

4            This is alleged violations of conspiracy to commit a

5    violation of the Foreign Practices Act, FCPA violation,

6    conspiracy to commit money laundering; money laundering

7    international promotion; money laundering international

8    concealment; violations of the Travel Act; and destruction of

9    evidence.

10            And the affiant is Mr. Boyden, who works for the

11   Postal Inspection Department and Postal Inspection Service.

12            And he swore to certain facts that the Government

13   intends to prove, to show that you committed these violations.

14   They are contained in the 21-page complaint and affidavit that

15   was signed by Judge Johnson, on June the 15th, 2018.

16            Have you received a copy of this complaint; and has

17   your lawyer received a copy?

18            **THE DEFENDANT:**  Yes, your Honor.

19            **THE COURT:**  Yes.  And you've discussed it together?

20            **MS. TALAY:**  Yes, your Honor.

21            **THE COURT:**  And you understand the allegations

22   against you?

23            **THE DEFENDANT:**  Yes, I do.

24            **THE COURT:**  Okay.  And what is the possible that

25   could be imposed against Mr. Ahsani if he were to be found

6

1    guilty of any of these allegations?

2            **MS. ELMILADY:**  The highest maximum possible

3    punishment range is up to 20 years in prison; a $250,000 fine

4    or two times the gain or loss, depending on whichever one is

5    greater; three years of supervised release.

6            **THE COURT:**  Okay.  And the Government already agreed

7    to bail for you.

8            And do you have a bail order in place?

9            **MS. ELMILADY:**  That's correct, your Honor.

10           **THE COURT:**  All right.  The next Court appearance

11   would be in the event -- in the near future.

12           In the event an indictment is returned against you,

13   you'd have to come to Houston, Texas to plead not guilty to

14   that -- to those charges.

15           And then a trial schedule would be set for you before

16   a specific Judge.

17           Did the Court in Virginia make a probable cause

18   finding?

19           **MS. ELMILADY:**  I believe so, your Honor, yes.

20           **MS. TALAY:**  Yes.

21           **THE COURT:**  Was there a probable cause hearing or did

22   you waive that?

23           **MS. TALAY:**  We waived it.

24           **THE COURT:**  He waived it.

25           All right.  Well, I find, based on the affidavit of

7

1   Mr. Boyden -- I also find that there's probable cause -- that

2   you committed the offenses described in the complaint.

3            Okay.  What else do we need to talk about from either

4   side?

5            **MS. ELMILADY:**  I think that's it, your Honor, unless

6   you have any other questions for us.

7            **MS. TALAY:**  I think -- we agree.  Nothing further,

8   your Honor.

9            **THE COURT:**  Is it easy for you to travel here to make

10  your Court appearances?

11           Yes?

12           **THE DEFENDANT:**  Yes.

13           **MS. TALAY:**  Yes.

14           **THE COURT:**  Okay.

15           **MS. TALAY:**  Yes, your Honor.

16           **THE COURT:**  Because what do you think the time table

17  will be for his next Court appearance?

18           It's hard to predict.

19           **MS. ELMILADY:**  It's hard right now, your Honor.

20           ███████████    ████████████████████████████

    ██  ███████████████████

22           And right now we're thinking maybe October.  There's

23  a speedy waiver motion that we're about to go file at the

24  District Court, miscellaneous Judge███████████████████████

    ██  ████████████████████████████

8

1            **THE COURT:**  Are you -- do you intend to agree to such

2  a delay?

3            **MS. TALAY:**  Yes, your Honor.

4            **THE COURT:**  You do?

5            All right.  Well, if you --

6            **MS. ELMILADY:**  We have that order here.  But I wasn't

7  sure if -- I think it has to go to a District Court Judge.  Or

8  can your Honor sign it?  I'm not sure.

9            **THE COURT:**  There is no District Judge assigned right

10  now.

11            **MS. ELMILADY:**  The miscellaneous Judge.

12            **THE CLERK:**  No.  It's just a duty District --

13            **MS. ELMILADY:**  Miscellaneous.

14            **THE COURT:**  Oh, it does?

15            **MS. ELMILADY:**  It's Judge Ellison.

16            **THE COURT:**  Okay.  So the --

17            **MS. ELMILADY:**  Yes, your Honor.

18            **THE COURT:**  Judge Ellison.  Mr. Ahsani will have to

19  go to the Marshal's office from this courtroom.

20            **MS. ELMILADY:**  He does?

21            **THE COURT:**  Yes.

22            **MS. ELMILADY:**  There's no warrant anymore in place.

23            **THE COURT:**  They just have to collect his

24  information.

25            **THE CLERK:**  Within this District, he needs to be

9

1    fingerprinted (indiscernible).

2            **MS. ELMILADY:**  Okay.  He has to process and print.

3    Okay.  Okay, we can do that.

4            **THE COURT:**  They won't keep you there.

5            **MS. ELMILADY:**  Huh?

6            **THE COURT:**  They won't keep you there.  You're on

7    bail.  But just please report to them on the tenth floor.  All

8    right?

9            **MS. ELMILADY:**  So we'll just hoof up to the tenth

10   floor with his lawyers and the FBI agents?

11           **THE COURT:**  Yes, yes.

12           **MS. ELMILADY:**  Okay.

13           **THE COURT:**  That's fine.  All right.

14           **MS. ELMILADY:**  Thank you, Judge.

15           **THE COURT:**  All right.

16           **MS. TALAY:**  Thank you, your Honor.

17           **THE COURT:**  Thank you for appearing.  Good luck with

18   your case.

19           **MS. ELMILADY:**  And we also request the case remain

20   under seal still.

21           **THE COURT:**  And this record is sealed.

22           **MS. ELMILADY:**  Thank you, your Honor.

23           **THE COURT:**  And the case is under seal.

24           **MS. ELMILADY:**  Appreciate it.  Thank you.

25           **THE COURT:**  All right.  Hearing is adjourned.

10

1          **MS. TALAY:**  Thanks.

2          **THE DEFENDANT:**  Thank you, again.

3          **THE COURT:**  We will resume at 2:00 with more cases.

4          **THE CLERK:**  We may have a Grand Jury before that,

5   Judge.

6          **THE COURT:**  -- unless a Grand Jury calls us.  And

7   then we'll resume before that.

8          **MS. TALAY:**  Okay.  Thank you.

9          **(Proceeding adjourned at 10:14 p.m. and reconvened at**

10  **1:58 p.m.)**

11         **THE COURT:**  The first case is 2018-625-M; U.S. versus

12  Saman Ahsani.

13         Does the courtroom need to be sealed for this?

14         **MS. ELMILADY:**  Yes, your Honor.

15         **THE COURT:**  Okay.

16         **MS. ELMILADY:**  I'm sorry.

17         **THE COURT:**  We'll do that.

18         **MS. ELMILADY:**  Sorry, Judge.

19         **THE COURT:**  Oh, it's not a problem.

20         Mr. Saman and your lawyer, please approach the bench.

21         Okay, when we met earlier this morning, we -- I was

22  not aware that there's another complaint that was filed on

23  April the 13th, in 2018, in Case Number H-18-625-M.

24         And I forgot -- I mean, I didn't forget.  I didn't

25  know that this existed.  And we should address it with you,

1   Mr. Ahsani.

2        So have you also received a copy of the April 13th

3   complaint?

4        **THE DEFENDANT:**  Yes, I have, your Honor.

5        **THE COURT:**  And you discussed it with your attorney?

6        **THE DEFENDANT:**  Yes, I have, your Honor.

7        **THE COURT:**  And you understand that you're -- in that

8   complaint, you're being accused of <u>violating 18 United States</u>

9   <u>Code, Section 371, Section 1956(h), and Section 1519</u>;

10  conspiracy to commit violations of the Foreign Crime Practices

11  Act, conspiracy to commit money laundering, and destruction of

12  evidence, between 2005 through 2016, in Harris County, in the

13  Southern District of Texas.

14       So does the Government allege different offenses and

15  different facts in the affidavit attached to the complaint?

16       Is it different from the other complaint?

17       **MS. ELMILADY:**  It's fairly similar, your Honor.  Just

18  more specific violations were alleged in the other one.

19       **THE COURT:**  Okay.

20       **MS. ELMILADY:**  That was for extradition purposes.  So

21  that's why there was two.

22       **THE COURT:**  Right.  It predates Case Number 974 by a

23  few months.  All right.

24       **MS. ELMILADY:**  Yeah.  It's pretty much almost exactly

25  the (indiscernible) that he was given this morning.

12

1          **THE COURT:**  Very good.

2          And do you have an estimate of the possible

3     punishment that could be imposed on the charges as they appear

4     in the April complaint?

5          **MS. ELMILADY:**  Yes, your Honor.  The maximum range of

6     punishment that he faces:  Up to 20 years in prison; a $250,000

7     fine or two times the gain or loss, whichever one is greater;

8     and up to three years of supervised release.

9          **THE COURT:**  And Mr. Ahsani will be on bail -- the

10    same bail conditions regarding both complaints, correct?

11         **MS. ELMILADY:**  Well, your Honor, we have a Motion to

12    Dismiss the other complaint that we went over this morning.

13         I (indiscernible) to Beverly for your Honor so

14    there's no confusion down the road.

15         **THE COURT:**  So the --

16         **MS. ELMILADY:**  So that was --

17         **THE COURT:**  -- Government's moving to dismiss Case

18    Number H-18-cr-974.

19         Any objection?

20         **MS. TALAY:**  No, your Honor.

21         **THE COURT:**  Then I will sign the order dismissing it.

22         **MS. ELMILADY:**  Yeah.  He was processed in the

23    Marshal's office, in the Eastern District of Virginia and here,

24    this morning, pursuant to Cause Number 18-0625-M, which we're

25    here before your Court -- before your Honor right now.

13

1          **THE COURT:**  All right.  Do you waive a probable cause

2   hearing concerning April 13, 2018; Case Number 18-625-M?

3          **MS. TALAY:**  Yes, your Honor.

4          **THE COURT:**  Is that your decision based on your

5   lawyer's advice?

6          **THE DEFENDANT:**  Yes, it is, your Honor.

7          **THE COURT:**  All right.  I do find that there's

8   probable cause that you committed these offenses based on the

9   affidavit of IRS Agent Robert Simpson.

10         And so that's positive finding of probable cause.

11         I believe we've talked about everything we need to

12  talk about with you now.

13         **THE DEFENDANT:**  Thank you so much.

14         **MS. ELMILADY:**  That's correct, your Honor.

15         We're going to go ahead and -- she's going to go

16  ahead and fill out the probable cause waiver.

17         I know they did it already in the Eastern District of

18  Virginia, but we'll do another one here for your Honor, as

19  well, so you'll --

20         **THE COURT:**  Thank you.

21         **MS. ELMILADY:**  -- have it on file.

22         **THE COURT:**  That will be helpful.

23         **MS. ELMILADY:**  And the United States is unopposed to

24  him remaining on the same conditions that were given to him

25  previously in the Eastern District of Virginia.

1          **THE COURT:**  And it will apply in this case.

2          Okay.  So it's still going to require you to come

3     back to Houston to -- if an indictment's returned against you,

4     unless you make arrangements to resolve the case by pleading

5     guilty elsewhere -- which is a possibility, I think.

6          And so any other matters you want to discuss at this

7     hearing from either side?

8          **MS. ELMILADY:**  I think that is good.  And we'll get a

9     copy of the dismissal for Ms. White when we get a chance so

10    they can take it with them so there's problem.

11         **THE COURT:**  We'll give it to you.

12         **MS. ELMILADY:**  Thank you for accommodating us.  And,

13    again, we apologize for the --

14         **THE COURT:**  And you signed the waiver form, both of

15    you?

16         **MS. TALAY:**  Yes.

17         **THE COURT:**  Okay.

18         **MS. TALAY:**  We'll do it right now..

19         **THE COURT:**  Please turn that in as well.

20         **MS. ELMILADY:**  We'll do that right now.

21         **THE DEFENDANT:**  Thank you very much indeed.

22         **THE COURT:**  All right.  Thank you for appearing.

23         **MS. TALAY:**  So do you want us to stay up here and

24    finish it?

25         **THE COURT:**  It doesn't really matter.  I mean, you

15

1   can sit down and do it if you'd like.  Just don't forget to

2   give it to Ms. White.

3           **MS. ELMILADY**  I'll make sure they get them.

4           **THE COURT:**  Okay.

5           **MS. ELMILADY:**  Thank you, Judge.

6           **THE DEFENDANT:**  Thank you, your Honor.

7           **THE COURT:**  Thank you.

8           We can unseal -- this record was -- is sealed.

9           **MS. ELMILADY:**  Yes.

10          **THE COURT:**  The record of this hearing is sealed.

11          Now we will have open Court and not have a sealed

12  record, and resume our docket.

13      **(Proceeding concluded at 2:04 p.m.)**

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____

Signed

July 13, 2020

Dated

*TONI HUDSON, TRANSCRIBER*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  4:19-CR-00147 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Houston, Texas |
| | ) | |
| SAMAN AHSANI, | ) | Monday, March 18, 2019 |
| CYRUS ALLEN AHSANI, | ) | |
| | ) | (2:31 p.m. to 2:55 p.m.) |
| Defendants. | ) | |

S E A L E D

DETENTION HEARING

BEFORE THE HONORABLE FRANCES H. STACY,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES

| | |
|---|---|
| For Plaintiff: | SUZANNE ELMILADY, ESQ. |
| | DENNIS KIHM, ESQ. |
| | U.S. Attorney's Office |
| | 1000 Louisiana, Suite 2300 |
| | Houston, TX 77002 |
| | |
| For Defendants: | RACHEL G. TALAY, ESQ. |
| | H Street Law, PLLC |
| | 1616 H. Street, N.W., 10th Floor |
| | Washington, DC 20006 |
| | |
| Case Manager: | Beverly White |
| | |
| Court Recorder [ECRO]: | Ruth Guerrero |
| | |
| Transcribed By: | Exceptional Reporting Services, Inc. |
| | P.O. Box 8365 |
| | Corpus Christi, Texas 78468 |
| | 361 949-2988 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1              <u>**Houston, Texas; Monday, March 18, 2019; 2:31 p.m.**</u>

2                             **(Call to Order)**

3          **(Proceeding Ordered Sealed)**

4              **THE COURT:**  Okay.  This one's already on bail?

5              Are other people in the audience involved in this

6      case?  Yes?

7              **MS. ELMILADY:**  Yes, your Honor.

8              **MR. KIHM:**  Yes, your Honor.

9              **THE COURT:**  Okay, great.

10             **MS. ELMILADY:**  We have two FBI agents and one IRS

11     agent.

12             **THE COURT:**  Okay.  The case is United States of

13     America versus Cyrus Allen Ahsani and Saman Ahsani.

14             **MS. ELMILADY:**  Good morning, Judge -- good afternoon.

15     Suzanne Elmilady and Mr. Dennis Kihm for the United States.

16             **MR. KIHM:**  Good afternoon.

17             **MS. TALAY:**  Rachel Talay for the Defendants.

18             **THE COURT:**  Both Defendants?

19             **MS. TALAY:**  Yes, ma'am.

20             **THE COURT:**  Okay.

21             **MS. TALAY:**  Yes, your Honor.

22             **THE COURT:**  Are they present?

23             **MS. TALAY:**  Yes, your Honor.

24             **THE COURT:**  Will you please approach the bench?

25             I understand Cyrus Allen Ahsani already been released

3

1   on bail?

2          **MS. ELMILADY:**  I'm sorry.  What, your Honor?

3          **THE COURT:**  Bail conditions have already been set for

4   Cyrus Allen Ahsani?

5          **MS. ELMILADY:**  Your Honor, there -- Mr. Saman Ahsani

6   appeared before your Honor on a criminal complaint several

7   months ago, and he was released on bail.

8          **THE COURT:**  Oh.

9          **MS. ELMILADY:**  The criminal complaint are the same

10  allegations in the -- as the criminal information, with the

11  exception of the addition of his brother, Cyrus Ahsani.

12         **THE COURT:**  And he not received bail --

13         **MS. ELMILADY:**  No.

14         **THE COURT:**  -- conditions yet?

15         **MS. ELMILADY:**  No, your Honor.

16         **THE COURT:**  Okay.  Which one is Saman?

17         **DEFENDANT SAMAN AHSANI:**  That's me.

18         Would you please come up to the bench and stand by

19  your lawyer.

20         And, Cyrus, that is you?

21         Okay.

22         **DEFENDANT CYRUS AHSANI:**  Good afternoon, your Honor.

23         **THE COURT:**  Hi.  So I'm going to release you on bail

24  condition, Cyrus Allen Ahsani.

25         **MS. ELMILADY:**  Yes, your Honor.

4

1          **THE COURT:**  These bail --

2          **DEFENDANT CYRUS AHSANI:**  Cyrus, your Honor.

3          **THE COURT:**  -- conditions -- I'm sorry?

4          **DEFENDANT CYRUS AHSANI:**  It's Cyrus.  I'm sorry.

5          **THE COURT:**  Cyrus.  Okay, thank you.

6          These bail conditions are standard bail conditions.

7          Are they the ones that are recommended by the

8  Probation office?  Yes?

9          **MS. ELMILADY:**  Yes, your Honor.  We actually met with

10  Pretrial this morning just to make sure they had everything --

11  or the paperwork; all the information needed with the lawyer

12  and the Defendants.

13          And they interviewed them, and came up with some bond

14  conditions.  The United States came up with the monetary bond

15  condition, because we believe that is appropriate in this case.

16          And we do agree with all their restrictions, except

17  there's a few of the prior conditions we wanted to make.

18          **THE COURT:**  Okay.  So are you able to satisfy the

19  monetary condition, making $100,000 promise to pay for the

20  $250,000 cash deposit?  Yes?

21          **MS. TALAY:**  Yes, your Honor.

22          **THE COURT:**  Okay.  That's your monetary portion of

23  your bond.

24          **MS. ELMILADY:**  Sorry, your Honor.  I believe it's a

25  million dollars is what we're asking for.

5

1          **THE COURT:**  Oh, a million dollars.

2          **MS. ELMILADY:**  It's a 250,000 cash deposit for each

3    Defendant.

4          **THE COURT:**  Okay.  But one Defendant has already been

5    released on bail, correct?

6          **MS. ELMILADY:**  Yes, your Honor.

7          **THE COURT:**  Okay.  So you will make a written promise

8    to a million dollars in the event of your failure to make a

9    Court appearance.

10          Sorry.  I'm getting mixed up.  I'm reading bail

11    conditions for Cyrus.  That is --

12          **DEFENDANT CYRUS AHSANI:**  That is me.

13          **THE COURT:**  -- you.  Okay.

14          **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

15          **THE COURT:**  A million dollars is what you'll have to

16    pay if you fail to make a Court appearance --

17          **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

18          **THE COURT:**  -- or fail to surrender to serve any

19    prison term that may be imposed against you in this case.

20          You will also deposit $2,500 in the registry of the

21    Court.

22          Is that right -- two thousand

23          **MS. ELMILADY:**  $250,000.

24          **THE COURT:**  -- $250,000 --

25          **MS. ELMILADY:**  I know it's a lot.

6

1          **THE COURT:**  Got to get my zeros correct.

2          -- $250,000 in the registry of the Court.  Whoever

3    owns that money will have the money returned to them after the

4    bail conditions are no longer in place.

5          But if you fail to make a Court appearance, that

6    money, plus the balance of a million, will become the property

7    of the United States.

8          **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

9          **THE COURT:**  And you'll be required to sign a bond and

10   swear to it in regard to that monetary condition.

11         And there are more conditions.

12         Bail:  You must be a law-abiding person in all

13   respects.  You must not violate any Federal, State, or local

14   law while you're on release.

15         **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

16         **THE COURT:**  You must immediately advise the Court, by

17   telling the Probation office, also your lawyer and the U.S.

18   Attorney, of any change in your address or telephone number.

19         **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

20         **THE COURT:**  Are you able to live at your ███████

21   ███████  address while you're on bail?

22         Is that what's anticipated?

23         **DEFENDANT CYRUS AHSANI:**  That's what -- yes.

24         **MS. TALAY:**  Yes, your Honor.

25         **THE COURT:**  And you've lived there for only seven

1    weeks?

2         **DEFENDANT CYRUS AHSANI:**  Yes.

3         **THE COURT:**  Okay.  Is this a place you're renting; an

4    apartment?

5         **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

6         **THE COURT:**  Is there any reason you need to change

7    your address while you're on bail in this case?

8         **MS. ELMILADY:**  Yes, your Honor.  We want --

9         **THE COURT:**  There is?

10        **MS. ELMILADY:**  █████████████████████████

11   ████████████████████████████████████████████ █

12   ████████████  ██████████████  ██████████████

13   ████████████  █████████████████████

14   ████████████████████████  ████████████████████████

15   ███████████

16        ██████████████  ████████████████████████

17   ███████████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████████

20        ██████████████  ████████████████████████

21   ██████████████

22        ██████████████████ ██ ████████████████  ████████████

23   ██████████████  ████████████████████████

24   ████████████  ██████████████████████████

25   ██████████████████

8



11    **THE COURT:**  Okay, great.

12         And you're both living at the same address?

13    **DEFENDANT CYRUS AHSANI:**  Correct, your Honor.

14    **THE COURT:**

17    **MS. ELMILADY:**

18    **THE COURT:**

19    **MS. ELMILADY:**

24    **THE COURT:**



1  ▮▮▮▮▮▮▮▮▮▮▮▮

2  **MS. ELMILADY:**  ▮▮▮  ▮▮▮▮▮▮  ▮▮▮

3  **THE COURT:**  ▮▮▮▮▮▮

4  **MS. ELMILADY:**  ▮▮

5  **THE COURT:**  ▮▮  ▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮

7  ▮▮▮▮▮  ▮▮▮▮▮▮▮▮  ▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  **MS. ELMILADY:**  ▮▮▮▮▮▮▮▮▮▮▮  ▮▮

10  **THE COURT:**  ▮▮  ▮▮▮▮▮▮▮▮▮▮▮

11  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  ▮

12  ▮▮▮▮▮▮▮

13  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

14  ▮▮▮▮▮▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

15  ▮▮▮

16  **MS. ELMILADY:**  ▮▮▮  ▮▮▮▮▮

17  **THE COURT:**  And do you each promise to appear at all

18  your Court proceedings in Houston, Texas?

19  **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

20  **DEFENDANT SAMAN AHSANI:**  Yes, your Honor.

21  **THE COURT:**  And if you are found guilty of any

22  offense and any sentence is imposed, do you promise to

23  surrender to serve any such prison term?

24  **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

25  **DEFENDANT SAMAN AHSANI:**  Yes, your Honor.

1          **THE COURT:**  All right.  All these proceedings are in

2     front of Judge Gilmore.

3          You must report on a regular basis to the FBI; not

4     the Probation office, and meet any requirements that they

5     direct.  You must get a copy telephones to add to Item 7-A for

6     FBI reporting --

7          **MS. ELMILADY:**  Yes, your Honor.  We can actually --

8          **THE COURT:**  -- contacts.

9          **MS. ELMILADY:**  I believe the agents are here today.

10    They can leave their card with Pretrial Services as well, so

11    they can have that information.

12         **THE COURT:**  ███████  ██████████████████

13    ████████████████████████████  ██

14         **MS. ELMILADY:**  ██████ ████

15         **THE COURT:**  ██████████████

16         **MS. ELMILADY:**  ████████ ████████████████

17    █████████████████████████████████████████████

18    ███████████████████████████

19    ████████████████████████████ ████ ████████████████

20    ████████████████ █████████████████

21         **THE COURT:**  ████████████████████████████

22    █████████

23         **MS. ELMILADY:**  ██████ █████

24         **THE COURT:**  █████████████████████████████████████

25         **MS. ELMILADY:**  ███████████████████████████ ██

11



1

2       **MR. KIHM:**

3       **MS. ELMILADY:**

4       **MR. KIHM:**

5

6       **THE COURT:**

7

8

9

10

11

12

13

14

15      **MS. ELMILADY:**

16

17      **THE COURT:**

18

19      **MS. ELMILADY:**   Thank you, Judge.

20      **THE COURT:**   Do not possess a firearm, destructive

21   device, or other dangerous weapon that's not required for this

22   investigation.

23           Do you own any guns?

24       **DEFENDANT CYRUS AHSANI:**   No, your Honor.

25       **DEFENDANT SAMAN AHSANI:**   No, your Honor.

1          **THE COURT:**  Do not use alcohol to excess.

2          Do not use or possess a narcotic drug or other

3     controlled substance.

4          ████████████████████████████████████

5          **MS. ELMILADY:**  ████   ████████████████   ████

6          **THE COURT:**  Do report any contact with law

7     enforcement officials, other than the ones that you're

8     interacting with.  If you get arrested, you must immediately

9     report that to your supervising FBI officer, okay?

10          If you violate bail conditions, you have fairly

11    stringent monetary penalties.  But also you could be accused of

12    separate offenses, such as bond jumping or contempt of Court.

13          If you were to be prosecuted for that, you'd face a

14    separate possible prison term or fine that would be required to

15    be stacked on top of any punishment you might receive in the

16    underlying case.

17          Okay.  That is -- is it a criminal information now?

18          **MS. ELMILADY:**  It is, your Honor.

19          **THE COURT:**  Okay.

20          **MS. ELMILADY:**  Criminal information.

21          **THE COURT:**  For both Defendants?

22          **MS. ELMILADY:**  Yes, your Honor, the same.

23          **THE COURT:**  Okay.  So please stay in the courtroom to

24    sign and swear to your bail papers.

25          And when will the bond be posted?

1          **MS. ELMILADY:**  Well, as soon as we can do it.

2          They're here this week, that they can take care of it

3   as soon as -- probably sometime in the next couple of days.

4          **MS. TALAY:**  Yes.

5          **MS. ELMILADY:**  Probably.

6          **THE COURT:**  Will they be allowed to be released --

7          **MS. ELMILADY:**  Oh, yes.  Absolutely, yes.

8          **THE COURT:**  In the meantime?

9          So how about by 4:00 o'clock, on Wednesday?  Is that

10   enough time to make the cash deposit?

11          **MS. ELMILADY:**  Yes.

12          **THE COURT:**  Okay.  Sign your papers in the courtroom;

13   go to the tenth floor to --

14          Thank you, Beverly, for this.

15          -- to have your fingerprints made.

16          Then interviews won't be with the Probation office;

17   it will be with the FBI, to your -- your interview about your

18   bail conditions is going to be with the FBI.

19   ███████  ███████████████████████  █████████████████  ██

20   █████████████████████████████████████████████  █████████

21   █████████

22          All right.  So both of you are being represented by

23   the same attorney?

24          **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

25          **THE COURT:**  And you're entitled to have your own

14

1   attorney who is loyal -- only loyal to you.  If you insist on

2   having the same lawyer, you're going to be required to sign a

3   waiver of independent counsel.

4           There are several reasons why it could be not to your

5   advantage to have the same attorney.  It imposes some

6   restrictions on your lawyer to simultaneously represent you.

7           Because something that might be advantageous to one

8   of you might be not advantageous to the other.

9           For instance, there are several, you know, fictitious

10  or examples of what might happen if you have the same lawyer.

11  And it might hurt one of you.

12          For instance, the Government might offer a lesser

13  sentence to one Defendant if he cooperates with the Government;

14  but the lawyer ought to advise him on whether or not to accept

15  the offer.

16          And if the lawyer advises him to accept the offer --

17  I think that's my phone -- it might hurt the other client.

18          Or the lawyer might be -- sorry.  Sorry about that,

19  you-all.

20          The lawyer might be hampered in cross-examining one

21  of you if you testified, and that testimony hurts the other

22  client, for instance.

23          Or things -- in a conspiracy case, things that might

24  be helpful to one person would clearly be harmful to another.

25  And many times your typical defense in a conspiracy case is, "I

15

1  wasn't part of the conspiracy, but the other person was."

2          And so deflecting guilt upon another Defendant is

3  very common in a conspiracy case.  So evidence that helps one

4  Defendant might harm another Defendant's case.  And when a

5  lawyer represents two or more Defendants, he might offer or

6  object to evidence that could help one Defendant, but harm the

7  other.

8          So you are entitled to have a lawyer that only is

9  loyal to you, individually.  And even if you can't afford one,

10  the Court can appoint a counsel for you free of charge who is

11  well-versed in these sorts of cases.

12          Ms. Elmilady knows that.  There are court-appointed

13  lawyers who can -- who can very ably represent you.

14          But you do have the right to have the same attorney

15  if you want to.  You may have your own reasons.  However,

16  you've got to sign this waiver if you want to do that, showing

17  that you've talked to your own lawyer about these this choice

18  that I have admonished you about, you know, the danger of doing

19  that; that you still want the same attorney.

20          And please sign the form.

21          Is that your decision?

22          **DEFENDANT CYRUS AHSANI:**  Yes, it is.

23          **THE COURT:**  Is that your decision?

24          **DEFENDANT SAMAN AHSANI:**  Yes, your Honor.

25          **THE COURT:**  All right.  Will you each please sign the

16

1    form.  Fill in all the correct names.

2            **MS. ELMILADY:**  Your Honor, in the meantime, I think

3    Mr. Kihm and Ms. Talay have *pro hac vice* permissions to

4    practice in the District Court.

5            **THE COURT:**  Any objection?

6            **MS. ELMILADY:**  No.

7            **THE COURT:**  I'll sign those orders if Beverly can

8    find them.

9            **MS. TALAY:**  Your Honor, and there were a couple

10   things in the Pretrial Report I just wanted to clarify for you.

11           **THE COURT:**  Okay.  Please do.

12           **MS. TALAY:**  One, it noted that Mr. Saman Ahsani had

13   two passports; one in Britain and one for Ukraine.

14           **THE COURT:**  Okay.

15           **MS. TALAY:**  It's actually Iran; and not Ukraine.

16           **THE COURT:**  Have all the passports been surrendered

17   to the FBI?

18           **MS. TALAY:**  Yes.

19           **THE COURT:**  Yes, okay.  Any other discrepancies?

20           **MS. TALAY:**  Yes.  It notes that the co-Defendant to

21   Cyrus is his younger brother.  Saman Ahsani is actually his

22   middle brother.

23           **THE COURT:**  That person's not a Defendant?

24           **MS. TALAY:**  The youngest brother is not a Defendant,

25   correct.

1          **THE COURT:**  Anything else?

2          **MS. TALAY:**  ████████████████   █████████

3     ████████   ████████   ███████████████████

4     ██████

5          ████████████████████████   ████████████████████

6     ████████████████████████   ███████████████████

7     ████████████████   █████████████████████████

8     ██████████   ██████████████

9          ██████████████████████████

10          **THE COURT:**  Okay, thank you.

11          So the motion to appear *pro hac vice* for Mr. Kihm,

12    I'm going to grant that.

13          And for Ms. Talay, I'm going to grant that too.

14          **MS. TALAY:**  Thank you, your Honor.

15          **MR. SPEAKER:**  (Indiscernible).

16          **THE COURT:**  I will.  Yes.  Do we have to do

17    arraignment on the --

18          **MS. ELMILADY:**  Yes, your Honor, we do.

19          **THE COURT:**  -- information?

20          **MS. ELMILADY:**  Yes.

21          **THE COURT:**  Okay.  So in the information that was

22    filed on -- I do have the schedule with the dates here for you.

23          In the information that was filed on March the 4th,

24    2019 -- it's Criminal Case Number 2019-147; United States of

25    America versus Cyrus Allen Ahsani and Saman Ahsani.

1          And the accusation is conspiracy to violate the

2    Foreign Corrupt Practices Act of 1977.  It's pretty long; over

3    50 pages -- 56 pages.

4          Have you all read this?  Have each of you read the

5    charges?

6          **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

7          **THE COURT:**  Have you discussed it with your attorney?

8          **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

9          **THE COURT:**  And you understand the accusations?

10         **DEFENDANT CYRUS AHSANI:**  Yes, your Honor.

11         **THE COURT:**  And the -- this is the information.  So

12   we'll also have to have a waiver of indictment in a moment.

13         The possible punishment, if you were to be found

14   guilty, is up to five years in prison; a $250,000 fine, or

15   twice the gain or loss -- which is how much?

16         **MS. ELMILADY:**  Well, your Honor, right now, it's more

17   of a -- we don't really have an accurate number for that right

18   now.  It's in the millions.  We're just not sure exactly what

19   it is.

20         We'll have that before sentencing.  ███████████

21   ████████████████████████████████████████████████████████

22   ███████████████████

23         **THE COURT:**  Any prison term that you might have to

24   serve could be followed by a three-year term of supervised

25   release.  And $100 special assessment would be added to any

```
1    monetary penalty to put in the Criminal Justice Act fund.

2             Okay.  If you -- so how do you plead to the Foreign

3    Corrupt Practices Act conspiracy accusation?

4             DEFENDANT CYRUS AHSANI:  Not guilty, your Honor.

5             DEFENDANT SAMAN AHSANI:  Not guilty.

6             THE COURT:  You're both not -- pleading not guilty.

7    Those not-guilty pleas are made a part of the record in this

8    case.

9             Your case is set for a trial before Judge Gilmore.

10   The trial is to start on May the 20th, at 1:30 p.m.  It will

11   continue day-to-day until the trial is finished.

12            There is a pretrial conference on May 13, at 9:30

13   a.m.  That requires you to appear, as well, before Judge

14   Gilmore.

15            There's an April 8th motion deadline.

16            Response deadline of April 18th.

17            Proposed voir dire and jury charge to be filed by May

18   the 10th.  Pretrial con -- oh, I already told you about the

19   pretrial conference.

20            Okay.  How many days will it take to try this case if

21   it goes to trial?

22            MS. ELMILADY:  Probably two weeks, your Honor.

23            THE COURT:  Does either Defendant wish to waive his

24   speedy trial rights at this time?

25            DEFENDANT CYRUS AHSANI:  Yes,
```

20

1          **DEFENDANT SAMAN AHSANI:**  Yes, your Honor.

2          **THE COURT:**  You do, okay.  I'll accept your signature

3  on the waiver form.

4          You've already talked to your lawyer about your right

5  to a speedy trial?

6          **DEFENDANT CYRUS AHSANI:**  Yes.

7          **DEFENDANT SAMAN AHSANI:**  Yes, your Honor.

8          **THE COURT:**  And you are anticipating new Defendants

9  in this case?

10          **MS. ELMILADY:**  We are, your Honor.  We're actually

11  trying to get a re-arraignment date right now, with Judge

12  Gilmore, but she's in the middle of a civil trial.  They're

13  about to start.

14          And so we do anticipate several more coming down the

15  pipeline.

16          **THE COURT:**  Okay.  All right.  Please sign this

17  schedule.  You'll be given a copy for your records.

18          We need to add an extra line for the extra Defendant,

19  I guess.

20          **MS. CLERK:**  They no longer have to sign it.

21          **THE COURT:**  They don't have to sign it?

22          **MS. CLERK:**  They were given a copy (indiscernible).

23          **THE COURT:**  Okay.  Here's -- fine.  Thank you,

24  Beverly.

25          Okay.  When you sign your bail papers, I would like

21

1   you to please list more than one telephone number where your

2   lawyer can reach you.

3           Because if the Court dates change, the only way the

4   Court will communicate with you is through your attorney.  You

5   won't receive another written schedule like this if the trial

6   is reset.

7           Or if you have a re-arraignment date that the

8   Government just alluded to, we don't know what date that will

9   be.  And yet it's your obligation to appear at all your Court

10  proceedings.  So you want to make sure your lawyer can easily

11  contact you to let you know about Court dates.

12          So please put more than one telephone number where

13  you can be reached at the last page of your bail papers.

14          Okay.  I'm now signing your waiver of indictment.

15          I accept your waiver.  And I accept your waiver of

16  speedy trial.

17          And now I'd like to -- did I tell you about -- I

18  didn't tell you about your right to have the case presented to

19  the Grand Jury.  And you may be able to talk to  your lawyer

20  about that.

21          But the Grand Jury is a neutral body of citizens who

22  are not involved in law enforcement.  And they meet on a

23  regular basis, in this court house.  They are sworn to keep all

24  of their proceedings private.

25          And what happens is, they are called upon to evaluate

1    the evidence that the Government may have against you, and to

2    decide if the evidence is credible; if it is strong enough for

3    charges to be brought against you.

4            If at least 12 of those people don't agree that the

5    evidence is credible or strong enough, then they can no-bill

6    the indictment, and charges are not brought against you.

7            It takes at least 12 of them to decide that this is a

8    worthy case to be prosecuted.  It's an extra layer of

9    protection for you.

10           But if you're cooperating and you're planning on

11   re-arraignment, it makes sense that you would waive indictment.

12           And is this your decision, based on your lawyer's

13   advice?

14           **DEFENDANT CYRUS AHSANI:**  Yes, it is, your Honor.

15           **DEFENDANT SAMAN AHSANI:**  Yes.

16           **THE COURT:**  Okay.  I'll accept your waiver.

17           Okay.  What else do we need to talk about?

18           **MS. ELMILADY:**  Well, we request that this hearing be

19   under seal, which I think has already been --

20           **THE COURT:**  It will be under seal.

21           **MS. ELMILADY:**  Thank you, your Honor.

22           I think the Garcia Motion we filed – that conflict

23   motion is moot now because they've already signed the waiver.

24           So I think that's it.

25           **THE COURT:**  The motion is what document?

23

```
1            MS. ELMILADY:  We filed a -- I don't remember the

2   document number.  We filed a motion for -- it's a Garcia

3   hearing Motion for the conflict of interest for the waiver --

4            THE COURT:  Are you withdrawing that motion?

5            MS. ELMILADY:  We're not really withdrawn it.

6            THE COURT:  Or you just want me to rule that as moot?

7            MS. ELMILADY:  (Indiscernible) rule it or you

8   could -- yeah.

9            THE COURT:  If you identify the docket number, I

10  will --

11           MS. ELMILADY:  That's fine.

12           THE COURT:  -- do that.

13           MS. ELMILADY:  I don't know the docket number

14  actually.

15           MR. KIHM:  I have the original, your Honor.  It's all

16  under seal.  And so I --

17           THE COURT:  Do you know what day it was filed?

18           MS. ELMILADY:  Yes.

19           THE CLERK:  I think it's Number 20 --

20           MS. ELMILADY:  Last Friday it was filed.

21           THE CLERK:  March the 8th?  (Indiscernible).

22           MS. ELMILADY:  Yes.

23           MR. KIHM:  Yes.

24           MS. ELMILADY:  That's it.  Yes.  Yes, your Honor.

25           THE CLERK:  It's Docket Entry 24.
```

1          **MS. ELMILADY:**  Docket Entry 24.

2          **THE COURT:**  Number 24.  I'm going to make an oral

3    determination that motion is moot.

4          Can that be entered in the record; that oral

5    determination?

6          **THE CLERK:**  Yes.

7          **THE COURT:**  Okay.  Anything else from either side?

8          All right.  Please stay in the courtroom until you

9    sign your bail papers, and exit interview with the FBI after

10   going to the Marshal's office to be fingerprinted.

11         Did they already do that?

12         **MS. ELMILADY:**  That's already been taken care of,

13   your Honor.

14         **THE COURT:**  All right, thank you.  It's already been

15   taken care of.

16         **MS. ELMILADY:**  Did we go over the range of

17   punishment?  I can't remember.

18         **THE COURT:**  I did go over the range of punishment.

19         **MS. ELMILADY:**  Sorry.  My brain is still not working

20   a whole bunch.  Okay.

21         **THE COURT:**  I understand that.

22         **MS. ELMILADY:**  Thank you.  It was up to five years in

23   prison; a $250,000 fine or twice the gross, loss --

24         **MS. ELMILADY:**  Now I remember.

25         **THE COURT:**  -- which is to be determined; a three-

25

1    year term of supervised release; and $100 special assessment.

2              **MS. ELMILADY:**  Thank you, Judge.

3              **THE COURT:**  All right.  This record is sealed.  You

4    are excused.

5              **MS. ELMILADY:**  Thank you, your Honor.

6              **MS. TALAY:**  Thank you, your Honor.

7              **MR. KIHM:**  Thank you, your Honor.

8         **(Proceeding concluded at 2:55 p.m.)**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>July 13, 2020</u>

       Signed                                             Dated

*TONI HUDSON, TRANSCRIBER*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO:  4:19-CR-00147 |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Houston, Texas |
| | ) | |
| SAMAN AHSANI, | ) | Wednesday, March 20, 2019 |
| CYRUS ALLEN AHSANI, | ) | |
| | ) | (2:11 p.m. to 2:18 p.m.) |
| Defendants. | ) | (3:16 p.m. to 3:19 p.m.) |

S E A L E D

HEARING REGARDING BAIL CONDITIONS

BEFORE THE HONORABLE FRANCES H. STACY,
UNITED STATES MAGISTRATE JUDGE


<u>APPEARANCES</u>

For Plaintiff:            SUZANNE ELMILADY, ESQ.
                          DENNIS KIHM, ESQ.
                          U.S. Attorney's Office
                          1000 Louisiana, Suite 2300
                          Houston, TX 77002


For Defendants:           RACHEL G. TALAY, ESQ.
                          H Street Law, PLLC
                          1616 H. Street, N.W., 10th Floor
                          Washington, DC 20006


Case Manager:             Beverly White


Court Recorder [ECRO]:    Jesus Guajardo


Transcribed By:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, Texas 78468
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1          **Houston, Texas; Wednesday, March 20, 2019; 2:11 p.m.**

2                              **(Call to Order)**

3          **(Proceeding Ordered Sealed)**

4               **THE COURT:**  Okay.  We're on the record.  Go ahead.

5          The name of the case?

6               **MR. KIHM:**  United States versus Ahsani.

7               **THE COURT:**  Okay.  And the case number?

8               **MR. KIHM:**  Is 19-147.

9               **THE COURT:**  Okay.  I don't have that.  I don't have

10    my file.  So --

11               **THE CLERK:**  State your names for the record.

12               **THE COURT:**  -- that's why I made you do it.

13               **THE CLERK:**  -- for the record.

14               **THE COURT:**  Yes.

15               **MR. KIHM:**  Yes.  This is Dennis Kihm; K-i-h-m, on

16    behalf of the United States.  Along with me is Suzanne

17    Elmilady.

18               **THE COURT:**  All right.  So I understand you want to

19    nullify the bail conditions for both the Defendants?

20               **MR. KIHM:**  Yes, your Honor.  Just to be clear,

21    Ms. Talay -- Rachel Talay is here on behalf of the Defendants,

22    Cyrus Ahsani and Saman Ahsani.

23               **THE COURT:**  Oh.

24               **MS. TALAY:**  Thank you, your Honor.

25               **MR. KIHM:**  Yes, your Honor.  We have requested, for

3

1   both Defendants, as to the modification conditions.

2           **THE CLERK:**  The Defendants are not going to be heard?

3           **MS. TALAY:**  They're here.

4           **MR. KIHM:**  The Defendants are present in Court.

5           **THE COURT:**  I think they should approach the bench.

6           **MS. ELMILADY:**  That's probably a good idea.

7           **THE COURT:**  Are these agreed modifications?

8           **MR. KIHM:**  Yes, your Honor.

9           **MS. TALAY:**  Yes, your Honor.

10          **MS. ELMILADY:**  Basically what we're trying to do is

11  we want both Defendants conditions to be exactly the same.

12          And so we realized, after we walked out yesterday,

13  that Saman Ahsani's conditions were given to him in the Eastern

14  District of Virginia, and don't mimic the exact conditions that

15  co-Defendant Cyrus Ahsani that you gave him yesterday.

16          So we wanted to make sure that they had -- you know,

17  everything was equal and the same -- that sort of thing.  So --

18          **THE COURT:**  Which one do you want to apply?

19          **MS. ELMILADY:**  We want the bond conditions for Cyrus

20  Ahsani to apply to Saman Ahsani -- is one condition.

21          **THE COURT:**  And that is the ones I announced?

22          **MS. ELMILADY:**  Yes.  Yes, your Honor.

23          **THE COURT:**  Okay.  All right.

24          **MS. TALAY:**  Yes, your Honor.

25          **MS. ELMILADY:**  So I don't know if your Honor prefers

4

1   for me to draft in the order -- motion order.

2         **THE COURT:**  A motion order is required, yes.

3         **MS. ELMILADY:**  Okay.  So after this hearing, and we

4   get everything on the record, I'll go through and I'll draft

5   everything up and give it in order to your Honor to do so.

6         And I think Dennis wants to make one modification.

7         Correct?

8         **MR. KIHM:**  Just there's a couple actually, of

9   modifications, on Cyrus' conditions.  �█�█�█�█�by

�conditions �.

        **THE CLERK:**  �

        ▅▅▅

22        **THE COURT:**  Okay. __

23        **MR. KIHM:**  ▅▅▅



5

1

--

3        **THE COURT:**  They're winding down their business.

4        **MR. KIHM:**  Yes.

5        **THE COURT:**  Well, they're allowed to do that.

6        **MR. KIHM:**  Correct.  Yes, your Honor.

7        **THE COURT:**  So I'm calling that, "Employment."

8        **MR. KIHM:**  Okay.

9        **THE COURT:**  That's their job; winding down their

10  business.

11       **MS. ELMILADY:**  Okay, excellent.  Thank you.

12       **MR. KIHM:**  Certainly.

13

16       **THE COURT:**

20

```
 1                  This is going to be under seal too, right?

 2          MS. ELMILADY:  Yes, your Honor.

 3          THE COURT:  The bond?  Okay.

 4          MS. ELMILADY:  And just so the Court is aware, we

 5   have a plea -- we have a re-arraignment date before Judge

 6   Gilmore, Monday, at 8:00 a.m.

 7          THE COURT:  Okay.

 8          MS. ELMILADY:  For both Defendants.

 9          THE COURT:  That's why you're still here.

10          MS. ELMILADY:  Well, they're actually flying back and

11   coming back for it.

12          THE COURT:  Oh.

13          MS. ELMILADY:  She's in the middle of a really

14   complex civil trial.  She doesn't have time.

15          THE COURT:  All right.  Well, why don't you -- oh,

16   and then more changes?  Sorry.

17          MR. KIHM:  No.  No, your Honor, that's it.

18          THE COURT:  Why don't you draft new bond conditions.

19          MS. ELMILADY:  Okay.

20          THE COURT:  You can put both Defendants names --

21          MS. ELMILADY:  Okay.

22          THE COURT:  -- on one.

23          MS. ELMILADY:  Okay.

24          THE COURT:  Appearance bond.  They can both sign it.

25          MS. ELMILADY:  Okay.
```

1        **THE COURT:**  Is it all right, Beverly?

2        No, okay.  You have to have two identical ones,

3   except two different -- one person's name on each one.  But --

4        **MS. ELMILADY:**  Okay.

5        **THE COURT:**  Otherwise, all the conditions the same.

6        **MS. ELMILADY:**  Okay.

7        **THE COURT:**  And the motion that I enter these

8   bonds -- that I modified the -- previously --

9        **MS. ELMILADY:**  Okay.

10       **THE COURT:**  -- enter.  And, you know, you can --

11       **THE CLERK:**  Do they have to sign the -- in electronic

12  form?

13       I gave her a blank copy.  I can -- we have it on the

14  e-mail.  We can e-mail to you.

15       **MS. ELMILADY:**  Okay.  Yes, your Honor.  And I

16  could -- we're right here.  I can help fill it out, and come

17  back and have them swear to it.

18       So just to be clear, where I draft my motion --

19       **THE COURT:**  I don't think they have to swear to it

20  again.

21       **MS. ELMILADY:**  They don't?

22       **THE COURT:**  Do they, Beverly?

23       **THE CLERK:**  They don't if you sign an order that she

24  does.  If they do it in the bond, they do.

25       **THE COURT:**  Let's just come back and swear -- and

8

1  sign and swear.  We can do it today.

2          You-all can hang out with Ms. Elmilady while she

3  prepares the documents.  I won't leave because I have a Grand

4  Jury with 23 indictments or something coming in.

5          **MS. ELMILADY:**  Oh, that's awful.

6          **MR. KIHM:**  Sorry, your Honor.

7          **THE COURT:**  So we'll just regroup.  When your

8  paperwork is ready, I will -- you can present your motion, and

9  I'll sign the order.  I'll sign the two bonds; you can swear to

10  them.  It'll be neat and clean and exactly how you like it

11  with, you know, the right wording, et cetera.

12          And then nobody has to be uncertain about it -- about

13  any of the conditions, all right?

14          **MS. ELMILADY:**  Thank you.

15          **THE COURT:**  If you don't mind waiting.  No pressure,

16  but how long is it going to take you to prepare?

17          **MS. ELMILADY:**  I figure ten minutes.

18          **THE COURT:**  Oh, take your time.  I mean --

19          **MS. ELMILADY:**  What I can do is just do a motion to

20  amend the -- and a motion to present -- a joint motion for the

21  bond conditions, and then attach these two as exhibits for your

22  Honor with an attached order.

23          Does that -- is that --

24          **THE COURT:**  Yes.

25          **MS. ELMILADY:**  Or do you want me to type everything

9

```
 1   out?
 2            THE COURT:  These will have to be filled out --
 3            MS. ELMILADY:  Yes.
 4            THE COURT:  -- exactly how you want them.
 5            MS. ELMILADY:  Okay.
 6            THE COURT:  And the motion must be in writing.
 7            MS. ELMILADY:  Got it.  Yes, for sure.
 8        And then I'll attach those as exhibits with all the
 9   conditions on it, unless you want me to type up all the
10   conditions again.
11            THE COURT:  No.
12            MS. ELMILADY:  I don't need to, okay.
13            THE COURT:  No.
14            MS. ELMILADY:  Then I can do it in ten minutes.
15            THE COURT:  You can fill this in by hand if you want
16   to.
17            MS. ELMILADY:  Okay.
18            THE COURT:  I mean, that's how I've done it.  And
19   it's fine as long as it's clearly the right conditions that you
20   wanted.
21            MS. ELMILADY:  Okay.  We'll draw something -- I mean,
22   I can --
23            THE COURT:  Separate name on each one that each
24   person -- each Defendant can sign.
25            MS. ELMILADY:  Got it.  Okay.
```

10

1             **THE COURT:**  Okay.  Take your time.

2             Just call Beverly on the phone when you want to come

3    back, then we'll just take a recess.

4             Everybody in here can take a 15-minute recess.  And

5    then we'll ask our court reporter to come back in.

6             **MS. ELMILADY:**  Okay.  I can have it done in 15

7    minutes.  I'm around the corner, and I already started typing

8    it.  So we're pretty good.

9             All right.  Thank you, Judge.

10            **MS. TALAY:**  Thank you, your Honor.

11            **THE COURT:**  Okay.

12            **MR. KIHM:**  Thank you, your Honor.

13            **THE COURT:**  We'll see you soon.

14       **(Recess taken from 2:18 p.m. to 3:16 p.m.)**

15            **THE COURT:**  Okay.  We're on the record.  Back on the

16   record in our previously -- the hearing we previously began in

17   Case Number 2019-147, a sealed case; U.S. versus Ahsani and

18   Ahsani.  And this is a continuation of that record.

19            And now the Government is presenting a written joint

20   motion to set release bond conditions so that the bond

21   conditions read yesterday can apply to both of the Defendants.

22            And we're going to re-execute the bonds that have

23   been drafted as Exhibit A and Exhibit B to the motion, and will

24   be attached to the order.

25            I am granting the Government's motion and the

11

1   Defendants' joint motion is granted.

2          This order says, "Release Bond Conditions:  It's

3   hereby ordered that the bond conditions listed in Exhibit A and

4   Exhibit B of the joint motion to set release bond conditions is

5   to be imposed on Defendants Cyrus Allen Ahsani and Saman

6   Ahsani."  I'm signing that now.

7          And let me just look at the new bond conditions.  The

8   financial conditions are the same, as we discussed yesterday.

9   And we're going to ask you to swear again to these conditions

10  and sign them.

11         Then the other conditions include all the

12  admonishments -- admonitions about not violating a law, keeping

13  everyone apprised of your whereabouts, ████████████████

████  ████████████████████████████████  ████████████████

████  ████████████████████████████

16         ████████████████████████████████

████  ████████████████████████, and for you to work and live

18  within the United States, and the other usual prohibitions

19  against using or possessing a firearm or dangerous drugs.

20         So I think it's all in order.  So I will ask you to

21  sign and swear to these new bonds.  That doesn't have to be

22  done on the record.

23         **THE CLERK:**  But I do think the record needs to state

24  that one -- both of them have to make a deposit.  And,

25  previously, one of the Defendants didn't have a deposit.

12

1          **THE COURT:**  Who had --

2          **MS. ELMILADY:**  They both have their cashier's check

3  here with them today to go make the deposit in the Court's

4  Registry.

5          **THE COURT:**  Terrific.  Okay, great.  So when you

6  finish signing these, you can go take care of your cash

7  deposit.

8          **MS. ELMILADY:**  Where do they go?  Is it the fifth

9  floor?

10         **THE COURT:**  Yes, the fifth floor.

11         **MS. TALAY:**  Okay.  Thank you, your Honor.

12         **THE COURT:**  Okay.  And is there anything further to

13  be on this record today?

14         **MS. ELMILADY:**  I believe not.

15         Anything else, we have?

16         **MR. KIHM:**  No, your Honor.  Thank you so much.

17         **THE COURT:**  Please wait in the courtroom to sign the

18  documents.  This hearing is adjourned, and the record is

19  sealed.

20         **MS. ELMILADY:**  Thank you, your Honor.

21         **MR. KIHM:**  Thank you, your Honor.

22         **THE COURT:**  And these documents also will be sealed.

23         **MS. ELMILADY:**  Thank you, Judge, very much.

24      **(Proceeding concluded at 3:19 p.m.)**

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    July 13, 2020

            Signed                                      Dated


                    *TONI HUDSON, TRANSCRIBER*

```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION

 3
     UNITED STATES OF AMERICA       )
 4                                  )
     v.                             )      NO. H-19-CR-147
 5                                  )      Monday, March 25, 2019
     CYRUS ALLEN AHSANI             )
 6   SAMAN AHSANI                   )

 7

 8                           REARRAIGNMENTS
 9            BEFORE THE HONORABLE VANESSA D. GILMORE

10

11

12

13

14   For the Government:        Dennis R. Kihm
                                U.S. Department of Justice
15                              1400 New York Avenue, NW
                                Washington, DC  20005
16
                                Suzanne Elmilady
17                              U.S. Attorney's Office
                                1000 Louisiana, Suite 2300
18                              Houston, TX  77002

19   For the Defendants:        Rachel G. Talay
                                H Street Law, PLLC
20                              1616 H Street, NW
                                Washington, DC  20006
21

22   Court Reporter:           Bruce Slavin, RPR, CMR

23

24
     Proceedings reported by mechanical stenography and produced
25   by computer-aided transcription.
```

```
 1              THE COURT:  I am calling the case of the United
 2    States of America v. Cyrus Allen Ahsani and Saman Ahsani.
 3    If there is anybody in the courtroom that's not here on one
 4    of those cases you're going to have to leave the courtroom
 5    at this time, apparently.
 6                    For the United States.
 7              MR. KIHM:  Good morning, Your Honor.  Dennis Kihm
 8    and Suzanne Elmilady --
 9              THE COURT:  I'm sorry.  I did not understand your
10    last name.
11              MR. KIHM:  I'm sorry.  It's "Kihm", like "scheme"
12    but without an "S".  K-i-h-m.
13              MS. ELMILADY:  And I am Suzanne Elmilady for the
14    United States, Your Honor.  Good morning.
15              THE COURT:  Okay.  Hold one second.
16                    K-i-h-m?
17              MR. KIHM:  "M" as in "Mike".  Yes, Your Honor.
18              THE COURT:  Okay.  For Cyrus Ahsani.
19              MS. TALAY:  Rachel Talay, Your Honor.
20              THE COURT:  I'm sorry?
21              MS. TALAY:  Rachel Talay.
22              THE COURT:  And who is Cyrus Ahsani?
23              DEFENDANT CYRUS AHSANI:  Good morning, Your Honor.
24    I'm sorry.
25              THE COURT:  All right.  And for Saman Ahsani?
```

```
 1            MS. TALAY:  Rachel Talay.

 2            THE COURT:  Oh.  You're for both?

 3            MS. TALAY:  Yes, Your Honor.

 4            THE COURT:  And you are?

 5            DEFENDANT SAMAN AHSANI:  Saman Ahsani.  Good

 6  morning.

 7            THE COURT:  You're representing both defendants in

 8  this case?

 9            MS. TALAY:  Yes, Your Honor.

10            THE COURT:  Pardon me?

11            MS. TALAY:  Yes, Your Honor.

12            THE COURT:  That's a little unusual.  How is that?

13            MR. KIHM:  Your Honor, we had a motion for a Garcia

14  hearing that we filed with the Court, and the magistrate

15  held a hearing to inquire into the representation and had

16  them waive on the record that they waived --

17            THE COURT:  -- waived any conflict?

18            MR. KIHM:  Yes, Your Honor.

19            MS. ELMILADY:  They also executed agreements before

20  Judge Stacy with respect to the conflicts.

21            THE COURT:  With respect to what?

22            MS. ELMILADY:  The conflict.  She had them execute

23  two documents that --

24            THE COURT:  Okay.  So, is this going to be an

25  information, then?
```

1            MR. KIHM:  Yes, Your Honor.

2            MS. ELMILADY:  Yes, Your Honor.

3            THE COURT:  But I don't have a copy of -- I don't

4    have a waiver of the indictment filed yet.  Do I?

5            MS. ELMILADY:  We did one before Judge Stacy, Your

6    Honor.

7            THE COURT:  You did?

8            MS. ELMILADY:  Yes, Your Honor.  We did for both

9    defendants.

10           THE COURT:  For both defendants?

11           MS. ELMILADY:  Yes, Your Honor.

12           THE COURT:  Why do I have a note "Need to sign the

13   waiver of the indictment"?

14               (Case manager and the Court confer)

15           THE COURT:  Did you guys file it already?

16           MR. KIHM:  It was filed last week, Your Honor, in

17   court.  The waiver of indictment was done in court, but

18   it --

19           THE COURT:  We still don't have it.

20           MS. ELMILADY:  Maybe Ms. White hasn't filed it yet,

21   but I assure the Court we did one before.  But we're happy

22   to do another one if Your Honor wants us to.  But we did do

23   one.

24           THE COURT:  Who filed it?

25           MS. ELMILADY:  Well, Ms. Beverly White took it

1    afterwards.  She took the waiver of indictment, the conflict

2    waiver, and that was it.  Usually, we just give it back to

3    the case manager.  We can do another one just to be safe.

4            THE COURT:  Yeah, I think we'd better because we

5    don't have that.  Y'all think you did?

6                Ms. Talay, do you think you did the waiver of

7    indictment?

8            MS. TALAY:  We do.  I recall doing it, but we're

9    happy to do it again, Your Honor.

10           THE COURT:  They have copies down there?

11           CASE MANAGER:  Yes, Your Honor.

12           THE COURT:  You already gave them copies?

13           CASE MANAGER:  Yes.

14           THE COURT:  Okay.

15               All right.  Gentlemen, I understand that you

16   wish to enter a plea of "guilty" in the case that's now

17   pending against you in this court.  I need to ask you some

18   questions before taking your plea.

19               So, Mr. Cyrus Ahsani, when I ask -- Okay.

20   Which one is which?  I'm sorry.  I have got them mixed up.

21           DEFENDANT CYRUS AHSANI:  I am Cyrus, Your Honor.

22           THE COURT:  All right.  Mr. Saman Ahsani, when I

23   ask questions will you answer me first, please, sir?

24           DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

25           THE COURT:  And when I ask questions, Mr. Cyrus

1   Ahsani, you will answer second.  Do you understand?

2           DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

3           THE COURT:  All right.  I understand you wish to

4   enter a plea of "guilty" in the case that's now pending

5   against you in this court.  Is that correct?

6           DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

7           DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

8           THE COURT:  Before I can take your plea I need to

9   ask you some questions under oath.  Raise your right hand to

10  be sworn.

11                  (Defendants sworn)

12          THE COURT:  Do you understand that you're now under

13  oath and that if you answer any of my questions falsely that

14  your answers can be used against you in another prosecution

15  for perjury -- that is, for telling a false statement?

16          DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

17          DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

18          THE COURT:  State your full name, please.

19          DEFENDANT SAMAN AHSANI:  Saman Ahsani.

20          THE COURT:  How old are you?

21          DEFENDANT SAMAN AHSANI:  I am 45 years old.

22          THE COURT:  How far did you go in school?

23          DEFENDANT SAMAN AHSANI:  I got a bachelor's at

24  university and a master's in business administration.

25          THE COURT:  Okay.  And you can read and write the

```
1    English language.  Is that correct, sir?

2            DEFENDANT SAMAN AHSANI:  Yes.  That's correct.

3            THE COURT:  State your full name.

4            DEFENDANT CYRUS AHSANI:  Cyrus Allen Ahsani.

5            THE COURT:  How old are you?

6            DEFENDANT CYRUS AHSANI:  50 years old, Your Honor.

7            THE COURT:  How far did you go in school?

8            DEFENDANT CYRUS AHSANI:  I did a bachelor of

9    science.

10           THE COURT:  So, you can read and write the English

11   language.  Is that correct, sir?

12           DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

13           THE COURT:  Have you ever been treated for any

14   mental illness or addiction to narcotic drugs of any kind?

15           DEFENDANT SAMAN AHSANI:  No, Your Honor.

16           DEFENDANT CYRUS AHSANI:  No, Your Honor.

17           THE COURT:  Are you currently under the influence

18   of any medication or alcoholic beverage or narcotic drug of

19   any kind?

20           DEFENDANT SAMAN AHSANI:  No, Your Honor.

21           DEFENDANT CYRUS AHSANI:  No, Your Honor.

22           THE COURT:  Have you received a copy of the

23   information pending against you?  That is the written

24   charges that are pending against you.

25           DEFENDANT SAMAN AHSANI:  Yes, Your Honor.
```

```
1              DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

2              THE COURT:  And I do not, as I stated on the record

3    a few moments ago, have a copy of a signed waiver of your

4    right to be indicted, but do you understand that you have

5    the right to be indicted by a grand jury concerning the

6    matter that's before this court on an information?

7              DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

8              DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

9              THE COURT:  Do you understand that by pleading to

10   the information that you're waiving your right to be

11   indicted by a grand jury?

12             DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

13             DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

14             THE COURT:  Would you please sign the waivers of

15   indictment that the Court has placed in front of you.

16                  (Waivers of indictment executed)

17             THE COURT:  All right.  Mr. Saman Ahsani, have you

18   signed the waiver?

19             DEFENDANT SAMAN AHSANI:  Yes, I have.

20             THE COURT:  Okay.  And, Mr. Cyrus Ahsani, have you

21   signed the waiver as well?

22             DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

23             THE COURT:  All right.  Have you had a chance to

24   fully discuss the charges contained in the information with

25   your lawyer?
```

```
1              DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

2              DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

3              THE COURT:  Do you need any additional -- Are you

4    satisfied with the counsel and representation that your

5    lawyer has provided to you?

6              DEFENDANT SAMAN AHSANI:  Yes.

7              DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

8              THE COURT:  Do you need any additional time to

9    speak with your lawyer this morning before I take your plea?

10             DEFENDANT SAMAN AHSANI:  No.  Thank you.

11             DEFENDANT CYRUS AHSANI:  No, Your Honor.  Thank

12   you.

13             THE COURT:  Ms. Talay, have you had sufficient time

14   to investigate the law and the facts concerning the case

15   against your clients?

16             MS. TALAY:  Yes, Your Honor.

17             THE COURT:  And have they both been able to

18   cooperate with you in every way?

19             MS. TALAY:  Yes, Your Honor.

20             THE COURT:  Do you believe that they each

21   understand the nature of the charges pending against them?

22             MS. TALAY:  Yes, Your Honor.

23             THE COURT:  Do you believe they are each competent

24   to enter a plea in this case?

25             MS. TALAY:  Yes, Your Honor.
```

1          THE COURT:  Do you know of any reason why either of

2    them should not plead "guilty" or of any meritorious

3    defenses that they might have?

4          MS. TALAY:  No, Your Honor.

5          THE COURT:  Is there a plea agreement in this case

6    against Mr. -- say your name again.

7          MR. KIHM:  Kihm.

8          THE COURT:  -- Kihm?

9          MR. KIHM:  Yes, Your Honor, there are plea

10   agreements in this case.

11         THE COURT:  All right.  Under what section of

12   Rule 11 are they filed?

13         MR. KIHM:  Section (c)(1)(A) and (c)(1)(B), Your

14   Honor.

15         THE COURT:  Would you state for the record the

16   terms of the plea agreement.

17         MR. KIHM:  Your Honor --

18         THE COURT:  Are they the same for each defendant?

19         MR. KIHM:  The essential terms are the same, Your

20   Honor, under which they would plead "guilty" to Count 1 of

21   the information.

22              The United States would agree not to oppose

23   the anticipated request of the Court and the United States

24   to receive a two-level downward departure and an additional

25   one-level downward departure if appropriate.  ████████

1     ███████████████████████████████████.  And there is also

2     an appellate waiver which would have them waive appeal

3     rights except as to ineffective assistance of counsel.

4          THE COURT:  Okay.  Are those the terms of your plea

5     agreement with the government as you understand them?

6          DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

7          DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

8          THE COURT:  Has anybody made any different promise

9     or assurance to you of any kind to induce you to enter into

10    this plea of "guilty"?

11         DEFENDANT SAMAN AHSANI:  No, Your Honor.

12         DEFENDANT CYRUS AHSANI:  No, Your Honor.

13         THE COURT:  Has anybody tried to force you to plead

14    "guilty"?

15         DEFENDANT SAMAN AHSANI:  No.

16         DEFENDANT CYRUS AHSANI:  No, Your Honor.

17         THE COURT:  Do you understand that the terms of the

18    plea agreement are merely recommendations to the Court,

19    other than the government's agreement to dismiss certain

20    counts, and that I can reject the recommendations without

21    permitting you to withdraw your plea of "guilty" or impose a

22    sentence that might be more severe than you anticipated?

23         DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

24         DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

25         THE COURT:  ████████████████████████████████



```
5            DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

6            DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

7            THE COURT:  Do you understand that the offenses to

8    which you have indicated you wish to plead "guilty" are

9    felony offenses and that if you are adjudged guilty of that

10   offense that that adjudication could deprive you of valuable

11   civil rights, such as the right to vote, the right to hold

12   public office, the right to serve on a jury or the right to

13   possess a firearm of any kind?

14           DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

15           DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

16           THE COURT:  As you're not citizens of the United

17   States of America, a felony conviction may lead to your

18   deportation or exclusion from this country or a denial of

19   naturalization under federal law.  Do you understand?

20           DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

21           DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

22           THE COURT:  The maximum possible penalty provided

23   by law for the crime to which you have indicated you wish to

24   plead "guilty" is imprisonment for up to five years and a

25   fine of not more than $250,000 or twice the gross gain or
```

1    loss.  Do you understand?

2            DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

3            DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

4            THE COURT:  Do you understand that the Court can

5    also impose a period of supervised release following any

6    term of imprisonment and that, if you violate any of the

7    terms or conditions of supervised release that might be

8    imposed as part of your sentence, then you -- that the Court

9    can impose a period of supervised release of up to three

10   years and, if you violate any of the terms or conditions,

11   that you can be re-imprisoned for up to two years without

12   credit for the time already served before that violation

13   occurred?

14           DEFENDANT SAMAN AHSANI:  Yes, I understand.

15           DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

16           THE COURT:  Do you understand for each offense you

17   must pay a special assessment of $100?  In this case that

18   would be $100 for the one count of conviction.

19           DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

20           DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

21           THE COURT:  Do you understand that you cannot be

22   placed on probation or have the imposition or execution of

23   your sentence suspended and that you are not eligible for

24   parole?

25           DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

1          DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

2          THE COURT:  Do you understand that the Sentencing

3   Commission has issued a set of advisory guidelines for

4   judges to help us determine the appropriate sentence in a

5   criminal case like this?  Have you had a chance to talk to

6   your lawyer about how the Sentencing Guidelines might work

7   in your case?

8          DEFENDANT SAMAN AHSANI:  Yes, I have Your Honor.

9          DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

10         THE COURT:  Do you understand that I won't be able

11   to determine the appropriate sentence for your case until

12   after a presentence investigation report has been prepared

13   and you and your lawyer have a chance to review that report,

14   as well as the lawyer for the United States, and make any

15   objections to that report that you might want to make?

16         DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

17         DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

18         THE COURT:  Do you understand that the sentence

19   that I impose might be different from any estimate that your

20   lawyer may have given to you?

21         DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

22         DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

23         THE COURT:  Do you understand that after it has

24   been determined what guidelines apply in this case that I

25   have the authority to impose a sentence that is more severe

1    or less severe than what is called for under the

2    guidelines?

3              DEFENDANT SAMAN AHSANI:  Yes.

4              DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

5              THE COURT:  Do you understand that by entering into

6    this plea agreement and entering a plea of "guilty" that you

7    will have waived or given up your right to appeal all or any

8    part of this sentence?

9              DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

10             DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

11             THE COURT:  Do you understand that parole has been

12   abolished in the federal system and that if you're sentenced

13   to prison you will not be released on parole?

14             DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

15             DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

16             THE COURT:  Do you understand that if I do not

17   accept the sentencing recommendation in your plea agreement

18   that you will still be bound by your plea and you will have

19   no right to withdraw it?

20             DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

21             DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

22             THE COURT:  Do you understand that you have the

23   right to plead "not guilty" to the offense charged against

24   you and to persist in that plea; and, if you did so, you

25   would have the right to a trial by jury, and at that trial

1    you would be presumed to be innocent and the government

2    would have to prove your guilt beyond a reasonable doubt,

3    and you would have the right to the assistance of your

4    counsel for your defense, and the right to see and hear all

5    witnesses and have them cross-examined in your defense, and

6    the right on your own part to decline to testify, unless you

7    voluntarily elected to do so in your own defense, and the

8    right to the issuance of subpoenas and other compulsory

9    process to compel the attendance of witnesses to testify in

10   your defense; and that if you decided not to testify or put

11   on any evidence at all that that fact could not be used

12   against you in trial?

13        DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

14        DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

15        THE COURT:  Do you understand that by entering a

16   plea of "guilty", if that plea is accepted by this court,

17   that there will be no trial by jury and you will have waived

18   or given up the right to trial by jury and all the other

19   rights associated with a trial by jury that I just described

20   to you?

21        DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

22        DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

23        THE COURT:  The charges to which you have

24   indicated -- that each of you has indicated you wish to

25   plead "guilty" to is under Count 1 of the information,

1    conspiracy to violate the Foreign Corrupt Practices Act, to

2    launder money and destroy evidence, in violation of

3    Title 18, United States Code, Section 371, the elements of

4    which are, under conspiracy, that you and at least one other

5    person made an agreement to violate the Foreign Corrupt

6    Practices Act, launder the proceeds of the Foreign Corrupt

7    Practices Act violations, and to promote and conceal the

8    Foreign Corrupt Practices Act activity and to destroy

9    evidence as charged in the information; that you knew the

10   unlawful purpose of the agreement and joined in it

11   willfully -- that is, with the intent to further the

12   unlawful purpose; and, third, that one of the conspirators

13   during the existence of the conspiracy knowingly committed

14   at least one of the overt acts described in the information

15   in order to accomplish some object or purpose of the

16   conspiracy.

17              There were three violations?

18         MR. KIHM:  Your Honor, I'm sorry --

19         THE COURT:  This got changed.

20         MR. KIHM:  Yes, Your Honor.  The issue was simply

21   that I was providing the additional elements for the -- for

22   all of the objects.  Originally, we realized we only

23   provided the elements for the objects of the Foreign Corrupt

24   Practices Act violations and not the money laundering and

25   destruction of evidence.  So...

1          THE COURT:  Oh.

2          MS. ELMILADY:  They're charged with three different

3     conspiracies.

4          MR. KIHM:  Well, it's one conspiracy with multiple

5     objects.  And we're satisfied, if Your Honor is, that the

6     elements of 371 are sufficient to -- for these purposes, but

7     we wanted to just make sure that you had everything.

8          THE COURT:  Oh.  I see.  I didn't have it before,

9     did I?

10          All right.  I'm not reading all that.

11     [Reading]  Oh.  You didn't have the money laundering and the

12     destruction of evidence elements on here before, did you?

13          MR. KIHM:  That's correct, Your Honor.  I apologize

14     about the mistake.

15          THE COURT:  Well, what's the difference between

16     dd-1, dd-2 and dd-3?

17          MR. KIHM:  Your Honor, they're essentially the same

18     crime, but the difference is jurisdictional.  So, dd-1

19     covers companies that issue regulated securities in a stock

20     exchange or their agents, Section 2 covers U.S. companies

21     and U.S. persons, and Section 3 covers everyone else.  I

22     didn't write the statute, Your Honor, but it's not a very

23     well --

24          THE COURT:  They're charged with all three?

25          MR. KIHM:  Yes, Your Honor.  They were acting on

1    behalf of multiple companies.

2         THE COURT:  All right.  Specifically, Foreign

3    Corrupt Practices Act in violation of 15, United States

4    Code, Section dd-1, the elements of which are that you, as

5    an issuer or an officer, director, employee or agent of the

6    issuer or stockholder thereof acting on behalf of such an

7    issuer or aided and abetted an issuer; second, that you

8    acted corruptly and willfully; third, that you made use of

9    the mails or any means of instrumentality of interstate

10   commerce in furtherance of the unlawful act under the

11   statute; fourth, that you offered, paid, promised or

12   authorized the payment; fifth, that the offer or promise to

13   pay or the authorization of the payment of money or anything

14   of value was to a foreign official, while you knew that all

15   or a portion of the payment would be offered or given or

16   promised, directly or indirectly, to a foreign official;

17   and, sixth, that you intended for one of the three purposes

18   relevant to this action to influence any act or decision of

19   a foreign public official, to induce a foreign official to

20   do or admit to do an act of violation of a lawful duty and

21   to secure any improper advantage; and, seventh, that the

22   payment was to assist in the domestic -- assist a domestic

23   concern in obtaining or retaining business for, with or

24   directing business to any person.

25              Under 15, USC, Section dd-2 [verbatim] of the

1    Foreign Corrupt Practices Act, that you, as a domestic

2    concern or an officer, director or employee or a stockholder

3    thereof, aided and abetted domestic concerns; that you acted

4    corruptly and willfully; that you made use of the mails or

5    any means of instrumentality of interstate commerce in

6    furtherance of the act; that you offered, paid, promised to

7    pay or authorized the payment of money or gift or anything

8    of value; that the offer, promise to pay or authorization to

9    pay money or anything of value was to a foreign official;

10   the person -- that the defendant knew all or a portion of

11   the payment would be offered, given or promised directly or

12   indirectly to a foreign official; that the payment was

13   intended for one of three purposes:  to influence any act or

14   decision of the foreign public official, to induce a foreign

15   public official to do or omit to do any act in violation of

16   their lawful duty, to secure any improper advantage, and

17   that the payment was to assist a domestic concern in

18   obtaining or retaining business for or with or directing

19   business to any person.

20                Under Section 78dd-3 of Title 15 of the United

21   States Code, the Foreign Corrupt Practices Act, that you, as

22   a person as defined under the FCPA or an officer, director,

23   employee or agent of a foreign entity who engaged in an act

24   in furtherance of the corrupt payment or offer or promise to

25   authorize to -- authorization to pay while in the territory

1    of the United States; that you acted corruptly and

2    willfully; and that you offered to pay, promised to pay or

3    authorized the payment of money or gift or anything of

4    value; that you -- that the offer to pay or authorization of

5    payment of money or anything of value was either to a

6    foreign official or any person while the defendant knew that

7    all or a portion of that payment would be offered, given or

8    promised, directly or indirectly, to a foreign official;

9    that the payment was intended for one of three purposes:  to

10   influence any act or decision of a foreign public official

11   in his or her official capacity, to induce such foreign

12   official to do or omit to do any act or violation of the

13   lawful duty of such foreign official or to secure any

14   improper advantage, and that the payment was to assist the

15   defendant in obtaining or retaining business for or with or

16   directing business to any person.

17                    Money laundering, Title 18, United States

18   Code, Section 1956(a)(1)(A)(i):  that you knowingly

19   conducted or attempted to conduct a financial transaction,

20   that the financial transaction or attempted financial

21   transaction involved the proceeds of specified unlawful

22   activity -- namely, in this case a violation of the Foreign

23   Corrupt Practices Act -- that you knew that the property

24   involved in the financial transaction represented the

25   proceeds of some form of unlawful activity, and that you

1    intended to promote the carrying on of specified unlawful

2    activity.

3            Money lawyering under Title 18, United States

4    Code, Section 1956(a)(1)(B), the elements of which are that

5    you knowingly conducted or attempted to conduct a financial

6    transaction, that the financial transaction or attempted

7    financial transaction involved the proceeds of specified

8    unlawful activity -- namely, a violation of the Foreign

9    Corrupt Practices Act -- that you knew that the property

10   involved in the financial transaction represented the

11   proceeds of some form of lawful activity, and that you knew

12   that the transaction was designed in whole or in part to

13   conceal or disguise the nature, location, source, ownership

14   or control of the proceeds of the specified unlawful

15   activity.

16           Destruction of Evidence, 18, United States

17   Code, Section 1519:  that you knowingly altered, destroyed,

18   mutilated, concealed, covered up, falsified or made a false

19   entry in a record, document or tangible object, that you

20   acted with the intent to impede or destruct or influence the

21   investigation of a matter and that the matter was in the

22   jurisdiction of the United States Department of Justice,

23   which is in the United States.

24           Do you understand what the government is

25   claiming that you have done to violate the law?

1          DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

2          DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

3          THE COURT:  And did you commit this crime?

4          DEFENDANT SAMAN AHSANI:  Yes, Your Honor.

5          DEFENDANT CYRUS AHSANI:  Yes, Your Honor.

6          THE COURT:  Would the United States please make a

7   representation concerning the facts that the government

8   would be prepared to prove if this case were to proceed to

9   trial.

10         MR. KIHM:  Yes, Your Honor.  I have a summary

11  prepared which I think would be a little faster than reading

12  the factual basis.

13         THE COURT:  Okay.  Go ahead.

14         MR. KIHM:  Your Honor, if the government were to

15  proceed to trial -- I am going to start with Mr. Cyrus

16  Ahsani for the record.

17         THE COURT:  Mr. -- Cyrus?

18         MR. KIHM:  Yes, Your Honor, because I think -- his

19  is earlier in time and it will make things go a little

20  faster.

21         THE COURT:  Okay.

22         MR. KIHM:  Your Honor, if the Government were to

23  proceed to trial against Defendant Cyrus Ahsani the

24  Government would prove beyond a reasonable doubt that the

25  Defendant, who is a United Kingdom -- citizen of the United

1    Kingdom and a citizen of Iran and, until July 2011, a

2    citizen of the United States, become the CEO of Intermediary

3    Company in or around 1994.  The Defendant was a domestic

4    concern and a U.S. person under the Foreign Corrupt

5    Practices Act, which I will refer to as "FCPA", until 2011

6    and thereafter a person under the FCPA.

7                    Beginning by at least in or around 1999 and

8    continuing until at least in or around 2016 the Defendant

9    conspired with others, including, by 2005, his brother and

10   others at Intermediary Company, Companies 1 through 25, some

11   of which were based in Houston, Texas, in the Southern

12   District of Texas, and which were issuers, domestic concerns

13   and persons, as those terms are used in the FCPA, and also

14   with certain executives at the companies and others to pay

15   bribes -- to use the Intermediary Company to pay bribes to

16   foreign government officials on behalf of Companies 1

17   through 25 and Intermediary Company in order to direct

18   business to Companies 1 through 25 and Intermediary Company,

19   to launder the proceeds of the FCPA violations through

20   international wire including from places outside the United

21   States to and through places in the United States in order

22   to promote and conceal the FCPA violations and to destroy

23   evidence of those violations knowing such evidence related

24   to a matter within the United States Department of Justice.

25                    In acting on behalf of Companies 1 through 25

1   the Defendant was an agent of an issuer and agent of a

2   domestic concern and an agent of a person.  As the CEO of

3   Intermediary Company the Defendant handled certain

4   responsibilities, including personally negotiating bribe

5   payments between executives and employees of Companies 1

6   through 25 and others with foreign officials and their

7   agents, overseeing Intermediary Company employees and

8   executives who themselves negotiated bribe payments for

9   foreign officials and their agents, directing others,

10  including co-defendant, to launder the proceeds of bribe

11  payments, falsifying and destroying records of the bribery

12  and money laundering scheme to avoid detection by law

13  enforcement and others.

14          The Defendant and others undertook certain

15  acts in furtherance of the conspiracy, including but not

16  limited to:

17          On or about March 30, 2005, the Defendant,

18  while in Houston, Texas, in the Southern District of Texas,

19  sent an e-mail through interstate and international wire to

20  a co-conspirator in which the Defendant discussed a meeting

21  in Houston, Texas, in the Southern District of Texas, with

22  executives at Company 3 and Company 4.  In the e-mail the

23  Defendant used a code name to refer to a foreign official

24  who Defendant knew to be a bribe recipient.

25          On or about August 25, 2010, the Defendant

1    caused Intermediary Company to enter into a consultancy

2    agreement with a company controlled by a co-conspirator,

3    which included paying the co-conspirator approximately

4    $4.5 million for a project in Iraq.  The Defendant executed

5    this contract believing that the co-conspirator would use

6    portions of the $4.5 million to pay bribes to government

7    officials in Iraq in order to obtain a project for

8    Company 8.

9               On or about January 3rd, 2012, the Defendant

10   signed a commercial advisory agreement on behalf of

11   Intermediary Company with two subsidiaries of Rolls-Royce

12   who claim they're wholly owned by United States based

13   subsidiary Rolls Royce Energy Systems, Inc.  The terms of

14   the commercial advisory agreement appointed Intermediary

15   Company to be Rolls-Royce Energy Systems Inc.'s commercial

16   agent in Iraq for the purposes of marketing their products.

17   The Defendant signed this agreement intending the

18   Intermediary Company would pay bribes to Iraqi government

19   officials in its attempts to obtain business on behalf of

20   that subsidiary.

21               In or around -- on or about October 25, 2012,

22   the Defendant and others caused Intermediary Company to

23   transfer approximately $70,000 from an Intermediary Company

24   bank account in the United Arab Emirates through a

25   correspondent bank account in the United States on to a bank

1    account of a shell company that a Company 2 executive had

2    told the Defendant to pay in connection with a project in

3    Algeria.

4              In or around April, 2016, while knowing about

5    the existence of an ongoing criminal investigation into the

6    bribes that were paid by Intermediary Company, the Defendant

7    and others destroyed electronic and paper records containing

8    evidence of the bribery and money laundering schemes in

9    order to conceal and evade detection by United States law

10   enforcement and others.

11        THE COURT:  Okay.  That was for Mr. Cyrus Ahsani.

12   Is that correct?

13        MR. KIHM:  Yes, Your Honor.

14        THE COURT:  All right.  And for Mr. Saman Ahsani.

15        MR. KIHM:  Your Honor, if the Defendant were to

16   proceed to trial the government would prove beyond a

17   reasonable doubt that the Defendant, who is a citizen of the

18   United Kingdom and Iran and a person as that's defined under

19   the FCPA, joined the company in 2003.  In on around 2005 the

20   Defendant became commercial director and Libya territory

21   manager at Intermediary Company and then in 2011 became

22   chief operations officer.

23              In or around 2005 the Defendant became aware

24   of the conspiracy and joined the conspiracy knowingly --

25   that is, the conspiracy that I previously referenced -- and

1   undertook certain acts in furtherance of the conspiracy.  In

2   particular, the Defendant in his role as commercial director

3   and Libya territory manager had certain responsibility over

4   certain portions of the conspiracy, including overseeing

5   Intermediary Company's business operations in Libya,

6   including the facilitation of the payment of bribes to

7   government officials in Libya on behalf of Company 10,

8   Company 11, Company 12, Company 23 and Company 25 and

9   others, structuring the payment of bribes to foreign

10  officials in order to launder the proceeds of the corrupt

11  bribery and kickback schemes in order to promote and conceal

12  the ongoing schemes, including moving corrupt payments to

13  multiple bank accounts owned and controlled by Intermediary

14  Company's various subsidiary and affiliates companies,

15  moving money through accounts located in multiple foreign

16  countries and timing the payments to disguise their true

17  nature, falsifying and destroying records of the bribery and

18  money laundering schemes, including maintaining a second set

19  of books for Company 7, and overseeing communications with a

20  United States based Due Diligence Organization, which

21  included providing the Due Diligence Organization with false

22  information indicating Intermediary Company was not involved

23  in the payment of bribes and providing Due Diligence

24  Organization with business references who the Defendant

25  believed knew or should have known about Intermediary

1    Company's bribe payments.

2              The Defendant and others undertook certain

3    acts in furtherance of this conspiracy, including but not

4    limited to the acts that I identified for Defendant Cyrus

5    Ahsani.

6              In addition, on or about August 17, 2005, the

7    Defendant and others caused Intermediary Company to transfer

8    approximately $136,500 from an Intermediary Company bank

9    account in Switzerland to a bank account in the United

10   States, believing at least a portion of these finds would be

11   used to pay a bribe to a foreign official to help Company 7

12   obtain and retain business in Kazakhstan.

13             On or about May 4, 2006, the Defendant caused

14   Intermediary Company to enter into an agency agreement with

15   Company 10, which authorized Intermediary Company to assist

16   in negotiating with the Libyan government in securing the

17   award of a design and construction project in Libya.

18             On or about January 18, 2011, the Defendant

19   signed a sales consultant agreement on behalf of

20   Intermediary Company agreeing to pay a co-conspirator

21   approximately $16 million in order to obtain a project in

22   Iraq for Company 8, intending that portions of such payments

23   would be used to bribe government officials in Iraq.

24             On or about August 18, 2011, while in the

25   United States the Defendant and another co-conspirator spoke

1    by telephone to his brother, the co-defendant, concerning

2    making a payment to a co-conspirator related to a project of

3    Company 8.

4              And on or about April 2016, while knowing

5    about the existence of ongoing criminal investigations into

6    the bribes that were paid by Intermediary Company, the

7    Defendant destroyed electronic and paper records containing

8    evidence of the bribery and money laundering schemes in

9    order to conceal and evade detection by the United States

10   law enforcement and others.

11             And, Your Honor, these are both summaries of

12   the factual bases that have been agreed to in their plea

13   agreements.

14        THE COURT:  So, are the other co-conspirators 1

15   through 7 also indicted in this case or not?

16        MR. KIHM:  Not yet, Your Honor.

17        THE COURT:  None of these companies are indicted

18   either?

19        MR. KIHM:  Your Honor, there are two companies who

20   are mentioned by name -- SBM and Rolls-Royce -- and they

21   have entered into various corporate resolutions with the

22   United States Department of Justice.

23        THE COURT:  Various what?

24        MR. KIHM:  Corporate resolutions.  So, with

25   Rolls-Royce and SBM, they both entered, I believe,

1    parent-level deferred prosecution agreements.  And then SBM

2    is a U.S. subsidiary that plead guilty here.

3            THE COURT:  Well, what about all these other 25

4    companies?  I know they're not all United States companies.

5            MR. KIHM:  That's correct, Your Honor.

6            THE COURT:  ███████████████████████████████████

7    ████████████████████████████.  So, are they

8    co-conspirators in this case to be indicted or not?

9            MR. KIHM:  ██████████████████████████████████████

10   ████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████.

12           THE COURT:  Okay.  ████████████████████████████████

13           MR. KIHM:  Yes, Your Honor.

14           THE COURT:  All right.  Mr. Ahsani -- Mr. Saman

15   Ahsani, you have heard the facts that the government has

16   indicated it would be prepared to prove against you if this

17   case were to proceed to trial.  Having heard those facts,

18   sir, how do you now plead to the charges pending against

19   you?  Guilty or not guilty, sir?

20           DEFENDANT SAMAN AHSANI:  Guilty, Your Honor.

21           THE COURT:  Mr. Cyrus Ahsani, you have heard the

22   facts that the government has indicated it would be prepared

23   to prove against you if this case were to proceed to trial.

24   Having heard those facts, sir, how do you now plead to the

25   charges pending against you?  Guilty or not guilty, sir?

1      DEFENDANT CYRUS AHSANI:  Guilty, Your Honor.

2      THE COURT:  Are you now ready to sign the plea

3 agreements under oath at this time?

4      MR. KIHM:  Yes, Your Honor.

5      THE COURT:  It should be right there.

6           (Plea agreements executed)

7      MR. KIHM:  Your Honor, we're passing the signed

8 plea agreements.

9      CASE MANAGER:  Please raise your right hand.

10          Do each of you swear that you have read and

11 understand the plea agreement and that you willingly sign

12 the plea agreement at this time, so help you God?

13      DEFENDANT SAMAN AHSANI:  Yes.

14      DEFENDANT CYRUS AHSANI:  Yes, I do.

15      THE COURT:  Then, it is the finding in this case in

16 the United States of America v. Saman Ahsani and Cyrus

17 Ahsani that the Defendants are each fully competent and

18 capable of entering an informed plea, that the Defendants

19 are aware of the nature of the charges and the consequences

20 of their plea, that their pleas of guilty are knowing and

21 voluntary pleas supported by an independent basis in fact

22 containing each of the essential elements of the offense.

23 Their pleas are, therefore, accepted and each of the

24 defendants, Saman Ahsani and Cyrus Ahsani, are adjudged

25 guilty of the offense charged in Count 1 of the indictment.

1               The Court orders that a presentence

2   investigation report be prepared.  By September 3, 2019, the

3   initial report shall be disclosed to counsel.  By

4   September 17, 2019, counsel should object in writing or

5   state that there is no objection.  By October 15, 2019, the

6   probation officer should submit to the Court a final

7   presentence report with an addendum addressing any contested

8   issues.  Sentencing is set for October 21, 2019, at 9:30

9   a.m.

10              Ms. Talay, please let the probation department

11   know today before you leave the building if you want to be

12   present with your clients during their interviews.

13              MS. TALAY:  Yes.

14              THE COURT:  The Defendants have been on bond, one

15   million dollars bond each, I think, $250,000 cash security

16   for each of them.

17              Does the United States have any objection to

18   them remaining on bond pending sentencing in this case?

19              MR. KIHM:  No, Your Honor.  We'd ask for the same

20   conditions.

21   ████████████████████████████████████████████████

22   ████████████████████████████████████████████

23   ████████████████████████████████████████████

24   ██████████████████████████████

25   ██████████████████████████████████████





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21    THE COURT:  Anything else from the United States?
22    MR. KIHM:  No, Your Honor.
23    THE COURT:  Anything else from defense?
24    MS. TALAY:  No, Your Honor.
25    THE COURT:  Thank you.  You're excused.

```
1            MR. KIHM:  Thank you, Your Honor.

2            MS. ELMILADY:  Thank you, Your Honor.

3            DEFENDANT SAMAN AHSANI:  Thank you, Your Honor.

4            DEFENDANT CYRUS AHSANI:  Thank you, Your Honor.

5                    COURT REPORTER'S CERTIFICATE

6            I, BRUCE SLAVIN, certify that pursuant to

7    28 USC § 753 the foregoing is a correct transcript from the
     record of proceedings in the above entitled matter, to the
8    best of my ability.
                            _____
9                            s/Bruce Slavin
                             BRUCE SLAVIN, RPR, CMR
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```